# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| Patrick Pursley, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18 CV 50040 |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| City of Rockford, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendants' motions to dismiss plaintiff's second amended complaint [55], [84], [91], [113], are denied.

## STATEMENT-OPINION

**Background**

Plaintiff Patrick Pursley brings this lawsuit pursuant to 42 U.S.C. § 1983 against the City of Rockford, multiple City of Rockford police officers, the City Administrator for the City of Rockford as special administrator for estates of deceased police officers, unidentified employees of the Rockford police department, forensic scientists with the Illinois State Police crime lab, and unidentified employees of the state crime lab. Plaintiff claims the defendants violated his right to due process (Count I), unlawfully detained him (Count II), conspired to deprive him of his constitutional rights (Count III), and failed to intervene (Count IV). Plaintiff also brings various state law claims (Counts V – IX). Plaintiff's claims under § 1983 include a claim pursuant to *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658 (1978) against the City of Rockford and policymakers within the City of Rockford police department.

On February 22, 2019, plaintiff filed his (first) amended complaint [49]. Defendants City of Rockford, Rockford city police officers James Barton, Ron Gallardo, John Genens, Charlene Getty, Jeff Houde, Sam Pobjecky, and Mark Schmidt filed their motion to dismiss plaintiff's complaint on March 15, 2019 [55]. On May 6, 2019, defendant Rockford police officer Greg Hanson filed a motion to join the previously filed motion to dismiss [75], as did defendant Rockford police officer Jim Bowman on June 17, 2019 [97]. Magistrate Judge Jensen granted the motions on May 8, 2019 [81], and June 17, 2019 [99], respectively. On May 9, 2019, defendants Rockford police officers Bruce Scott, Doug Williams, and Stephen Pirages filed a motion to dismiss plaintiff's complaint [84], as did defendant Rockford police officer Christine Bishop on June 5, 2019 [91]. Substantively, defendants Scott, Williams, Pirages, and Bishop ask the court to dismiss plaintiff's complaint as to them for the same reasons articulated in the first filed motion to dismiss. On June 25, 2019, plaintiff filed his second amended complaint [100]. Defendants

City Administrator for the City of Rockford as special representative of the estates of Howard Forrester, David Ekedahl, and Gary Reffett (all deceased Rockford police officers), filed their motion to dismiss on July 17, 2019 [113]. On July 10, 2019, Magistrate Judge Jensen ordered that all motions to dismiss would stand as motions to dismiss plaintiff's second amended complaint [109]. Plaintiff filed his response to defendants' motions on August 21, 2019 [120], and defendants filed a combined reply to plaintiff's response on September 4, 2019 [122]. The motions are now before the court.

**Facts**

The relevant facts are taken from plaintiff's second amended complaint, which, at this stage of the proceedings, the court accepts as true and "draw[s] all possible inferences in the plaintiff's favor." *Cannici v. Village of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018).

In April 1993, a 22-year-old man was shot and killed while sitting in his car with his girlfriend in front of a condominium complex in Rockford, Illinois, by a man who approached the driver's side of the car and demanded the couple's wallets. After the victim was shot, the assailant fled from the car and the victim's girlfriend ran to an apartment to call the police. A resident of the condominium complex heard the gunshots, went outside, and saw a man crouched by a dumpster in the parking area. The resident saw a man run from the area as police cars approached. Defendant Rockford police officers Schmidt, Forrester, Genens, Houde, Williams, Barton, and Reffett arrived at the crime scene but found no suspects. Investigators located footprints in the snow near the dumpster.

On the night of the murder, plaintiff was home with his girlfriend, Samantha Crabtree, plaintiff's son and his son's uncle. Multiple people, including Crabtree, verified plaintiff's alibi. Two months after the murder, and with no suspects, the police offered a cash reward for information leading to the arrest of a suspect. Shortly after the award was announced, a man called Crime Stoppers and claimed he visited plaintiff the day after the murder and plaintiff confessed to the killing. This man received $2,650 as a reward for the information.

On June 10, 1993, defendant officers Schmidt, Forrester, Houde, and at least two other defendant officers began following Crabtree. Defendant officers took Crabtree to the apartment she shared with plaintiff. While Crabtree waited in the car, defendant officers including Pirages, Ekedahl, Hanson, and Scott searched her apartment. They reported recovering a 9-millimeter handgun, articles of plaintiff's clothing, and a pair of black combat boots. The defendant officers then brought Crabtree to the police station for interrogation. Defendant officers including Forrester and Schmidt intimidated and coerced Crabtree into fabricating a story implicating plaintiff in the murder. Defendant officers Forrester and Schmidt brought Crabtree to the crime scene, coerced her into admitting she drove plaintiff to the crime scene, and then brought her to the identification unit at the police station where they met up with defendant officer Houde. There, the defendant officers coerced Crabtree into falsely claiming that on the night of the murder plaintiff was wearing the clothes and carrying the 9-millimeter handgun that were recovered from the apartment. Defendant officers typed up a false statement implicating plaintiff in the murder and caused Crabtree to sign it. About two months later, Crabtree signed an affidavit recanting her statement. The affidavit stated Crabtree had been interrogated for more than 10 hours and that

2

she was pregnant, tired, sick, emotionally weak at the time, and was intimidated and coerced into signing the false statement by the defendant officers.

Tests conducted by the defendant forensic scientists did not establish that the 9-millimeter handgun taken from plaintiff's apartment was the gun used in the murder. Despite this, the defendant forensic scientists fabricated a report stating that this was the handgun used. Together, the defendant forensic scientists and the defendant officers who investigated the case, fabricated a link between plaintiff and the crime and withheld this forensic fabrication from the prosecution and defense.

In April 1994, plaintiff was tried before a Winnebago County jury. The handgun the defendant officers knew was not the murder weapon was entered into evidence. Additionally, plaintiff did not match the description provided by the resident at the condominium complex of the man who fled the scene. The boots seized from plaintiff's apartment did not match the footprints in the snow near the dumpster where the resident saw a man crouching. The crime lab found no blood on the clothing defendant officers seized from plaintiff's apartment. When the victim's mother spoke with one of the defendant officers after plaintiff's arrest and asked whether the police were sure plaintiff committed the crime, the defendant officer said, "Well we have somebody anyway." The jury found plaintiff guilty of first-degree murder and he was sentenced to natural life without parole. Plaintiff was incarcerated for 23 years.

Plaintiff's appeals and other post-conviction efforts were unsuccessful. In 2000, plaintiff began asking the trial court to order ballistics testing on the casing and bullets found at the crime scene and the 9-millimeter handgun. In January 2011, the Illinois Appellate Court ordered the ballistics testing. In 2012, the Illinois State Police crime lab issued a report concluding that neither the bullets nor the casings recovered from the crime scene matched the 9-millimeter handgun used to convict plaintiff. Plaintiff was granted a new trial in March 2017. Plaintiff was released from custody in April 2017. In January 2019, plaintiff was acquitted of all charges in his second trial for the murder.

Plaintiff alleges in his complaint that each defendant officer participated in the murder investigation which resulted in plaintiff's wrongful conviction.

Plaintiff argues the constitutional violations he suffered were not isolated events, but were a result of the City of Rockford police department's policies and widespread practices of pursuing convictions untruthfully, failing to adequately train and supervise its officers, failing to discipline officers who withhold exculpatory evidence or fabricate evidence, and failing to intervene to prevent others from violating citizens' constitutional rights. In accordance with these practices, officers refused to report misconduct by others, including the misconduct outlined in plaintiff's complaint. Further, the City of Rockford and the policymakers at the police department failed to act to remedy these abuses despite actual knowledge of the pattern of misconduct.

In their motions to dismiss, defendants argue plaintiff's claims lack sufficient factual particularity to be plausible on their face, the federal conspiracy claim is fatally flawed, the *Monell* claim fails to state a cause of action, and there is no basis to impose liability on the City of Rockford.

3

**Standard of review**

When evaluating a Rule 12 (b)(6) motion to dismiss, the court must "accept[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of the . . . non-moving parties." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016) (internal citations omitted). "A Rule 12(b)(6) motion challenges the sufficiency of the complaint itself." *Id.* "The statement of the claim must sufficiently give 'fair notice of what the ... claim is and the grounds upon which it rests' to the defendants." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To state a claim for relief, a complaint must provide more than "abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Instead, a plausible claim must include "'factual content' sufficient to allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Charleston v. Board of Trustees of the University of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**Analysis**

    **Sufficiency of plaintiff's claims**

Defendants first argue plaintiff's complaint lacks sufficient factual particularity to be plausible on its face. Citing to the seminal standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), defendants argue plaintiff's alleged facts do not support even a mere possibility of misconduct and fail to "nudge his claims" across the line from conceivable to plausible in order to survive their motion to dismiss. Instead, argue defendants, plaintiff's complaint pleads conclusions. In his response, plaintiff interprets defendants' argument as an argument against the concept of "group pleading," and for his part, plaintiff defends his complaint stating that criticism of group pleading has been rejected in § 1983 cases and, regardless, his allegations have been sufficiently pled. Defendants respond by distinguishing the cases cited by plaintiff and further arguing plaintiff's complaint fails to meet the standards of FED. R. CIV. P. 8.

"A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Additionally, a complaint must adequately plead that "the defendant[s] personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). "But Rule 8(a) is 'not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer.'" *Gray v. City of Chicago, et al.*, No. 18 C 2624, 2019 WL 3554239, at *5 (N.D. Ill. Aug. 1, 2019) (citing *Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013)). And "an allegation directed at multiple defendants can be adequate to plead personal involvement." *Rivera v. Lake County, et al.*, 974 F. Supp. 2d 1179, 1194 (N.D. Ill. 2013) (citing *Brooks*, 578 F.3d at 582). "[A] plaintiff may not be able to attribute misconduct to specific individuals where the plaintiff did not know the identity of the offender at the time of the incident. In addition, where a plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery." *Id.* (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009)).

Plaintiff's complaint details the underlying crime, how the plaintiff came to be a suspect, the defendant officers' investigation involving plaintiff's girlfriend, the evidence located at the crime scene and subsequently analyzed by the defendant forensic scientists, and plaintiff's trial, conviction, imprisonment, and exoneration. Plaintiff's complaint sets out his damages as well as his allegations against the Rockford police department as to their policies and practices. Finally, in nine counts, plaintiff alleges claims against all defendants under federal and state laws. Having reviewed plaintiff's complaint, the court rejects defendants' argument that the complaint contains "mere conclusory statements" that infer only "the mere possibility of misconduct." The court further rejects defendants' argument set out in their reply brief that the "factual detail…[is] so sketchy that the complaint does not provide the type notice of the claim to which the defendant is entitled under Rule 8" (citing *Airborne Beepers & Video, Inc. v. AT&T Mobility, LLC*, 499 F.3d 663, 667 (7th Cir. 2007)). As to defendants' insufficiency argument, plaintiff's complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 678-79.

Regarding the "group pleading" argument, plaintiff's 18-page, 131-paragraph complaint specifically identifies defendants Barton, Bowman, Gallardo, Genens, Getty, Houde, Bishop, Pobjecky, Schmidt, Scott, Williams, Hanson, Pirages, and unidentified employees of the Rockford police department as police officers or otherwise employed by the Rockford police department during all relevant times. Further, a special representative of the estates of Forrester, Reffett, and Ekedahl is named as a defendant for these former, deceased Rockford police officers. According to the complaint, each defendant participated in the investigation of the murder which occurred over 25 years ago. The following are highlights from paragraphs in plaintiff's complaint regarding references to "defendants":

25. Defendant officers including Schmidt, Forrester, Genens, Houde, Williams, Barton, and Reffett reported to the crime scene.
27. Investigators from the Rockford police department located fingerprints.
41. Defendant officers set their sights on plaintiff as a suspect.
42. Defendants Schmidt, Forrester, Houde, among others, began pursuing plaintiff's girlfriend, Crabtree.
43. Defendant officers took Crabtree to the apartment she shared with plaintiff. Defendant officers, including Pirages, Ekedahl, Hanson, and Scott searched the apartment. These defendants recovered evidence.
44. Defendants brought Crabtree to the police station.
45. Defendant officers, including Forrester and Schmidt, intimidated and coerced Crabtree.
46. Defendants Forrester and Schmidt brought Crabtree to the crime scene and defendants coerced her into fabricating a story.
47. Defendants Forrester and Schmidt brought Crabtree to the identification unit to meet defendant Houde. There, defendant officers coerced her.
48. Defendants typed up a false statement for Crabtree to sign.
49. Defendant officers interrogated Crabtree for more than 10 hours.
50. Defendant officers knew the statement they obtained from Crabtree was false.
56. Defendants entered into evidence a gun they knew was not the murder weapon.
57. Defendant never disclosed this fabrication to the prosecution or plaintiff.

5

58. Defendant officers knew plaintiff did not commit the murder.
60. One of the defendant officers spoke with the victim's mother.

Plaintiff has alleged acts of specific individual defendants in numerous paragraphs of his complaint and refers to "defendant officers" regarding some investigatory acts in other paragraphs. Plaintiff does define "defendant officers" in his complaint. Under the notice pleading standard of Rule 8(a)(2) and *Twombly*, the court finds defendants have been given "fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Moreover, it bears repeating that "a plaintiff may not be able to attribute misconduct to specific individuals where the plaintiff did not know the identity of the offender at the time of the incident. In addition, where a plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery." *Rivera*, 974 F. Supp. 2d at 1194. (citing *Rodriguez*, 577 F.3d at 821). As in *Gray*, while plaintiff will eventually be required to demonstrate that each individual defendant was personally involved in plaintiff's alleged constitutional violations, "[a]t this stage…although group pleading is not an ideal practice it is a permissible one." *Gray*, 2019 WL 3554239, at *6. Therefore, at this stage of the litigation, the court declines to dismiss plaintiff's complaint under the argument it involves "group pleading."[1]

**Plaintiff's federal conspiracy claim**

In their motion to dismiss, defendants argue plaintiff's federal conspiracy claim should be dismissed because under 42 U.S.C. § 1985(3),[2] recovery is only allowed from a private actor who has conspired with a state actor, and all defendants here are state actors. Plaintiff responds, and the court agrees, that plaintiff pled conspiracy under 42 U.S.C. § 1983, not 42 U.S.C. § 1985(3); therefore, defendants' argument is improper. However, in their response brief, defendants gloss over this error and now argue plaintiff's conspiracy claim is insufficient under § 1983 (as well as under § 1985). The court may consider defendants' new argument as waived. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or underdeveloped arguments are waived."); *Doherty v. City of Chicago, et al.*, 75 F.3d 318, 324 (7th Cir 1996) ("Given our adversary system of litigation, it is not the role of th[e] court to research and construct the legal arguments open to parties, especially when they are represented by counsel."). However, the Seventh Circuit has since held: "While arguments made for the first time in a reply brief are generally treated as waived, it does not necessarily follow that arguments that are better developed in a reply brief are waived." *Hernandez v. Cook County Sheriff's Office, et al.*, 634 F.3d 906, 913 (7th Cir. 2011). While the court does not necessarily believe defendants' argument is "better developed" in their reply brief, the court addresses the argument on the merits nevertheless.

Civil conspiracy requires that "two or more persons acting in concert…commit an unlawful act, or…commit a lawful act by unlawful means." *Beaman v. Freesmeyer*, 776 F.3d 500, 510

---

1 The court is also not persuaded by defendants' argument contained (only) in their reply brief that plaintiff should have utilized pre-suit discovery rather than identifying defendants as to specific allegations. For the same reasons as set forth above, the court finds that plaintiff's complaint (at this stage) is sufficient under Rule 8 and provides enough detail for each defendant to be on proper notice and adequately respond to the complaint. *See Springs v. Schwarz*, No. 15 C 5437, 2017 WL 4130504, at *2 (N.D. Ill. Sept. 19, 2017).
2 Defendants' brief cites to "28" U.S.C. § 1985(3). The court accepts this as a scrivener's error.

(7th Cir. 2015). In a claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must show that "'the individuals reached an agreement to deprive him of his constitutional rights,' and covert acts in furtherance of the conspiracy actually deprived plaintiff of those rights." *Brown v. Rose*, No. 18-CV-03505, 2019 WL 1125787, at *3 (N.D. Ill. March 12, 2019) (citing *Beaman*, 776 F.3d at 510).

Plaintiff's complaint alleges the defendant officers and the defendant forensic scientists "acted in concert" and "reached an agreement" to deprive plaintiff of his constitutional rights. In the fact portion of the complaint, plaintiff alleges Rockford police submitted the recovered handgun to the Illinois State Police crime lab for testing, the defendant forensic scientists compared the bullets and casings fired from the handgun to the bullets and casings located at the crime scene and on the victim, and the results did not establish that the handgun was the one used to kill the victim. Despite this, the defendant forensic scientists fabricated a report stating the handgun was used in the murder. Plaintiff alleges the defendant officers who investigated the crime and seized the handgun from plaintiff's apartment worked in concert with the defendant forensic officers to fabricate a link between plaintiff and the crime and subsequently withheld the evidence of this fabrication from the prosecution and defense. The court finds the allegations tying defendant officers to a conspiracy with the defendant forensic scientists put defendant officers on "fair notice of what the…claim is and the grounds upon which it rests," *Vinson v. Vermilion Cty., Ill.*, 776 F.3d 924, 928 (7th Cir. 2015) (citation omitted), and are sufficient to state a claim of conspiracy against them to survive defendants' motion to dismiss.

### Plaintiff's *Monell* claim

Defendants' motion to dismiss further argues plaintiff has failed to state a Section 1983 cause of action against the City of Rockford under *Monell*.

"A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690). To be liable, the governing body "must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id*.

According to plaintiff, the constitutional violations he suffered were a result of Rockford police department's policies and widespread practices of, among other things, pursuing convictions without regard to the truth, failing to adequately train and supervise its officers, failing to discipline its officers, and failing to intervene to prevent officers from violation citizens' constitutional rights. Plaintiff alleges officers refused to report the misconduct committed by their colleagues in this case, the misconduct committed here by the defendant officers is condoned, and the policymakers have failed to act despite their knowledge of the misconduct. Defendants argue plaintiff asserts "scarce factual support" regarding his *Monell* claim and that their conclusory nature fails to meet the *Iqbal* pleading standard. Defendants cite to numerous district court cases where the court has found plaintiffs failed to properly plead enough facts that would support claims pursuant to *Monell*. In response, plaintiff cites to cases with the opposite holding and argues he has pled each element of his claim with sufficient specificity (especially considering *Monell*

7

discovery has not begun).

"[T]he Seventh Circuit has made clear that *Iqbal* applies to motions to dismiss in *Monell* cases, just as it would apply in any other case." *Bohannon v. City of Milwaukee*, 998 F. Supp. 2d 736, 741 (E.D. Wisc. 2014) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 615, 617-18 (7th Cir. 2011)). A *Monell* plaintiff must allege enough by way of factual content to "nudge his claims…across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (citation omitted). However, the court does not apply a heightened pleading standard to civil rights claims. "In a civil rights case alleging municipal liability, a federal court may not apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading requirements." *Estate of Sims ex rel. v County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2014) (citing *Leatherman v Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165 (1993)).

While the court expresses no opinion at this point as to the future of plaintiff's *Monell* claims, the court does not find the allegations "merely boilerplate" as argued by defendants. The court finds the factual allegations, taken as true, sufficiently "nudge" plaintiff's claims to conceivable and state a claim plausible on its face. Therefore, at this early stage of the proceedings, the court finds that plaintiff's claims under *Monell* survive defendants' motion to dismiss.[3]

**Conclusion**

The court notes that at this pleading stage some of the claims against certain defendants were close calls. Consequently, after fact discovery is complete and before the filing of any summary judgment motions, the court expects plaintiff will pursue only claims against defendants where there is a reasonable chance of success.

For the reasons set forth above, defendants' motions to dismiss plaintiff's second amended complaint [55], [84], [91], [113], are denied.

Date: 10/04/2019                                              ENTER:

*Philip G. Reinhard*
United States District Court Judge

Electronic Notices. (LC)

---

[3] Because plaintiff's claim against the City of Rockford has survived, defendants' motion to dismiss as to plaintiff's indemnity and *respondeat superior* claims is denied.