IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PATRICK PURSLEY, | ) | |
| | ) | Case No. 3:18-cv-50040 |
| *Plaintiff*, | ) | |
| | ) | Hon. Philip G. Reinhard, |
| v. | ) | District Judge |
| | ) | |
| THE CITY OF ROCKFORD, et al., | ) | Hon. Lisa Jensen, |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |

## PLAINTIFF'S MOTION TO QUASH ISP DEFENDANTS' SUBPOENA SEEKING PLAINTIFF'S RECORDED PHONE CALLS

NOW COMES Plaintiff, PATRICK PURSLEY, by and through his attorneys, and pursuant to Federal Rules of Civil Procedure 26 and 45, hereby moves to quash the subpoena issued by the Illinois State Police Defendants to the Illinois Department of Corrections. In support of the motion, Plaintiff states as follows:

### INTRODUCTION

Plaintiff Patrick Pursley was wrongfully arrested in 1993 and spent 23 years in prison before his conviction was vacated and he was found not guilty on retrial. He was incarcerated in the Illinois Department of Corrections (IDOC) from nearly all of that time. Plaintiff filed this civil rights action, alleging that Defendants violated his constitutional rights and caused his wrongful arrest, prosecution, and incarceration.

Defendants Welty, Gunnell, and Striupaitis now seek the production of every single phone call recorded and maintained by IDOC—including calls he had with his attorneys—that Plaintiff had between 2013 and 2019. Because the subpoena amounts to a patent fishing expedition that violates Plaintiff's privacy interest in the calls, and seeks information that is protected by the attorney client privilege, this subpoena should be quashed. *See Simon v.*

*Northwestern Univ., et al.*, 2017 WL 66818 (N.D. Ill. Jan. 6, 2017); *Coleman v. City of Peoria*, 2016 WL 3974005 (C.D. Ill. July 22, 2016); Ex. A (2/12/19 Order in *Montanez v. Guevara*, No. 17-cv-4560 (N.D. Ill.)) (granting motion to quash subpoena to IDOC for all recorded phone calls and requiring a narrowed subpoena for call logs).

## **RELEVANT FACTUAL BACKGROUND**

On January 16, 2020, counsel for the ISP Defendants sent the undersigned counsel a subpoena to the IDOC seeking "All recorded telephone calls made or received by Patrick Pursley (#N60565) from 2013–2019. Ex. B (Subpoena). Although the subpoena response date was February 6, 2020, IDOC has apparently already produced over 3,000 calls, a call log that lists the phone numbers associated with each call, and a list of names associated with each phone number, to the Illinois State Police (ISP) Defendants. Counsel for these Defendants represented that they will not review any calls until this motion has been resolved.

## **ARGUMENT**

Although the Federal Rules provide for broad discovery, it is well-established that "discovery, like all matters of procedure has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978). Rule 45(d)(3)(A)(iii-iv) provides that "the court for the district where compliance is required must quash or modify the subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii-iv). Federal Rule of Civil Procedure 45(d)(3)(A)(iv) provides that the Court must quash or modify a subpoena that subjects a person to an "undue burden." For the purpose of this rule, a subpoena may subject a person to an "undue burden" if his privacy interests are implicated by the subpoena. *Jump v. Montgomery Cty.*, No. 13-3084, 2015 WL 6558851 (C.D. Ill. Oct. 29, 2015) (subpoena to a phone company

for a customer's phone records posed an undue burden to the customer). "When a party objects to a subpoena under Rule 45, the subpoenaing party must justify its pursuit." *Wilson v. O'Brien,* 2009 WL 763785, *7 (N.D. Ill. 2009) (alterations and internal quotation marks omitted). Additionally, the scope and limits of production under a subpoena are the same as the scope for discovery generally under Federal Rule of Civil Procedure 26.

This Court's precedent establishes that subpoenas like the one at issue here are overbroad and infringe on privacy interests, and, absent a compelling showing, should be quashed. As Defendants have not made *any* showing, this Court should quash the subponas.

1. **Plaintiff Has Standing to Quash the IDOC Subpoena**

Preliminarily, Plaintiff has standing to object to the production of over 3,000 of his recorded phone conversations made over nearly seven years. *See, e.g. Simon*, 2017 WL 66818, at *2. A party has standing to quash a subpoena issued by another party to the litigation and directed to a non-party in two instances: if the movant has a claim of privilege attached to the information sought or the subpoena implicates the movant's personal or privacy interests. *Special Markets Ins. Consultants, Inc. v. Lynch*, 2012 WL 1565348, at *1 (N.D. Ill. May 2, 2012); *HTG Capital Partners, LLC v. Doe(s),* 2015 WL 5611333, at *3 (N.D. Ill. Sept. 22, 2015) ("a non-recipient can object when she has a claim of privilege or when the subpoena implicates her privacy interests"); *Sunlust Pictures, LLC v. Does 1-75*, 2012 WL 3717768, at *2 (N.D. Ill. Aug. 27, 2012) ("Courts have found standing . . . even where the Movant's privacy interest is minimal at best.").

In *Simon*, the plaintiff sued Northwestern University and individuals associated with the university's innocence project, alleging that defendants caused his wrongful conviction and incarceration. 2017 WL 66818, at *1. The defendants issued a subpoena to IDOC seeking the

3

plaintiff's phone calls for a 15-year period of time. *Id*. at *2. The plaintiff moved to quash. The district court found that the plaintiff enjoyed standing to challenge the subpoena, writing:

> The court finds that Simon [plaintiff] has the minimal privacy interest necessary to challenge the subpoena. The production of every single phone call over the fifteen years Simon was incarcerated undoubtedly will yield details unrelated to the instant litigation. This court doubts, for example, Simon anticipated his remarks to a friend about the weather, slights uttered in a heated lover's quarrel, or any unrelated conversation ranging from the most benign topics (the former) to the most intimate (the later) would find its way as an exhibit in this lawsuit. Accordingly, Simon has standing to move to quash the subpoena.

*Id*. at *2. Similarly, in *Coleman,* the district court held that prisoners enjoy a privacy interest in their recorded phone calls since they would reasonably expect access to recordings of their telephone calls to be limited to prison officials, law enforcement officials, and other public officers with a bona fide need for such access. *Coleman,* 2016 WL 3974005, at *3.

Due to his wrongful imprisonment, Plaintiff had no choice but to have his phone calls with friends, family members, and loved ones recorded. His loved ones visited him when they could, but phone calls were the easiest way for them to communicate. Just like the plaintiffs in *Simon* and *Coleman,* Plaintiff here enjoys a privacy interest in over 15 years of recorded phone calls made during his wrongful incarceration.

### 2. The Subpoena Seeks Privileged Attorney-Client Communications

Defendants have imposed no limitations on their subpoena and seek calls between Plaintiff and his attorneys. This is improper. Indeed, a motion to quash must be granted where the subpoena seeks information protected by a privilege held by the party. *Piercy v. Wilhelmi*, No. 16-MC-1008, 2016 WL 3034149, at *1 (C.D. Ill. May 27, 2016); *United States v. Newell*, 192 F.R.D. 587, 589 (N.D. Ill. 2000); *Memorylink Corp. v. Motorola, Inc.*, No. 08 C 3301, 2010 WL 3167277, at *3 (N.D. Ill. Aug. 6, 2010), aff'd, 468 F. App'x 960 (Fed. Cir. 2011) (holding that Rule 45 governs the issuance of subpoenas and provides that the court must "must quash or

modify a subpoena" that "requires the disclosure of privileged or other protected matter, if no exception or waiver applies.")

The attorney-client privilege protects communications made in confidence by a client to an attorney for the purpose of obtaining legal advice. *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). This privilege applies even to recorded phone calls made from a prisoner to his attorney, if the prisoner has no access to a private, nonrecorded line and intends the communications to be privileged. *See, e.g., United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992) (privilege attaches when client intends communications to be confidential); *Simon*, No. 1:15-CV-1433, 2017 WL 66818, at *5 (acknowledging that the Seventh Circuit has not decided whether attorney-client privilege applies to recorded prison phone calls, and suggesting attorney-client privilege may apply if there was some "impediment to [the prisoner's] access to unrecorded calls"); *see also* Ex. C (10/9/19 Order in *Prince v. Kato*, No. 18-cv-2952 (N.D. Ill.) (quashing subpoena as to prisoner's phone calls with his attorney and psychotherapist). Here, Plaintiff acknowledges that he did make some calls to his attorneys over a recorded line, but did so only because he belived nonrecorded calls had to be initiated through his attorneys and believed that he was unable to access that nonrecorded line when he needed to make the calls. Further, as far as Plaintiff knows, his communications were not actively monitored, further diminishing any argument that he knowingly waived the privilege. *See United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998) (marital communications privilege does not apply for prisoners making phone calls when someone overhears the call in real time).

Thus, at a bare minimum, Rule 45 requires this Court to quash this subpoena as to Plaintiff's communication with his attorneys.[1] FED. R. CIV. P. 45(d)(3) (court "must quash or

---

[1] Should this Court conclude that these attorney-client communications are not protected by privilege, Plaintiff requests that this Court review them *in camera* for a determination about their relevance.

5

modify" the subpoena when it seeks information protected by attorney-client privilege); *Piercy v. Wilhelmi*, No. 16-MC-1008, 2016 WL 3034149, at *1.

### 3. The Subpoena Seeks Private Information

This subpoena also grossly impinges on Plaintiff's privacy. In meet-and-confer sessions, Defendants have suggested that Plaintiff has no privacy interest in these calls because, as an IDOC inmate, he knew that his personal phone calls were subject to monitoring. Plaintiff takes exception to this argument. When Plaintiff was wrongfully incarcerated, he was utterly deprived of the ability that every free person enjoys to hold personal conversations with loved ones behind closed doors. Plaintiff and his loved ones certainly would have preferred to have discussed their personal matters in the same way, but it was not an option for them. Although Plainitff was aware while he was in prison that his calls might be monitored for security purposes, he also knew that the risk was low that those calls would ever be disclosed beyond IDOC security personnel. Plainitff knew he was not doing anything on those calls constituting a security threat; anyone at IDOC who heard his calls would move on to more serious matters. Weighing that low risk against the value of maintaining personal connections, Plainitff decided to make phone calls anyway. That decision hardly amounts to a wholesale waiver of any privacy interest in those calls. *See City of Ontario, Cal. v. Quon*, 560 U.S. 746, 762 (2010) (employee may have an expectation of privacy in the content of communications sent over employer-issued pagers); *United States v. Daniels*, 902 F.2d 1238, 1244-45 (7th Cir. 1990) (observing that a prison inmate's knowledge that his phone calls might be monitored does not amount to consent to having those calls recorded for all purposes); *Smith v. Maryland*, 442 U.S. 735, 749 (1979) (Marshall, J., dissenting) ("Privacy is not a discrete commodity, possessed absolutely or not at

6

all. Those who disclose certain facts to a bank or phone company for a limited business purpose need not assume that this information will be released to other persons for other purposes.").

In this day and age, virtually all electronic communications are recorded, stored, and made available to a third party of some kind. *See United States v. Jones*, 132 S. Ct. 945, 957 (2012) (Sotomayor, J., concurring) (observing that people today "reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks. People disclose the phone numbers that they dial or text to their cellular providers; the URLs that they visit and the e-mail addresses with which they correspond to their Internet service providers; and the books, groceries, and medications they purchase to online retailers."). The government engages in mass surveillance of personal email exchanged over non-private servers; popular email providers like Yahoo and Gmail make user content available to advertisers and marketers, and Big Data operations exist to monitor, store, and track information about individuals' personal email use. *See generally* Joshua A.T. Fairfield & Erik Luna, Digital Innocence, 99 CORNELL L. REV. 981 (July 2014) (describing the ways in which the NSA and Big Data agencies track, store, and mine on-line activity and communications of virtually everyone). Surveillance has even extended to the content of phone communications. *Id.* at 997. Americans are on notice that electronic communications are not completely private, but they engage in them anyway. This reality of modern life does not mean that opposing litigants should use subpoenas to rummage at will though those communications, should they find an easy way to get their hands on them.[2]

---

[2] The sheer volume of the calls that Defendants seek independently raises unique privacy concerns, not only for Plaintiff, but for the people with whom he communicated over the seven-year period at issue. As the Supreme Court has observed, data about a person that is aggregated over time is orders of magnitude more intrusive than a slice of data from a discrete period. *United States v. Jones*, 132 S. Ct. 945, 963-64 (Alito, J., concurring).

### 4. Defendants Have Not Made Any Showing That The Alleged Recordings Contain Evidence Relevant to the Litigation

Having established that Plaintiff may challenge the subpoena, this Court must next balance plaintiff's privacy interest and burden of compliance against the benefit of production of the material sought in determining whether the subpoena should be quashed or modified. *Simon,* 2017 WL 66818, at *3. The ISP Defendants' subpoena must be quashed where, as here, they cannot meet their burden of showing that all—or any—of the calls are likely to be relevant to the litigation. The call logs produced by IDOC indicate that ISP Defendants' subpoena has requested more than 3,000 telephone calls—all of which are between Plaintiff and his attorneys, or his wife, his daughters, his son, or various friends. Some of these calls are highly intimate. There is nothing in the logs to indicate that any of the calls are between Plaintiff and a witness in the Ascher homicide investigation, and Defendnats have pointed to no evidence suggesting they are. Rather, Defendants simply want to listen to thousands of Plaintiff's phone calls with his attorneys, friends, and other loved ones in the hopes of finding something relevant and useful. The subpoena is nothing more than an impermissible fishing expedition.

Case law fully supports Plaintiff's position. In *Simon,* the defendant, like the defendants here, sought to subpoena all of plaintiff's telephone calls for a 15-year period of time. The district court held that the defendant's broad discovery request did not outweigh Simon's privacy interest in the calls. *Id*. at *4. The court observed that the defendant had failed "to provide sufficient facts for the court to ascertain how all calls placed over the fifteen-year period of Simon's incarceration would either be relevant to the litigation or necessary to defend the claims against him." *Id.* The court observed that the defendant had failed to provide specific names, dates, times, or evidence that the calls are relevant to the litigation. *Id*.

Furthermore, the *Simon* court characterized the subpoena as a "broad fishing expedition" and contrasted it to the narrowly tailored subpoena at issue in *Coleman. Id.* at *3-4. In *Coleman*, also a wrongful conviction case, defendants issued a subpoena to IDOC seeking recorded phone calls between Plaintiff and specific witnesses to the crime. In contract, the *Coleman* subpoena individually listed the names of each person whose calls they believed would contain pertinent information. All of the individuals had previously given testimony in the underlying criminal matter. Further, deposition testimony revealed that the plaintiff had actually spoken to these individuals by telephone via third-parties while incarcerated. Under those specific circumstances, the *Coleman* court denied the motion to quash, finding that defendants had provided the necessary factual basis to justify the request. *Id*.

In *Montanez v. Guevara* and *Serrano v. Guevara*, two related wrongful conviction cases involving Chicago police officers, the defendants issued a subpoena to IDOC seeking all of the plaintiffs' recorded IDOC calls over a 20-year period. *See* Ex. A. The plaintiffs moved to quash and the court granted the motion, ordering that a narrowed subpoena seeking call logs "would be more appropriate in this matter." *Id.* More recently in *Maysonet v. Guevara*, the Court granted in part a third-party's motion to quash a subpoena to the IDOC for all correctional records and required the subpoena to be narrowed to prisoner call logs. Ex. D (1/15/20 Order in *Maysonet v. Guevara*, No. 18-cv-3242 (N.D. Ill.))

The subpoena issued in this case suffers from the same defect as the subpoenas issued in *Simon*, *Montanez*, and *Maysonet*, as it seeks years' worth of recorded calls without providing any factual basis to show the potential relevance of the calls. The subpoena does not identify what calls Defendants are specifically seeking, the identity of any particular individuals of interest, when the calls were placed or the nature of the calls, and in fact include conversations Plaintiff

had with his attorneys. If the Defendants could show, for example, that Plaintiff spoke by telephone to any of the witnesses in the case (as defendants were able to do in *Coleman*), Plaintiff would likely have no objection to such a request.

In fact, in a meet-and-confer Plaintiff suggested narrowing the subpoena's scope to include only calls Plaintiff had with individuals related to his criminal case, like witnesses and alternative suspects. Defendants refused this solution, guessing with any factual basis that Plaintiff could have used a third party to communicate information to a witness, or perhaps set up a three-way call. Defendants also suggested Plaintiff may have discussed the conditions of his confinement, which could be relevant to his damages.

This is pure speculation. Defendants have made no showing whatsoever as to the potential relevance of the calls they seek. In making this assertion of relevance, Defendants are in fact stating that—however unlikely, and with no factual basis—because Plaintiff may have at some point called his mother and asked her to give information to a third party whom she does not know, or perhaps mentioned something about his living conditions, they have a blanket right to listen to over 3,000 of Plaintiff's personal phone calls. Indeed, the fact that Defendants have seen Plaintiff's call logs but have not been able to identify a single call that likely has some actual relevancy to this litiation is telling. Consistent with the district court decisions in *Simon*, *Montanez*, and *Maysonet,* this request is simply overbroad and an infringement on Plaintiff's privacy interest in the calls. And to the extent Defendants are concerned that Plaintiff may suggest at trial that he was not able to freely communicate with loved ones while he was incarcerated, Defendants can point to the sheer number of calls he had during this time period as evidence to the contrary. The contents themselves are not relevant.

The subpoena is overbroad and should be quashed. *Jump v. Montgomery Cty.*, No. 13-3084, 2015 WL 6558851 (C.D. Ill. Oct. 29, 2015) (affirming magistrate judge's order quashing a subpoena to AT&T for telephone records of Plaintiff's mother; the disclosure of extensive personal information in order to obtain a minimal amount of potentially relevant information resulted in an undue burden on Plaintiff's mother); *see also Sokn v. Fieldcrest Cmty. Unit Sch. Dist.*, No. 10-1122, 2013 WL 84702, at *2 (C.D. Ill. Jan. 7, 2013) (The breadth of the relevancy concept should not be misinterpreted so as to allow "fishing expeditions in discovery."); *Jones v. Jackson State Univ.*, No. 07-MC-1029, 2007 WL 2670282, at *3 (C.D. Ill. Aug. 23, 2007) (overly broad subpoena for defendant's entire personnel file from a prior employer amounted to a fishing expedition and should be limited).

### 5. There is an Easy Solution to the Subpoena's Over-Breadth

Defendants have attempted to rationalize this grossly overbroad discovery on the basis that IDOC is not in a position to sort through or categorize Plaintiff's calls. To the extent that the Court does not quash the subpoena outright, a very simple solution exists: The Court can order Defendants to narrow the list of possibly relevant and non-privileged calls using the call log and then Plaintiff's counsel can review those calls, produce those that are indeed discoverable, and prepare a privilege log for those that are not. The parties can confer over any disputes and seek the Court's assistance, if necessary. Plaintiff offered this solution as the parties continued to meet and confer over email, but Defendants rejected it, without any explanation of why it was unacceptable to them, perhaps because they do, in fact, simply want to fish through 3,186 personal phone calls. Ex. E (Email Correspondence between Brady and Walsh).

11

This commonsense approach assures that Defendants will receive any relevant communications, prevents unwarranted intrusion to irrelevant personal matters, and does not prejudice Defendants in any way.

**CONCLUSION**

In conclusion, because Defendants' subpoena for all recordings of Plaintiff's phone calls spanning seven years seeks discussions protected by the attorney-client privilege and is not proportionate to the needs of the case, it should be quashed.

WHEREFORE, Plaintiff respectfully requests an order quashing the subpoena attached as Exhibit B and any other relief the Court deems just and appropriate.

RESPECTFULLY SUBMITTED,

**PATRICK PURSLEY**

BY: /s/ Rachel Brady
*One of Plaintiff's Attorneys*

Jon Loevy
Roshna Bala Keen
Rachel Brady
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900
brady@loevy.com

Ashley Waddell Tingstad
Hooper Hathaway, P.C.
126 S. State St.
Ann Arbor, MI 48104
(734) 662-4426
atingstad@hooperhathaway.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Rachel Brady, an attorney, certify that on February 7, 2020, I filed the foregoing motion using the Court's CM/ECF system, which will send an electronic notice of filing to all counsel of record via electronic mail.

/s/ Rachel Brady
*One of Plaintiff's Attorneys*