IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Patrick Pursley, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18 CV 50040 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| City of Rockford, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to Federal Rule of Civil Procedure 45(d), Plaintiff Patrick Pursley moves to quash the Illinois State Police (ISP) Defendants' subpoena for all phone call recordings made while Plaintiff was incarcerated at the Illinois Department of Corrections (IDOC) from 2013 to 2019. Plaintiff argues that the subpoena seeks information protected by the attorney-client privilege and that it infringes on his privacy interests by seeking to review private phone calls that have no relevance to this case. The ISP Defendants disagree. They contest Plaintiff's standing to attack the relevance of the information requested, argue that, in any event, the phone call recordings are relevant and outweigh Plaintiff's minimal privacy interests, and finally argue that the recorded phone calls are not protected by the attorney-client privilege.

**I. BACKGROUND**

Plaintiff's underlying complaint alleges that he spent twenty-three years in prison for a murder he did not commit. Specifically, Plaintiff alleges that various Rockford police officers obtained a false statement implicating Plaintiff in a murder and that ISP crime lab forensic scientists fabricated evidence that linked Plaintiff's handgun to the murder. In April 1994, Plaintiff was found guilty of first-degree murder by a jury and sentenced to natural life without parole. Plaintiff was incarcerated for the next twenty-three years. After an independent ballistics test concluded that neither the bullets nor the casings recovered at the crime scene matched Plaintiff's handgun, Plaintiff's motion for a new trial was granted. Plaintiff was released from prison on April 13, 2017. At his second trial for murder, Plaintiff was acquitted of all charges. Thereafter, Plaintiff brought this civil action alleging various constitutional rights violations and state law claims. Dkt. 100.

On January 16, 2020, the ISP Defendants issued a subpoena to IDOC seeking "[a]ll recorded telephone calls made or received by Patrick Pursley (#N60565) from 2013 – 2019."[1] Dkt. 166, Ex. B. According to Plaintiff, IDOC has already produced over 3,000 calls, a call log listing phone numbers associated with each call, and a list of names associated with each phone

---

[1] While the subpoena requests all recorded phone calls from 2013 to 2019, Plaintiff was released from prison on April 13, 2017. Thus, the recorded phone calls in question are from 2013 to 2017.

number. Dkt. 166 at 2. On February 7, 2020, Plaintiff moved to quash the ISP Defendants' subpoena. Dkt. 166. Counsel for the ISP Defendants have represented that they will not review any calls until this motion is resolved.

## II. DISCUSSION

**A. Standing**

A party has standing to move to quash a subpoena issued to a third party where the movant has a claim of privilege in the information sought[2] or the subpoena impinges on the movant's privacy interests. *See Simon v. Nw. Univ.*, No. 1:15-CV-1433, 2017 WL 66818, at *2 (N.D. Ill. Jan. 6, 2017) (collecting cases). Courts have conferred standing even where the movant's privacy interest is "minimal at best." *Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1546, 2012 WL 3717768, at *2 (N.D. Ill. Aug. 27, 2012).

The Court finds that Plaintiff has the minimal privacy interest necessary for standing. The ISP Defendants are seeking all recorded phone calls made or received by Plaintiff while he was incarcerated. *See* Dkt. 166, Ex. B. While inmates would reasonably expect that their phone calls could be accessed by prison officials, they would not reasonably expect that the details of their recorded phone calls would be handed over to civil litigants. *See, e.g.*, *Simon*, 2017 WL 66818, at *2; *Coleman v. City of Peoria*, No. 15-CV-1100, 2016 WL 3974005, at *3 (C.D. Ill. July 22, 2016). Thus, Plaintiff has demonstrated the minimal privacy interests necessary for standing.

The ISP Defendants concede that Plaintiff has minimal privacy interests in these phone calls. *See* Dkt. 175 at 5. They argue, however, that Plaintiff does not have standing to contest the subpoena on the grounds of relevance or burden. However, here, unlike the cases cited by the ISP Defendants, Plaintiff is objecting to the third-party subpoena based upon his privacy interests. In an effort to show that Plaintiff's privacy interests are paramount, he argues that the material sought is not relevant and thus cannot outweigh this interest. As set forth below, in determining whether to quash a third-party subpoena based upon a party's privacy interests, courts weigh the relevance of the information against the strength of the privacy interest. *See, e.g.*, *Simon*, 2017 WL 66818, at *2; *Coleman*, 2016 WL 3974005, at *3. Moreover, the Court must always consider the relevance of the subpoenaed material when determining if a subpoena should be quashed. *See Third Degree Films, Inc. v. Does 1-2010*, No. 4:11 MC 2, 2011 WL 4759283, at *1 (N.D. Ind. Oct. 6, 2011) ("However, implicit in the rule is the requirement that a subpoena seek relevant information."); *Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 621 (S.D. Ill. 2007) ("Although the Seventh Circuit Court of Appeals has not explicitly ruled that district courts may quash or modify a subpoena for seeking information irrelevant to the merits of a case, it has long recognized that the courts have 'wide discretion' in limiting the scope of discovery to topics of ultimate relevance.") (collecting cases). Thus, this Court finds that Plaintiff has standing to move to quash the subpoena based on his privacy interests and that he may raise relevance as a basis supporting his privacy argument.[3]

---

[2] The ISP Defendants do not contend that Plaintiff lacks standing to raise the attorney-client privilege.

[3] The ISP Defendants also cite *Glacier Films (USA), Inc. v. Does 1-29*, No. 15-CV-4016, 2015 WL 8989217, at *2 (N.D. Ill. Dec. 15, 2015) arguing that Plaintiff cannot claim undue burden of production on behalf of IDOC. However, Plaintiff does not make such an argument on behalf of IDOC. Instead, he argues, on his own behalf, that

2

**B. Privacy Interests**

In order to determine whether the IDOC subpoena should be quashed pursuant to Federal Rule of Civil Procedure 45(d) based on Plaintiff's privacy interests, the Court must balance the burden of compliance on Plaintiff's privacy interests against the benefit of production of the material sought. *See Simon*, 2017 WL 66818, at *3. And, as set forth above, implicit in any subpoena issued pursuant to Rule 45 is the requirement that a subpoena seek relevant information. Plaintiff argues that because the subpoena seeks information that is not relevant, his privacy interests outweigh any benefit associated with production of the recorded calls. Both Plaintiff and the ISP Defendants rely on two analogous cases that involve a motion to quash a subpoena seeking recorded prison telephone conversations.

In *Coleman*, the plaintiff sued Peoria police officers and detectives for violations of his constitutional rights after he was wrongfully incarcerated. *Coleman*, 2016 WL 3974005, at *2. The defendants issued subpoenas to IDOC correctional facilities seeking recordings of Coleman's and his cellmate's telephone calls with individuals who were arrested at the scene of the underlying crime or were potential witnesses in previous trial proceedings. *Id.* Coleman and his cellmate moved to quash the subpoena based on their privacy rights. *Id.* at *3. The Central District of Illinois held that while Coleman and his cellmate had the minimal privacy interests required for standing, they "failed to demonstrate that the burden on them from the disclosure of personal, otherwise private information is sufficient to warrant quashing the subpoenas for the calls that they made." *Id.* at *4. The court reasoned that Coleman called these possible witnesses while he was in prison and that the defendants were entitled to discover the contents of those calls. *Id.* Coleman's and his cellmate's privacy interests were less than a private citizen making calls at home because they knew that their calls were recorded. *Id.* In light of the relevance of those calls, their lessened privacy interests were insufficient to quash the subpoena. *Id.*

In *Simon*, the Northern District of Illinois distinguished *Coleman* in ruling that a subpoena seeking all of an inmate's calls over a fifteen-year period was too broad. *Simon*, 2017 WL 66818, at *4. There, the plaintiff had sued Northwestern University and Ciolino, an adjunct professor of its investigative journalism class, for malicious prosecution among other causes of action based on Simon's incarceration for a double murder he alleged that he did not commit. *Id.* at *1. Ciolino issued a subpoena to IDOC requesting all non-privileged recorded phone calls between Simon and non-incarcerated individuals while he was in prison. *Id.* at *2. Simon moved to quash the subpoena because the release of these phone calls would violate his right to privacy and some of these phone calls were subject to the attorney-client privilege. The court held that Ciolino "failed to provide sufficient facts for the court to ascertain how all calls placed over the fifteen-year period of Simon's incarceration would either be relevant to this litigation or necessary to defend the claims against him." *Id.* at *4. Ciolino did not provide any particular facts such as specific names, dates, times, or any evidence supporting that the calls were relevant to the litigation. *Id.* The court contrasted this "broad fishing expedition" with the "more focused and narrowed request" in *Coleman*. *Id.* While the *Coleman* subpoena listed specific people who were key witnesses and had recorded phone calls with the plaintiff, Ciolino did not provide any

---

the subpoena must be quashed because it seeks information protected by the attorney-client privilege and infringes on his privacy interests by seeking irrelevant information.

3

specific names or dates and left the court to wonder if Simon's calls contained relevant information. *Id.* "By throwing darts in the dark, Defendant has failed to tip the balance in his favor." *Id.* Thus, the court held that the subpoena was too broad to be enforced. *Id.*

Here, the ISP Defendants' subpoena seeking "[a]ll recorded telephone calls made or received by Patrick Pursley (#N60565) from 2013 – 2019."[4] is more like the "broad fishing expedition" in *Simon* than the "more focused and narrowed request" in *Coleman*. *Id.* And as in *Simon*, Plaintiff here argues that because the subpoena seeks irrelevant information, it cannot outweigh his privacy interests in those calls.

The ISP Defendants argue that because Plaintiff's allegations in his second amended complaint place his personal and familial relationships at issue, their subpoena request is relevant. They cite to Plaintiff's allegations that his wrongful conviction deprived him of innumerable life experiences and opportunities, including the chance to watch his young children grow up as well as his allegation that he suffered tremendous damage due to his separation from his family for twenty-three years. This argument fails initially because the subpoena is not narrowed to only those calls with family members. Rather, it seeks *all* recorded phone calls made or received by Plaintiff while he was incarcerated. Even if it were limited to calls with family members, however, the ISP Defendants do not explain how telephone conversations with family members could rebut the allegation that Plaintiff was deprived of watching his young children grow up or that he was separated from his family during his incarceration. These allegations are facts that no conversation could rebut. The ISP Defendants have failed to provide sufficient facts for this Court to determine that their subpoena seeks information relevant to this litigation.[5]

The ISP Defendants also allege, in support of their wide-ranging subpoena, that "Plaintiff likely discussed his criminal case and post-conviction proceedings while incarcerated." Dkt. 175 at 6. This is the exact form of "dart throwing" that the court declined to endorse in *Simon*. *Simon*, 2017 WL 66818, at *4. Moreover, an assertion that "the material sought may contain relevant information" is insufficient to allow an unlimited subpoena. *Wilson v. O'Brien*, No. 07 C 3994, 2009 WL 763785, at *8 (N.D. Ill. Mar. 20, 2009) (quoting *Patterson v Burge*, No. 03 C 4433, 2005 WL 43240, at *2 (N.D. Ill. Jan. 6, 2005)).

Finally, the ISP Defendants argue that they cannot provide evidence that the telephone calls contain relevant information because requiring them to do so is "the epitome of turning the discovery process inside out." Dkt. 175 at 7. However, as set forth above, Plaintiff has specifically asserted that Plaintiff's over 3,000 telephone calls are irrelevant to his factual allegations that his incarceration kept him from watching his children grow up and kept him separated from his family members. In light of that assertion, it is incumbent on the ISP Defendants to put forth some argument supporting the relevance of those conversations. While this Court is not requiring the ISP Defendants to identify specific recordings or dates, it does

---

[4] The time period requested here is less than the fifteen years' worth of recorded phone calls in *Simon*. *Simon*, 2017 WL 66818, at *4. However, this merely reflects the time that Plaintiff was incarcerated. This difference does not make *Simon* distinguishable from this case.

[5] To the extent that the ISP Defendants wish to argue that those damages were lessened by the number of times he was able to talk to his family by phone, that can be established by obtaining the call logs which identify the number of calls he had with his family members. This Court is allowing those call logs to be produced pursuant to the present subpoena.

require some explanation as to how conversations with family members could rebut the seemingly irrebuttable factual assertion that twenty-three years of incarceration kept Plaintiff physically separated from his family. This Court is not persuaded that the ISP Defendants have done so.

**C. Attorney-client privilege**

Plaintiff also moved to quash the subpoena because it would reveal information protected by the attorney-client privilege. The Court must quash or modify a subpoena if it requires the disclosure of privileged information. FED. R. CIV. P. 45(d)(3). The parties dispute whether the attorney-client privilege protects recorded prison phone conversations between Plaintiff and his attorneys.

The Seventh Circuit has long-embraced the following general principles of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992). However, "the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party who is not an agent of either the client or attorney." *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997).

The Seventh Circuit has not addressed the issue of whether the attorney-client privilege protects recorded prison telephone calls. However, it has held that the marital communications privilege does not apply to recorded prison telephone calls between spouses. *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998). The court reasoned that the spousal communications were not made in confidence because of "the well-known need for correctional institutions to monitor inmate conversations[.]" *Id.* At least two district courts in this circuit have extended *Madoch*'s reasoning to the attorney-client privilege context and ruled that attorney-client communications over recorded prison telephone lines are not privileged. *Simon*, 2017 WL 66818, at *5; *United States v. Thompson*, No. 07-30010, 2007 WL 2700016, at *2 (C.D. Ill. Aug. 9, 2007). In both cases, the court ruled that because the inmate knew that his conversations with his attorney were being recorded, no expectation of privacy existed and thus the attorney-client privilege was waived. Similarly, the Second and Eighth Circuits have held that prison telephone calls are not covered by the attorney-client privilege because there is no reasonable expectation of confidentiality. *United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011) ("[W]here an inmate is aware that his or her calls are being recorded, those calls are not protected by a privilege."); *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003) ("The presence of the prison recording device destroyed the attorney-client privilege. Because the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations would remain private.").

5

Applying the reasoning of the above cases, it is clear that Plaintiff could not reasonably expect that his conversations with his attorneys on recorded prison telephone lines would be confidential. The Offender Orientation Manual explicitly states that calls made from Stateville Correctional Center are subject to monitoring and recording. Dkt. 175, Ex. A at 12, Ex. B at 12. When accepting a call, inmates are reminded each time that calls are "subject to being monitored and recorded." *Id.* The manual also provides the option of scheduling an unmonitored communication line between the inmate and the attorney. Dkt. 175, Ex. A at 13–14, Ex. B at 13–14. IDOC's website unequivocally states that an offender call is subject to monitoring or recording unless it is a private unmonitored attorney call. *See* Dkt. 175 at 3. It cannot be that Plaintiff intended his attorney phone calls to be confidential if he knew his phone calls were recorded and still communicated with his attorneys via phone. In fact, Plaintiff concedes that he knew that some of his phone calls with his attorneys were recorded. *See* Dkt. 166 at 5. Thus, Plaintiff waived his attorney-client privilege by knowingly communicating with his attorneys on a recorded line.

Plaintiff argues that he did not waive the privilege because he only communicated with his attorneys over a recorded line because he believed unrecorded calls must be initiated by his attorneys. He cites *Simon* where the court suggested, in *dicta*, that an "impediment to his access to unrecorded calls" might preserve his attorney-client privilege.[6] *See Simon*, 2017 WL 66818, at *5. No such "impediment" exists here. The Offender Orientation Manual outlines the process for scheduling an unrecorded private attorney call. Dkt. 175, Ex. A at 13–14, Ex. B at 13–14. Plaintiff could have telephoned his attorneys on the recorded line and simply asked his attorneys to arrange for an unrecorded telephone call to discuss confidential matters. Plaintiff admits that he knew that his attorneys could arrange such a confidential call but declined to follow this process because he wanted to initiate the phone call. By proceeding to have discussions on a telephone line he knew was being recorded, Plaintiff has waived the attorney-client privilege.

---

[6] Plaintiff also cites a minute entry order from *Prince v. Kato*, asserting that the court quashed a subpoena as to a prisoner's phone calls with his attorney and psychotherapist. *See Prince v. Kato*, No. 18-CV-02952 (N.D. Ill. Oct. 10, 2019), ECF 156. Plaintiff misreads this order. The court did not rule on the issue of privilege and did not quash the subpoena as to the prisoner's phone calls with his attorney and psychotherapist. Rather, the court urged the parties to meet and confer regarding issues such as "whether IDOC mistakenly recorded these phone calls, whether the IDOC takes action to not record attorney or psychotherapists calls, or whether the calls were intentionally recorded" because these issues may determine whether the privilege was waived. Here, unlike in *Prince*, those issues have already been addressed for this Court.

## III. CONCLUSION

The Court grants Plaintiff's motion to quash the IDOC subpoena [166] in part. The ISP Defendants must return all recorded phone calls back to IDOC and destroy any copies already made. The ISP Defendants may retain the call log and the list of names associated with each phone number on the log. The ISP Defendants may file a motion for leave from this Court to serve a more particularized subpoena consistent with this opinion.

Dated: March 24, 2020        By:   _____
                                   Lisa A. Jensen
                                   U.S. Magistrate Judge