

**EXHIBIT 1**

# Transcript of Samantha L. Crabtree

**Date:** September 23, 2020
**Case:** Pursley -v- The City of Rockford, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

1           IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF ILLINOIS

3   - - - - - - - - - - - - x

4   PATRICK PURSLEY,            :

5          Plaintiff,        :

6   v.                         : Case No. 3:18-cv-50040

7   THE CITY OF ROCKFORD,   :

8   et al.,                    :

9          Defendants.   :

10  - - - - - - - - - - - - x

11

12

13                  Deposition of

14             SAMANTHA L. CRABTREE

15             Conducted Virtually

16

17         Wednesday, September 23, 2020

18                10:14 a.m. CST

19

20

21

22  Job No.: 323185

23  Pages: 1 - 123

24  Reported By: Konni L. Stapf, CSR, RPR

1              Deposition of SAMANTHA L. CRABTREE,

2    conducted virtually.

3

4

5

6         ** ALL PARTIES ATTENDED REMOTELY **

7

8

9

10             Pursuant to subpoena, before Konni L.

11   Stapf, a Certified Shorthand Reporter, Registered

12   Professional Reporter in and for the State of

13   Illinois.

14

15

16

17

18

19

20

21

22

23

24

```
1                    A-P-P-E-A-R-A-N-C-E-S

2    ON BEHALF OF THE PLAINTIFF:

3         LOEVY & LOEVY

4         Rachel Brady

5         311 N Aberdeen Street, Suite 3

6         Chicago, IL  60607

7         312.243.5900

8         brady@loevy.com

9

10   ON BEHALF OF SAMANTHA CRABTREE:

11        DYKEMA GOSSETT, PLLC

12        Kevin Connor

13        10 South Wacker Drive, Suite 2300

14        Chicago, IL  60606

15        312.627.8322

16

17   ON BEHALF OF THE DEFENDANTS JIM BOWMAN, RON

18   GALLARDO, JOHN GENENS, GREG HANSON, JEFF HOUDE,

19   SAM POBJECKY AND MARK SCHMIDT:

20        HINSHAW & CULBERTSON, LLP

21        Michael F. Iasparro

22        100 Park Avenue

23        Rockford, IL  61101

24        815.490.4900
```

```
1              A-P-P-E-A-R-A-N-C-E-S (Continued)

2

3   ON BEHALF OF THE DEFENDANTS DANIEL GUNNELL, PETER

4   STRIUPAITIS AND JACK WELTY:

5        ASSISTANT ATTORNEY GENERAL

6        Sunil Bhave

7        100 West Randolph Street, Thirteenth Floor

8        Chicago, IL  60601

9        312.814.6122

10       sbhave@atg.state.il.us

11

12  ON BEHALF OF THE ESTATE DEFENDANTS HOWARD

13  FORRESTER, GARY REFFETT, AND DAVID EKEDAHL:

14       BARRICK, SWITZER, LONG, BALSLEY &

15         VAN EVERA, LLP

16       Robert C. Pottinger

17       6833 Stalter Drive

18       Rockford, IL  61108

19       815.962.6611

20       rcpottinger@bslbv.com

21

22

23

24
```

```
 1            A-P-P-E-A-R-A-N-C-E-S (Continued)

 2

 3   ON BEHALF OF THE DEFENDANTS:

 4        WILLIAMS MCCARTHY, LLP

 5        Joel M. Huotari

 6        120 West State Street, 4th Floor

 7        P.O. Box 219

 8        Rockford, IL  61105-0219

 9        815.987.8900

10        jhuotari@wilmac.com

11

12   ON BEHALF OF THE DEFENDANT CITY OF ROCKFORD:

13        CITY OF ROCKFORD

14        Ifeanyi Mogbana

15        Assistant City Attorney

16        425 East State Street

17        Rockford, IL  61104

18        815.298.7855

19

20

21

22

23

24
```

INDEX TO EXAMINATION

WITNESS:  SAMANTHA L. CRABTREE

EXAMINATION                                    PAGE

By Ms. Brady                                 7, 115
By Mr. Iasparro                             56, 108
By Mr. Pottinger                       92, 109, 120
By Mr. Huotari                       100, 112, 119
By Mr. Mogbana                                  109

INDEX TO EXHIBITS

NUMBER        DESCRIPTION                      PAGE

NO. 1      Burger King statement            26
NO. 2      Grand Jury testimony             26
NO. 3      Ascher murder statement          36
NO. 4      Incident Report 6/10/93          65
NO. 5      Incident Report 8/5/93           66
NO. 6      Firearms Transaction Record      71
NO. 7      Photographs                      72
NO. 8      Firearms Transaction Record      82
NO. 9      Miranda Rights                   86
NO. 10     Consent to Search                87
NO. 11     Affidavit                        91
NO. 12     Letter                           115
NO. 13     Bank robbery statement           116
NO. 14     Eddy Report                      117

```
1                    SAMANTHA L. CRABTREE,
2   a witness herein, having been first duly sworn to
3   speak the truth and nothing but the truth, was
4   examined and testified as follows:
5
6                       EXAMINATION
7   BY MS. BRADY:
8       Q.      Good morning, Ms. Crabtree.  My name is
9   Rachel Brady, and I represent the plaintiff in this
10  lawsuit named Patrick Pursley.
11              Can you, please, state your name and
12  spell it for the record.
13      A.      Samantha Crabtree, S-a-m-a-n-t-h-a,
14  C-r-a-b-t-r-e-e.
15      Q.      Okay.  Let the record reflect that this
16  is the deposition of Samantha Crabtree taken
17  pursuant to subpoena and the federal rules of civil
18  procedure.
19              By agreement, and due to the ongoing
20  Coronavirus crisis, the parties are in separate
21  spaces and the deposition is proceeding by Zoom.
22              Ms. Crabtree, where are you currently
23  located?
24      A.      At the Dykema Law Firm in Chicago.
```

1      Q.      Is anyone in the room with you?

2      A.      Kevin.

3      Q.      And that's your attorney?

4      A.      That's correct.

5      Q.      Is anyone else in there?

6      A.      No.

7      Q.      Have you ever been deposed before?

8      A.      No.

9      Q.      I'll go over some of the ground rules.

10             I am going to ask you questions and you

11     need to give answers.  You just took an oath, so

12     you need to testify truthfully just as if you were

13     testifying in a courtroom.

14             If you don't understand one of my

15     questions, please just ask me to clarify it, and I

16     will do my best to ask a better question.  On the

17     flip side, if you do answer my question, I'm going

18     to assume that you understood it.  Okay?

19     A.      Yes.

20     Q.      And because there is a court reporter

21     transcribing everything that we say, in order to

22     get a clean record, I would just ask that you wait

23     for me to ask my full question before you start

24     your answer, even if you think you know where my

1    question is going.  And likewise, I will wait for

2    you to complete your answer before I start asking

3    my next question.

4         A.     Yes, ma'am.

5         Q.     And then for that reason too, it's

6    important that you keep your answers verbal so

7    rather than like nodding your head or shrugging

8    your shoulders, you need to say a loud yes or no.

9         A.     Yes.

10        Q.     From time to time your lawyer or one of

11   the other lawyers on the deposition might object to

12   one of my questions.  Unless your lawyer instructs

13   you not to answer, you should let everybody finish

14   their objections, and then go ahead and answer the

15   question.

16        A.     Okay.

17        Q.     And we can take a break any time that

18   you need one unless there is a question pending.

19   So if you need a break, just let me know, you can

20   finish your answer to whatever question that I just

21   asked and then we can take a break.

22        A.     Okay.

23        Q.     All right.  Is there any reason that

24   you cannot provide complete and accurate answers to

1    my questions today?

2          A.     No.

3          Q.     Do you have any conditions that might

4    affect your ability to provide truthful and

5    accurate testimony?

6          A.     No.

7          Q.     Do you have any conditions affecting

8    your memory?

9          A.     No.

10         Q.     Do you take any medications that affect

11   your memory?

12         A.     No.

13         Q.     Other than in this -- I'm sorry.

14   Strike that.

15                Have you ever been a party to a civil

16   lawsuit?

17         A.     No.

18         Q.     Okay.  And either as a plaintiff or as

19   a defendant?

20         A.     No.

21         Q.     And have you ever been a criminal

22   defendant in a lawsuit?

23         A.     Yes.

24         Q.     How many cases have you been a criminal

1  defendant in?

2        A.      I think one, maybe two -- two.

3        Q.      Can you tell me what those cases were

4  about?

5        A.      One was for robbery and second was for

6  perjury.

7        Q.      And what was the outcome of the robbery

8  case, do you remember?

9        A.      I pleaded guilty.

10       Q.      And what was the outcome of the perjury

11  case?

12       A.      I pleaded guilty.

13       Q.      Did you do anything to prepare for your

14  deposition today?

15       A.      Conversations with my attorney.

16       Q.      Without telling me what you discussed

17  with your attorney, can you tell me how many times

18  you met with your attorney?

19       A.      Face-to-face?

20       Q.      Or conversations that you had over the

21  phone or Zoom?

22       A.      About three.

23       Q.      And was anyone with you when you met

24  with your attorney?

1        A.      No.

2        Q.      Or talked to your attorney?

3        A.      No.

4        Q.      And about when were your meetings or

5    conversations with your attorney?

6        A.      Various times.

7        Q.      Like when was the most recent

8    conversation you had with your attorney about this

9    dep?

10       A.      Yesterday.

11       Q.      And do you remember about how long that

12   conversation lasted?

13       A.      15 minutes.

14       Q.      Okay.  Then before that, do you

15   remember when the next most recent conversation you

16   had with your attorney was?

17       A.      I believe on Monday.

18       Q.      And about how long did that

19   conversation last?

20       A.      About 15, 20 minutes.

21       Q.      Okay.  And then before that, you said

22   that you thought you maybe had a third conversation

23   with your attorney.  Do you remember when that was?

24       A.      It was some time in the week prior.

1      Q.      Okay.  And do you remember about how

2  long that conversation lasted?

3      A.      Probably about 30 minutes.

4      Q.      And during any of those meetings or, I

5  guess, otherwise, did you review any documents or,

6  like, transcripts to prepare for this deposition?

7      A.      No.

8      Q.      Did you review any, like, newspaper

9  articles or media posts or anything like that?

10     A.      No.

11     Q.      Have you at any point since 1994

12 reviewed any documents or transcripts related to

13 the Ascher murder or Patrick Pursley's criminal

14 trial?

15     A.      No.

16     Q.      Have you reviewed your own testimony

17 transcripts from any of the testimony that you gave

18 or any of the statements that you gave?

19             (Discussion off the record; technical

20 difficulty.)

21 BY MS. BRADY:

22     Q.      I'll ask that one again.  Have you

23 reviewed transcripts from your own -- any of the

24 testimony that you gave in relation to the Ascher

1  homicide or, like, typed versions of the statements

2  that you gave during the Ascher investigation?

3       A.    No.

4       Q.    Have you read the complaint in Patrick

5  Pursley's civil case, the one we're taking this

6  deposition for?

7       A.    No.

8       Q.    Do you have an understanding of what

9  that civil case is about?

10      A.    I have the understanding of what was

11 stated on the subpoena.

12      Q.    Okay.  And can you describe to me, as

13 best that you can, what your understanding is about

14 this civil case?

15      A.    It's a lawsuit brought on by Patrick

16 Pursley against the City of Rockford.

17      Q.    Do you know anything else about this

18 civil case?

19      A.    No.

20      Q.    Do you know who any of the defendants

21 are?

22      A.    I don't believe so, no.

23      Q.    I'm just going to read you a list of

24 names, and then when I'm done, I'll ask you if you

1    know who any of those people are.

2               Steve Pirages, Howard Forrester, James

3    Barton, John Genens, Jeff Houde, Gary Reffett, Dave

4    Ekedahl, Mark Schmidt, Doug Williams, James Bowman.

5               Do you know who any of those people

6    are?

7        A.    The Forrester name I remember from

8    previously, but I'm not sure who that is.

9               MR. POTTINGER:  That's breaking up.

10   I'm not sure if the court reporter is experiencing

11   that same thing.

12              THE COURT REPORTER:  Yes, it's

13   definitely breaking up.

14              MR. POTTINGER:  I think generally this

15   is kind of breaking up -- I'm not sure if that's

16   just -- it's not just you.  It seems like everyone

17   is --

18              MR. CONNOR:  The witness is also having

19   some trouble over here.

20              MR. HUOTARI:  This is Joel speaking.  I

21   think if everybody who is not speaking could turn

22   off their video feed, it might reduce the burden on

23   Zoom.

24              (Discussion off the record; technical

1    difficulty.)

2    BY MS. BRADY:

3        Q.    So the last question I asked you, I

4    read you a list of names.  Did you hear the

5    complete list or did it break up?

6        A.    I would like you to repeat it to make

7    sure that it didn't.

8        Q.    So the list was Steven Pirages, Howard

9    Forrester, James Barton, John Genens, Jeff Houde,

10   Gary Reffett, David Ekedahl, Mark Schmidt, Doug

11   Williams, or James Bowman.

12       A.    No.  As I said, the Forrester name is

13   familiar, but I don't even know who that is.

14       Q.    What about Pete Striupaitis, Jack

15   Welty, or Dan Gunnell?

16       A.    No, I have no idea who they are.

17       Q.    Okay.  And you said that you were

18   familiar with Howard Forrester.  Can you tell me

19   why you're familiar with the name Howard Forrester?

20       A.    I just remember the name.

21       Q.    Okay.  Other than your attorney, have

22   you discussed this deposition with anyone?

23       A.    No.

24       Q.    You haven't talked to anybody from the

1    State's Attorney's Office or the Rockford Police

2    Department or anything like that?

3         A.    No.

4         Q.    Have you personally spoken with any of

5    the attorneys representing the defendants?  So

6    that's all the folks who are on the Zoom right now.

7         A.    No.

8         Q.    Where were you born?

9         A.    Rockford, Illinois.

10        Q.    And where did you grow up?

11        A.    Loves Park, Illinois.

12        Q.    Are you currently married?

13        A.    No.

14        Q.    Do you have any children?

15        A.    Yes.

16        Q.    Can you give me the names of your

17   children, please.

18        A.    Daniel, Erica, Marcus, Nyjah, and

19   McKenzie.

20        Q.    And do they all share your last name?

21        A.    No.

22        Q.    Can you tell me your children's full

23   names, please.

24        A.    Sure.  Daniel Eddy, Erica Eddy, Marcus

```
1   Crabtree, Nyjah Pursley, McKenzie Crabtree.

2        Q.      Okay.  And where do your children live?

3        A.      Various places.

4        Q.      Okay.  Where does Daniel live?

5        A.      In Illinois.

6        Q.      What about Erica?

7        A.      Michigan.

8        Q.      Marcus?

9        A.      Rockford, Illinois.

10       Q.      Where does Nyjah live?

11       A.      Arkansas.

12       Q.      And where does McKenzie live?

13       A.      Illinois.  Rockford.

14       Q.      And you live in Rockford now, correct?

15       A.      Yes.

16       Q.      Are you employed?

17       A.      Not at this time.

18       Q.      Okay.  Did you graduate from high

19   school?

20       A.      Yes.

21       Q.      When was that?

22       A.      1987.

23       Q.      And what high school did you graduate

24   from?
```

1    A.    Harlem High School.

2    Q.    And that was in Rockford or Loves Park?

3    A.    That's in Machesney Park, actually.

4    Q.    And then after high school, did you go

5  on to any additional schooling?

6    A.    Yes, I did.

7    Q.    What was that?

8    A.    There were various times that I went

9  back to school.  I do have an associate's in

10  business management.

11    Q.    Okay.

12    A.    And have started my bachelor's in human

13  resources.

14    Q.    Are you currently in school?

15    A.    Not at this time, not enrolled.

16    Q.    After you graduated high school, what

17  was your first job?

18    A.    After high school?

19    Q.    Yes.

20    A.    I believe I worked for Burger King in

21  Machesney Park.

22    Q.    And do you remember how long that you

23  worked for the Burger King in Machesney Park?

24    A.    A couple of years.

1          Q.      And then after that job at Burger King,

2     where did you work?

3          A.      I don't remember.

4          Q.      Can you tell me any other jobs that you

5     remember having in high school?

6          A.      In high school?

7          Q.      Since high school.

8          A.      Yes, I remember some.

9          Q.      Can you tell me about the other jobs

10    that you had apart from the Burger King?

11         A.      Well, last year I worked for a company,

12    actually into this year, called Ageatia based out

13    of Schaumburg.  Prior to that, I worked for

14    Corporate Services based out of Rockford in two

15    different locations, in Dixon and Sterling.

16                 Before that, I worked at a company

17    called Bacon's Information that was for about five

18    years.  That's basically, I guess it.  There are a

19    few in there I don't remember.

20         Q.      Okay.  And you said that you were most

21    recently employed at Ageatia?

22         A.      Ageatia Global Solutions.

23         Q.      What did you do for Ageatia?

24         A.      I was a business development account

1    manager.

2         Q.      And you said that was about a year?

3         A.      It ended in July of this year due to

4    COVID.

5         Q.      And then what did you do for Corporate

6    Services?

7         A.      I was a branch manager.  It's all

8    staffing.

9         Q.      And for how long were you at Corporate

10   Services?

11        A.      Six years.

12        Q.      And then you said Bacon's Information?

13        A.      That's correct.

14        Q.      And what did you do there?

15        A.      That was a clipping service.  I had a

16   few jobs there.

17        Q.      Okay.  Do you live with anyone

18   currently?

19        A.      Yes.

20        Q.      Who do you live with?

21        A.      My significant other, Michael Fuller.

22        Q.      Fuller?

23        A.      That's correct.

24        Q.      All right.  And I think that you

1    mentioned this, but what was your associate's

2    degree in?

3         A.     Business management.

4         Q.     Okay.  So I want to start off by asking

5    you some questions about an exhibit that I'm going

6    to put up on the screen, so give me a second and

7    then let me know if you can't see it.

8              Can you see this document on your

9    screen?

10        A.     I'm sorry, what did you say?

11        Q.     Can you see this document on your

12   screen?

13        A.     Yes.

14        Q.     Okay.  So for the record this is a

15   one-page document Bates labeled Schmidt 67.

16             Ms. Crabtree, have you ever seen this

17   document before?

18        A.     Upon the advise of my counsel, I assert

19   my Fifth Amendment Right and respectfully decline

20   to answer the question.

21        Q.     And I think earlier, before we went on

22   the record, your counsel said that you were going

23   to be taking the Fifth and to save time after

24   asserting your right formally, just this time, that

1    going forward you can just say Fifth Amendment or

2    something like that, and we all understand.

3         A.    Thank you.

4         Q.    Okay.  Do you recall giving this

5    statement?

6         A.    I'm taking the Fifth Amendment.

7         Q.    I'd like to direct your attention to

8    this second paragraph.  So this is kind of four big

9    paragraphs and I'm looking at the second one now.

10              It says, on the morning of 4/15/93

11   Patrick got up at, approximately, 4:30 a.m. and he

12   put on his black combat boots and his black

13   pullover sweatshirt and a pair of jeans, and he

14   left and he did not tell me where he was going.  He

15   was gone for about an hour.

16              When he returned, he did not say

17   anything.  He just took a bath and stayed up, but

18   he did not tell me where he had went.  Later that

19   day, sometime in the afternoon, I saw that Patrick

20   had a large -- something, I can't read that word --

21   of money, and I figured that he had robbed

22   something that morning when he had left.

23              Do you see that?

24        A.    I'm taking the Fifth.

1      Q.      That statement isn't true, is it?

2      A.      I'm taking the Fifth Amendment.

3      Q.      And you made this statement because

4   Detective Schmidt and Forrester told you to, right?

5              MR. IASPARRO:  Objection.  Form.

6      A.      I'm taking the Fifth Amendment.

7   BY MS. BRADY:

8      Q.      Now, if you look down to the final

9   paragraph of this document, it says, that weekend I

10  asked Patrick if he had robbed the Burger King on

11  Riverside, and he stated, yes, nothing more was

12  said about that.

13             Do you see that?

14     A.      I'm taking the Fifth Amendment.

15     Q.      And do you see your initials at the

16  beginning and the end of that sentence?

17     A.      I'm taking the Fifth Amendment.

18     Q.      This sentence isn't true, correct?

19     A.      I'm taking the Fifth Amendment.

20             MR. IASPARRO:  I object to form with

21  respect to that question.  Michael Iasparro.

22  BY MS. BRADY:

23     Q.      And you included this sentence in your

24  statement or these two sentences in your statement

1   because Detective Schmidt and Forrester told you

2   to; isn't that right?

3           MR. IASPARRO:  Object to form.

4       A.    I'm taking the Fifth Amendment.

5   BY MS. BRADY:

6       Q.    And do you see your signature down

7   there at the bottom signed Samantha L. Crabtree

8   1993?

9       A.    I'm taking the Fifth Amendment.

10      Q.    That's your signature, right?

11      A.    I'm taking the Fifth Amendment.

12      Q.    And you signed this document even

13  though it wasn't true, correct?

14      A.    I'm taking the Fifth.

15          MR. IASPARRO:  I object to form with

16  respect to that question.

17  BY MS. BRADY:

18      Q.    And you signed the statement because

19  you felt threatened by Detective Schmidt and

20  Forrester; isn't that right?

21          MR. IASPARRO:  Object to form.

22      A.    I'm taking the Fifth Amendment.

23          MR. POTTINGER:  This is Robert

24  Pottinger on behalf of the Estate of Howard

1    Forrester.  I just wanted to make sure that we got

2    on the record that we had a stipulation prior to

3    the deposition that all the other codefendants are

4    joining in with the initial objection by one of the

5    other defense counsel.

6              MR. MOGBANA:  And also, this is Ifeanyi

7    with the City.  If the witness could just pause a

8    little bit so that the objection would come in

9    before she asserts the Fifth, that way, we'll have

10   a clean record.  Thank you very much.

11             THE WITNESS:  Yes.  Absolutely.

12             MS. BRADY:  And for the record, we can

13   mark this document as Exhibit 1.

14             (Deposition Exhibit 1 marked

15               for identification.)

16             MS. BRADY:  I'm now going to show you

17   another exhibit that we'll mark as Exhibit 2.

18             (Deposition Exhibit 2 marked

19               for identification.)

20   BY MS. BRADY:

21       Q.    This is a 12-page document, beginning

22   at the Bates labeled RFD Defendants 5234.

23             Can you see this document on your

24   screen, Ms. Crabtree?

1        A.      Yes.

2        Q.      So for the record, this is a transcript

3   of the Grand Jury testimony that you gave on

4   June 23, 1993.  I'm going to just scroll through

5   the pages, unless you have a paper copy in front of

6   you.  Do you?

7        A.      No.

8        Q.      I'm just going to flip through the

9   pages, so you can take a look at it, and then I'll

10  ask you about it, you know, some specific things

11  that are in here, but I just want you to

12  familiarize yourself with the document itself.

13          Ms. Crabtree, have you ever seen the

14  transcript of your Grand Jury statement before?

15       A.      I'm taking the Fifth Amendment.

16       Q.      All right.  So I'm going to flip now to

17  the third page of this testimony, which is Bates

18  labeled RFD Defendants 5236, and direct your

19  attention to this exchange right here that I just

20  highlighted.

21          So the question was:  "Now, Sam, is it

22  correct, before we had you come in here today --

23  we meaning someone in our office -- an attorney in

24  our office, took you before Judge Agnew and our

1    office requested immunity for you regarding what

2    you were going to testify to before the Grand

3    Jury?"  And you, the witness, responded yes?

4            Do you see that there?

5        A.    I'm taking the Fifth Amendment.

6        Q.    Do you recall the offer of immunity

7    that you received in exchange for your Grand Jury

8    testimony?

9        A.    I'm taking the Fifth Amendment.

10       Q.    If you look at the next page, this is

11   the fourth page of this transcript.  Starting down

12   here at this line that I've highlighted.  This is

13   you being questioned.

14           The question is:  "Sam, I'm going to

15   ask you about the events of Friday night April 2 of

16   this year.  That is the night Andy Ascher was shot.

17   Were you and Patrick home that Friday night early

18   in the evening?"  And you answered, "yes".

19           The question is:  "About what time did

20   you and he leave home?  The answer was:  "About

21   9:00?"

22           Do you see that?

23       A.    I'm taking the Fifth Amendment.

24       Q.    Okay.  This was not true; isn't that

1    right?

2              MR. IASPARRO:  Object to form.

3         A.    I'm taking the Fifth Amendment.

4    BY MS. BRADY:

5         Q.    All right.  So I'm continuing down the

6    bottom of this page.  The question is:  "Where did

7    you and he go when you left at 9:00 p.m.?"

8              Flipping to the next page, and you

9    said, "We were going to find a house to break

10   into."

11             That testimony wasn't true either, was

12   it?

13             MR. IASPARRO:  Object to form.

14        A.    I'm taking the Fifth Amendment.

15   BY MS. BRADY:

16        Q.    Now, I'm jumping down to this line.

17   The question was:  "Did you around 10:00 that same

18   evening end up on a street you know to be Silent

19   Wood, which is near the intersection of Harrison

20   and Alpine?"  And you answered, "Yes".  That wasn't

21   true, was it?

22             MR. IASPARRO:  Object to form.

23        A.    I'm taking the Fifth Amendment.

24   BY MS. BRADY:

1      Q.      And then down at the bottom of this it

2   just says, "Did he, referring to Patrick Pursley,

3   have a gun with him?"  And you said, "At that time

4   I did not know."

5             The next page the question is:  "Did

6   you later find out that he had a gun?"  And you

7   said, "Yes".  The question was:  "What kind of

8   gun?"  The answer was:  "It was a 9 millimeter

9   Taurus."

10            Do you see that?

11     A.      I'm taking the Fifth Amendment.

12     Q.      And this testimony wasn't true,

13  correct?

14            MR. IASPARRO:  Object to form.

15     A.      I'm taking the Fifth Amendment.

16  BY MS. BRADY:

17     Q.      And then down at the bottom of this

18  page -- I'm right here now.

19            The question is:  "What happened when

20  you stopped the car and turned the lights off?"

21            Now, I'm flipping to the next page, the

22  answer was:  "Patrick got out the passenger side

23  and ran behind the car.

24            "Question:  How long was he gone from

1   the car, could you estimate?

2          "Answer:  Probably a minute and a half,

3   two minutes.

4          "Question:  What did you hear when he

5   was out of the car?

6          "Answer:  At first, I heard nothing and

7   then I heard two gun shots.

8          "Question:  What happened then?

9          "Answer:  I just -- he ran back to the

10  car and got in.

11         "Question:  And what did he say, if

12  anything, or what did he do when he got in?

13         "Answer:  He got in the car and sat on

14  the floorboard on the passenger side and told me to

15  drive."

16         Ms. Crabtree, none of that is true,

17  correct?

18         MR. IASPARRO:  Object to form.

19     A.    I'm taking the Fifth Amendment.

20  BY MS. BRADY:

21     Q.    You were never on Silent Wood, correct?

22         MR. IASPARRO:  Object to form.

23     A.    I'm taking the Fifth Amendment.

24  BY MS. BRADY:

1       Q.      And you didn't hear any gun shots;

2    isn't that right?

3               MR. IASPARRO:  Object to form.

4       A.      I'm taking the Fifth Amendment.

5    BY MS. BRADY:

6       Q.      So if you go down to the bottom of this

7    page, I'm still on page 7 of this Grand Jury

8    testimony.

9               The question is:  "Did you see a gun at

10   that point?

11              "Answer:  Yes.

12              "Question:  Where did he have the gun

13   when he got in the car?

14              "Answer:  He had it in his hand.

15              "Question:  That's the Taurus gun?

16              "Answer:  Yes."

17              That testimony was false, wasn't it?

18              MR. IASPARRO:  Object to form.

19      A.      I'm taking the Fifth Amendment.

20   BY MS. BRADY:

21      Q.      Now, I'm flipping to page 9 of this

22   transcript, which is RFD Defendant 5242 at the very

23   bottom.

24              Starting here the question is:  "Sam, I

1  have just a few more questions.  I know you are

2  upset.  I'll ask you the question if you need a few

3  more minutes to collect yourself.  When you got off

4  the phone with Jill, what did you do with Patrick?

5          "Answer:  I went in the bedroom and

6  asked him if he knew who it was who he shot."

7          And then the next page, the question

8  is:  "You asked if he knew who it was he shot?

9          "Answer:  Yes.

10          "Question:  And what did he say?

11          "Answer:  No.

12          "Question:  Tell us what else was said

13  between the two of you.

14          "Answer:  I said it was a friend of

15  Jill's that got shot.

16          "Question:  What did he say?

17          "Answer:  So.  And I said, doesn't it

18  matter to you?  And he said, no.  Does it matter to

19  you?  And I said no.

20          "Question:  And why did you say no?

21          "Answer:  Because I was afraid that he

22  would hurt me."

23          Do you see that testimony?

24      A.      I'm taking the Fifth Amendment.

1  BY MS. BRADY:

2      Q.      This testimony is not true, correct?

3              MR. IASPARRO:  Object to form.

4      A.      I'm taking the Fifth Amendment.

5  BY MS. BRADY:

6      Q.      And in fact, it's not true that you

7  were afraid that he would hurt you, correct?

8              MR. IASPARRO:  Object to form.

9      A.      I'm taking the Fifth Amendment.

10  BY MS. BRADY:

11      Q.      And then if you flip down to page 11,

12  this is RFD Defendants 5244 at the very top of this

13  page.  The question is:  "Was there anything on the

14  news about this incident?

15              "Answer:  Yes.

16              "Question:  What did Patrick say before

17  you left for work?

18              "Answer:  He said if I told anyone that

19  he would know and if, you know, if anyone found

20  out, that he would have me and my children killed.

21              "Question:  Did he say something about

22  if you would tell anybody you, Sam, would be in as

23  much trouble as he was because you were part of

24  it?"

1            That testimony was untrue, correct?

2            MR. IASPARRO:  Object to form.

3       A.    I take the Fifth Amendment.

4  BY MS. BRADY:

5       Q.    And, in fact, Patrick never told you

6  that he would have you and your children killed,

7  correct?

8            MR. IASPARRO:  Object to form.

9       A.    I take the Fifth Amendment.

10  BY MS. BRADY:

11       Q.    Okay.  I'm going to put up another

12  document that will be Exhibit 3.

13            This is a four-page document Bates

14  labeled Pursley 3093.  And this is a statement from

15  June 10, '93.

16            Ms. Crabtree, can you see this document

17  on your computer?

18       A.    Yes.

19       Q.    I'm just going to flip through the

20  pages so you can take a look at the whole thing.

21            This is the wrong document.  That was

22  my bad.

23            MS. BRADY:  Let's go off the record for

24  a second.

```
 1                    (Recess taken.)

 2                    MS. BRADY:  This is actually Exhibit 3

 3     this is a six-page document starting 7582.

 4                    (Deposition Exhibit 3 marked

 5                      for identification.)

 6     BY MS. BRADY:

 7          Q.     So this is Exhibit 3.  It's a six-page

 8     document starting on Bates labeled Jenner 7582.

 9                    Can you see this document on your

10     screen?

11          A.     Yes.

12          Q.     Have you seen this statement before,

13     Ms. Crabtree?

14          A.     I take the Fifth Amendment.

15          Q.     Okay.  Is that your signature there at

16     the bottom?

17          A.     I take the Fifth Amendment.

18          Q.     So if you look on the first page of

19     this document, the very first paragraph it says,

20     "Around the beginning of April, on a Friday night,

21     I was at my house at 901 Ashland Avenue, with my

22     boyfriend, Patrick Pursley, and I was complaining

23     about all the bills we had and no money to pay

24     them.  It was around 8:00 p.m. that night and me
```

1   and Patrick started arguing about how broke we were

2   and Patrick said that he could take care of it."

3           Do you see that?

4       A.      I take the Fifth Amendment.

5       Q.      Okay.  This was untrue, right?

6           MR. IASPARRO:  Object to form.

7       A.      I take the Fifth Amendment.

8   BY MS. BRADY:

9       Q.      The next paragraph says, "Patrick

10  started telling me how he could break into a house

11  and find some money or property to sell for money

12  to help us out.  Patrick told me he wanted me to

13  drive him around some neighborhoods on the east

14  side of town, and he would look for a house to

15  break into."

16          That was not true, correct?

17          MR. IASPARRO:  Object to form.

18      A.      I take the Fifth Amendment.

19  BY MS. BRADY:

20      Q.      Now, I'm turning to the second page of

21  this document.  This second paragraph starting

22  right here.  It says, "Patrick wasn't saying

23  anything in the car, so I just kept driving west on

24  Harrison.  I figured if Patrick didn't see anything

1    soon, we would just go back home.  I was driving in

2    the right-hand lane, and I just crossed Alpine,

3    still westbound on Harrison, and Patrick told me to

4    get into the left-hand lane, which I did.  We drove

5    a little ways past the McDonald's and Patrick had

6    me turn left into a neighborhood that was all small

7    apartment buildings and we drove a little ways in

8    this neighborhood and I came back out onto

9    Harrison.  Patrick again told me to turn left on

10   Harrison going westbound and it was only a short

11   ways from there Patrick told me to turn left again.

12   I turned left onto Silent Wood from Harrison and

13   followed the winding road."

14           Do you see that?

15       A.    I take the Fifth Amendment.

16       Q.    Nothing in that paragraph is true, is

17   it?

18           MR. IASPARRO:  Object to form.

19       A.    I take the Fifth Amendment.

20   BY MS. BRADY:

21       Q.    Okay.  And the reason this is in your

22   statement is because Detective Schmidt and

23   Forrester told you to mention these locations in

24   your statement, didn't they?

1          MR. IASPARRO:  Object to form.

2      A.      I take the Fifth Amendment.

3  BY MS. BRADY:

4      Q.      Take a look at the next paragraph.  It

5  says, "While I was driving down Silent Wood, I

6  could see some big empty fields and there was a few

7  apartments on the right side of the road as we

8  started down Silent Wood.  I continued to follow

9  the winding road, and I came to some large

10  apartment buildings and Patrick told me to turn the

11  car around.  I thought that I could make a U-turn

12  but the road was not wide enough, so I had to back

13  up and pull into a driveway of one of apartment

14  buildings to turn around.

15          The driveway I turned around in was the

16  same driveway that I pointed out to you today when

17  you took me out.  I then drove back towards

18  Harrison on Silent Wood and just as we passed the

19  apartments that were now on my left, Patrick told

20  me to stop the car.  I pulled my car over to the

21  curb and Patrick told me to turn my lights off and

22  wait there for him.  This location is also the same

23  spot I pointed out to you today."

24          Do you see that paragraph?

1        A.       I take the Fifth Amendment.

2        Q.       And nothing in this paragraph is true,

3    is it?

4                 MR. IASPARRO:  Object to form.

5        A.       I take the Fifth Amendment.

6    BY MS. BRADY:

7        Q.       And, in fact, Detective Schmidt and

8    Forrester took you out and had you drive to

9    specific locations so that you would be able to

10   adopt their story as your own; isn't that right?

11                MR. IASPARRO:  Object to form.

12       A.       I take the Fifth Amendment.

13   BY MS. BRADY:

14       Q.       Now, I'm going to read the very bottom

15   of this page going on to the next page.

16                It says, "Patrick told me to keep my

17   car running and wait there on Silent Wood for him

18   and he got out of the car and walked back towards

19   the apartments.  I thought he spied a house to

20   break in, and I was waiting there for about two or

21   three minutes when I heard two gunshots go off."

22                That didn't happen, did it?

23                MR. IASPARRO:  Object to form.

24       A.       I take the Fifth Amendment.

1    BY MS. BRADY:

2        Q.    The next paragraph says, "When I heard

3    the gunshots go off, I got real scared.  I thought

4    Patrick must have shot somebody.  I kept watching

5    for Patrick to come back, but it was dark, and I

6    couldn't see anything.  And about a minute after

7    the shots, Patrick opened the passenger side door

8    to my car, and he got into the car and sat on the

9    passenger floorboard of my car and told me to

10   drive.  I said where?  And Patrick said he didn't

11   care, just drive.  I asked Patrick what happened,

12   and again he said just drive."

13               That's not true, is it, Ms. Crabtree?

14               MR. IASPARRO:  Object to form.

15       A.    I take the Fifth Amendment.

16   BY MS. BRADY:

17       Q.    And, in fact, you and Patrick never

18   left your apartment to go rob houses that night,

19   did you?

20               MR. IASPARRO:  Object to form.

21       A.    I take the Fifth Amendment.

22   BY MS. BRADY:

23       Q.    The next paragraph says, "When Patrick

24   got into my car, Patrick had my Taurus 9 millimeter

1  hand gun in his hand."

2            That wasn't true, was it?

3            MR. IASPARRO:  Object to form.

4       A.    I take the Fifth Amendment.

5  BY MS. BRADY:

6       Q.    The next says, "I was scared and since

7  Patrick had the gun in his hand, and I heard the

8  shots and Patrick wanted me to get out of the area

9  fast, I figured he must have shot somebody."

10            That's not true, is it?

11            MR. IASPARRO:  Object to form.

12       A.    I take the Fifth Amendment.

13  BY MS. BRADY:

14       Q.    And skipping down now a couple of

15  lines, so I'm picking up right here in this

16  sentence.  "When I ran over the median, Patrick got

17  mad at me, and he pointed the gun at me and said,

18  if you get me caught, I will kill you.  I swear I

19  will kill you right now."

20            Do you see that?

21       A.    I take the Fifth Amendment.

22       Q.    Patrick Pursley never said that to you,

23  did he?

24            MR. IASPARRO:  Object to form.

1          A.     I take the Fifth Amendment.

2     BY MS. BRADY:

3          Q.     And the only reason this is in your

4     statement is because Detective Schmidt and

5     Forrester told you to include it in your statement,

6     right?

7                 MR. IASPARRO:  Object to form.

8          A.     I take the Fifth Amendment.

9     BY MS. BRADY:

10         Q.     Now, I'm skipping down a couple more

11    lines picking up right here.  It says, "I then

12    turned left again by Aldi's to turn around, and I

13    seen that this road went through, so I kept going.

14    And then I was going to turn left again and go back

15    to Harrison, but we then seen two squad cars going

16    east on Harrison with their red lights and sirens

17    on.  Patrick also heard the police cars and then he

18    looked out and seen them, and he thought that I was

19    taking him to the area we just came from, and he

20    told me, where are taking me?  If you are taking me

21    back there, I'll kill you, Sam, I swear I'll kill

22    you.  Patrick pointed his gun at me again, and I

23    told him that I was trying to go home."

24                Patrick personally never threatened you

1  like that, did he?

2              MR. IASPARRO:  Object to form.

3       A.    I take the Fifth Amendment.

4  BY MS. BRADY:

5       Q.    And, in fact, nothing in the couple of

6  sentences that I just read ever happened, did it?

7              MR. IASPARRO:  Object to form.

8       A.    I take the Fifth Amendment.

9  BY MS. BRADY:

10      Q.    And this information is in your

11  statement because Detective Schmidt and Forrester

12  told you to include it, right?

13             MR. IASPARRO:  Object to form.

14      A.    I take the Fifth Amendment.

15  BY MS. BRADY:

16      Q.    Now, I'm at the very bottom sentence of

17  this page starting right here.

18             "Patrick had the gun in his hand the

19  entire time I was driving.  And every time I would

20  mess up, he would point the gun at me and threaten

21  to shoot me if I get him caught."

22             That's not true, is it?

23             MR. IASPARRO:  Object to form.

24      A.    I take the Fifth Amendment.

1   BY MS. BRADY:

2       Q.      And, in fact, Detective Schmidt and

3   Forrester told you to include that information in

4   your statement, right?

5               MR. IASPARRO:  Object to form.

6       A.      I take the Fifth Amendment.

7   BY MS. BRADY:

8       Q.      I'm flipping onto the next page.  This

9   is page 4 of this statement, the second full

10  paragraph.

11              It says, "When we got into our house, I

12  went into the bathroom and got ready for bed.

13  Patrick went right into the bedroom and turned on

14  his police scanner and laid on the bed.  I was

15  still scared and didn't even want to talk about it.

16  And when I got out to our bedroom, I got into bed

17  and Patrick got up, turned the scanner off, got

18  undressed and got into bed."

19              That's not accurate, is it?

20              MR. IASPARRO:  Object to form.

21      A.      I take the Fifth Amendment.

22  BY MS. BRADY:

23      Q.      The next paragraph says, "The next

24  morning, Saturday, I got up around 8:00 a.m. and

1  took a bath.  I then started to get dressed and

2  Patrick woke up around 8:45 a.m. and he got up and

3  ran his bath water.  When Patrick was finished with

4  his bath, he started to get dressed, and he emptied

5  his pockets onto the bed from the pants that he was

6  wearing Friday night, and I seen a wad of money

7  which looked like about $100."

8          Do you see that?

9      A.    I take the Fifth Amendment.

10     Q.    And that -- those sentences that I just

11 read to you are not accurate, correct?

12          MR. IASPARRO:  Object to form.

13     A.    I take the Fifth Amendment.

14 BY MS. BRADY:

15     Q.    You included this information in the

16 statement because Detective Schmidt and Forrester

17 told you to, right?

18          MR. IASPARRO:  Object to form.

19     A.    I take the Fifth Amendment.

20 BY MS. BRADY:

21     Q.    Or because Detective Schmidt and

22 Forrester made you feel that you were supposed to

23 include this information in order to go home and

24 see your children again, right?

1          MR. IASPARRO:  Object to form.

2      A.      I take the Fifth Amendment.

3   BY MS. BRADY:

4      Q.      Now, I'm on page 5 of this statement.

5   Starting at the very top line right here.  It says,

6   "When I got off the phone, I went into the bedroom

7   where Patrick was, and I asked Patrick if he knew

8   who it was that he shot last night, and Patrick

9   said no, who?  I told Patrick it was a friend of

10  Jill's.  Patrick just said, so.  I then asked

11  Patrick if it bothered him, and he said, no, does

12  it matter to you?  And I said, no, it didn't matter

13  to me because I was afraid to say it did matter to

14  me.  Patrick then asked me if the girl got shot

15  too, and I told him no, and I left the bedroom."

16          That wasn't true, was it?

17          MR. IASPARRO:  Object to form.

18     A.      I take the Fifth Amendment.

19  BY MS. BRADY:

20     Q.      The next paragraph says, "I got ready

21  for work and before I left for work, I made sure I

22  caught the 5:00 news on TV.  I then heard on the

23  news that Andy Ascher was shot and killed, and it

24  was at some apartment on Silent Wood.  It stated it

1  happened Friday night in the parking lot and then

2  gave a description of the suspect, but I can't

3  remember what all they said, but I knew it was

4  Patrick that they were describing.

5          Patrick was watching the news with me

6  and after they told about the murder, I had to

7  leave for work.  Patrick said to me just before I

8  left the house, don't say anything to anybody or I

9  will know about it.  Patrick also said if I did

10 tell anybody, I would be in just as much trouble as

11 he was because I was part of it."

12         That conversation never happened, did

13 it?

14         MR. IASPARRO:  Object to form.

15    A.      I take the Fifth Amendment.

16 BY MS. BRADY:

17    Q.      The next paragraph says, "Patrick was

18 very nervous after this happened and in the next

19 few days after this happened, Patrick kept telling

20 me that if the police caught him, and I said

21 anything to them about what happened, like I am

22 now, he would come back or have somebody kill me

23 and my two children, but not my baby Marcus because

24 he was mixed, but he wouldn't have any problem with

1   killing me and the other two children."

2           Patrick Pursley never threatened to

3   kill you and your children, did he?

4           MR. IASPARRO:  Object to form.

5       A.    I take the Fifth Amendment.

6   BY MS. BRADY:

7       Q.    In fact, you included this in your

8   statement because Detective Schmidt and Forrester

9   told you to, right?

10          MR. IASPARRO:  Object to form.

11      A.    I take the Fifth Amendment.

12  BY MS. BRADY:

13      Q.    The next sentence, I'm right here now,

14  "The gun Patrick used to shoot Andy Ascher was my

15  gun I bought in February of this year.  It was a

16  Taurus brand 9 millimeter that held 15 rounds in

17  the clip and one round in the chamber."

18          You -- strike that.

19          This is not an accurate statement,

20  correct?

21          MR. IASPARRO:  Object to form.

22      A.    I take the Fifth Amendment.

23  BY MS. BRADY:

24      Q.    Okay.  Patrick personally didn't use

1    any gun to kill Andy Ascher, did he?

2            MR. IASPARRO:  Object to form.

3        A.    I take the Fifth Amendment.

4    BY MS. BRADY:

5        Q.    And you didn't know that there were 15

6    rounds in the clip and one round in the chamber,

7    right?

8            MR. IASPARRO:  Object to form.

9        A.    I take the Fifth Amendment.

10   BY MS. BRADY:

11       Q.    In fact, those weren't even your words,

12   were they?

13           MR. IASPARRO:  Object to form.

14       A.    I take the Fifth Amendment.

15   BY MS. BRADY:

16       Q.    Now, I'm here, the bottom two lines of

17   this paragraph.  It says, "I found the bullets

18   missing from the cabinet, so I asked Patrick what

19   happened to them, and he said he threw them away,

20   and he said it was by accident.  He didn't mean to

21   throw them away."

22           That conversation never happened, did

23   it?

24           MR. IASPARRO:  Object to form.

1       A.      I take the Fifth Amendment.

2   BY MS. BRADY:

3       Q.      Now, I'm turning to the final page of

4   this statement.  The first line at the very top

5   says, "I think it was about a week after I

6   discovered the bullets missing.  I took my gun and

7   cleaned it.  I took the gun apart to clean it.  I

8   just used the brush that came with it and run it

9   through the barrel a couple of times and then used

10  a paper towel and wiped some of the parts off with

11  it."

12          Your Taurus gun didn't come with a

13  brush, did it?

14          MR. IASPARRO:  Object to form.

15      A.      I take the Fifth Amendment.

16  BY MS. BRADY:

17      Q.      And you didn't disassemble the gun and

18  clean it this way, correct?

19          MR. IASPARRO:  Object to form.

20      A.      I take the Fifth Amendment.

21  BY MS. BRADY:

22      Q.      Because you didn't know how to clean

23  your gun, right?

24          MR. IASPARRO:  Object to form.

1        A.      I take the Fifth Amendment.

2    BY MS. BRADY:

3        Q.      And you included this -- these couple

4    of sentences in your statement only because

5    Detective Schmidt and Forrester told you to, right?

6                MR. IASPARRO:  Object to form.

7        A.      I take the Fifth Amendment.

8    BY MS. BRADY:

9        Q.      Now, I'm jumping down to this line

10   right here.  It says, "When I finished cleaning the

11   gun, I was not sure if I put the gun back together

12   right.  I took the gun out in the country, way out

13   Cunningham Road to shoot the gun to see if it

14   worked.  I only had about six bullets left in the

15   clip, and when I shot the gun, it fired, but the

16   top part of the gun stayed back instead of sliding

17   back forward to load another shot into the gun.  So

18   I figured that I put the gun together wrong.  I

19   pulled the top back a little and the empty shell

20   fell out and it went forward and at that time I

21   went back home and put the gun back under the water

22   mattress in my room."

23               None of that is true, is it?

24               MR. IASPARRO:  Object to form.

1        A.      I take the Fifth Amendment.

2   BY MS. BRADY:

3        Q.      And, again, you included this

4   description in your statement because Detective

5   Schmidt and Forrester told you to; isn't that

6   right?

7                MR. IASPARRO:  Object to form.

8        A.      I take the Fifth Amendment.

9   BY MS. BRADY:

10       Q.      Ms. Crabtree, nothing in this statement

11  that I just read to you is true, is it?

12               MR. IASPARRO:  Object to form.

13       A.      I take the Fifth Amendment.

14  BY MS. BRADY:

15       Q.      And, in fact, you gave this entire

16  statement the way that you did because officers --

17  Detective Schmidt and Forrester told you to, right?

18               MR. IASPARRO:  Object to form.

19       A.      I take the Fifth Amendment.

20  BY MS. BRADY:

21       Q.      And you gave this statement because

22  Detective Schmidt and Forrester threatened to take

23  your children away from you, right?

24               MR. IASPARRO:  Object to form.

1        A.      I take the Fifth Amendment.

2   BY MS. BRADY:

3        Q.      Detective Schmidt and Forrester told

4   you that you would never see your children again

5   unless you complied with them and gave a statement

6   implicating Patrick Pursley, right?

7               MR. IASPARRO:  Object to form.

8        A.      I take the Fifth Amendment.

9   BY MS. BRADY:

10       Q.      And you gave this statement because you

11  were exhausted and distraught; isn't that right?

12              MR. IASPARRO:  Object to form.

13       A.      I take the Fifth Amendment.

14  BY MS. BRADY:

15       Q.      And a little bit earlier when we looked

16  at your Grand Jury testimony, you testified -- I'm

17  sorry, you testified at the Grand Jury similar to

18  what you testified about -- or you explained in

19  this statement that I just read to you; is that

20  right?

21       A.      I take the Fifth Amendment.

22       Q.      And the Grand Jury testimony that we

23  looked at a little bit earlier was also untrue

24  because Detective Schmidt and Forrester told you to

1    adopt this story; is that right?

2              MR. IASPARRO:  Object to form.

3        A.    I take the Fifth Amendment.

4    BY MS. BRADY:

5        Q.    Okay.  Do you recall at any point

6    talking to Prosecutor Switzer about your Grand Jury

7    testimony?

8        A.    I take the Fifth Amendment.

9              MR. HUOTARI:  If we are going to start

10   a new topic, would you mind if we take a

11   five-minute break?

12             MS. BRADY:  Yes.

13             MR. HUOTARI:  Thank you.

14             (Recess taken.)

15   BY MS. BRADY:

16       Q.    Ms. Crabtree, I just have a couple more

17   questions for you, then defense counsel is going to

18   take over the questioning.

19             So to summarize, when you told

20   Detective Schmidt and Forrester in your statement

21   that Patrick Pursley killed Andy Ascher, and you

22   drove the car that got him there, that was false,

23   wasn't it?

24             MR. IASPARRO:  Object to form.

1     A.     I take the Fifth Amendment.

2  BY MS. BRADY:

3     Q.     And the reason that you told them that

4  was because they made you feel pressured; is that

5  right?

6     A.     I take the Fifth amendment.

7     Q.     And when you testified at the Grand

8  Jury that Patrick Pursley killed Andy Ascher and

9  you drove the car that got him there, that was also

10 false, wasn't it?

11            MR. IASPARRO:  Object to form.

12     A.     I take the Fifth Amendment.

13            MS. BRADY:  Okay.  I don't have any

14 more questions at this time.  Thank you for your

15 time.

16

17                 EXAMINATION

18 BY MR. IASPARRO:

19     Q.     Hi, Ms. Crabtree.  My name is Michael

20 Iasparro.  I represent seven of the retired

21 Rockford police officers who have been named as

22 defendants in this lawsuit.

23     A.     Okay.

24     Q.     Ms. Crabtree, are you afraid of Patrick

1    Pursley, as you sit here today?

2              MS. BRADY:  Objection, form.

3         A.    I take the Fifth Amendment.

4    BY MR. IASPARRO:

5         Q.    Are you taking the Fifth Amendment

6    because you're afraid of the consequences that

7    might result from Patrick Pursley?

8              MS. BRADY:  Objection, form.

9         A.    I take the Fifth Amendment.

10   BY MR. IASPARRO:

11        Q.    Are you afraid of Patrick Pursley

12   finding out where your children live, Ms. Crabtree?

13             MS. BRADY:  Objection, form.

14        A.    I take the Fifth Amendment.

15   BY MR. IASPARRO:

16        Q.    Ms. Crabtree, do you recall the

17   assistant state's attorney named Ann Switzer who

18   questioned you at Mr. Pursley's trial in 1994?

19        A.    I take the Fifth Amendment.

20        Q.    After you were released from prison,

21   Ms. Crabtree, on the robbery and perjury

22   convictions back in the 1990s, do you recall

23   running into Ms. Switzer in an office building in

24   downtown Rockford?

1      A.      I take the Fifth Amendment.

2      Q.      Did you used to work in an office

3 building in downtown Rockford after you were

4 released from prison?

5      A.      I take the Fifth Amendment.

6      Q.      Do you recall having a conversation

7 with Ms. Switzer at a building in downtown Rockford

8 after you were released from prison?

9      A.      I take the Fifth Amendment.

10      Q.      Isn't it true that you told Ms. Switzer

11 that you were sorry that you had lied at Patrick

12 Pursley's trial in 1994?

13      A.      I take the Fifth Amendment.

14      Q.      Did you lie at Patrick Pursley's trial

15 in 1994 when you testified that you and Patrick

16 Pursley were home the entire evening of April 2,

17 1993, the night of the Andrew Ascher's murder?

18          MS. BRADY:   Object to form.

19      A.      I take the Fifth Amendment.

20 BY MR. IASPARRO:

21      Q.      Did you lie at Patrick Pursley's trial

22 in 1994 when you testified that the police coerced

23 you on June 10, 1993, in to giving a written

24 statement implicating Patrick Pursley in the Ascher

1    murder?

2              MS. BRADY:  Objection, form.

3         A.    I take the Fifth Amendment.

4    BY MR. IASPARRO:

5         Q.    Did you lie at Patrick Pursley's trial

6    in 1994 when you testified that your June 23, 1993,

7    Grand Jury testimony implicating Patrick Pursley in

8    the Ascher murder was false?

9              MS. BRADY:  Objection, form.

10        A.    I take the Fifth Amendment.

11   BY MR. IASPARRO:

12        Q.    Ms. Crabtree, when did you first meet

13   Patrick Pursley?

14        A.    I take the Fifth Amendment.

15        Q.    You had a dating relationship with

16   Mr. Pursley; is that correct?

17        A.    I take the Fifth Amendment.

18        Q.    Isn't it true that you lived with

19   Mr. Pursley at 901 Ashland in Rockford, Illinois?

20        A.    I take the Fifth Amendment.

21        Q.    Ms. Crabtree, did Mr. Pursley ever

22   threaten to kill you?

23              MS. BRADY:  Objection, form.

24        A.    I take the Fifth Amendment.

1    BY MR. IASPARRO:

2         Q.      When is the last time that you spoke to

3    Patrick Pursley?

4         A.      I believe it was in the summer of 2019.

5         Q.      Was that an in-person conversation or

6    via telephone or how did that conversation take

7    place?

8         A.      It was in-person.

9         Q.      Where did that conversation take place?

10        A.      Outside of my residence.

11        Q.      Which was where at the time?

12        A.      1804 Grant Avenue.

13        Q.      And what was the purpose of that

14   conversation, if you recall?

15        A.      He was looking to see his daughter.

16        Q.      And that would be Nyjah Pursley?

17        A.      That's correct.

18        Q.      Did you know that Mr. Pursley was

19   coming to see Nyjah that day?

20        A.      No.

21        Q.      And as best that you can recall, what

22   did he say to you and what did you say to him?

23        A.      He asked where she was.  I told him I

24   did not know.  And within five minutes Nyjah pulled

1  up in her own vehicle.

2      Q.      Did you say anything else to him or did

3  he say anything else to you during those five

4  minutes?

5      A.      No.

6      Q.      And when Nyjah pulled up, what

7  happened?

8      A.      I went inside.

9      Q.      Did you have any further conversation

10  with Mr. Pursley that day?

11      A.      No.

12      Q.      Did he say anything to you about this

13  civil lawsuit that he had filed against the City of

14  Rockford?

15      A.      No.

16      Q.      Have you had any conversations with

17  Mr. Pursley about this civil lawsuit?

18      A.      No.

19      Q.      Do you have any sort of financial

20  arrangement or agreement with Mr. Pursley with

21  respect to this civil lawsuit?

22      A.      No.

23      Q.      Have you seen Mr. Pursley since that

24  day in the summer of 2019 outside your house as

1    you've described?

2          A.    No.

3          Q.    Have you spoken to him on the phone or

4    otherwise since that time?

5          A.    No.

6          Q.    Does Patrick Pursley currently provide

7    any financial support to you?

8          A.    No.

9          Q.    When is the last time that Patrick

10   Pursley provided any financial support to you?

11         A.    I take the Fifth Amendment.

12         Q.    Ms. Crabtree, did you commit a bank

13   robbery with Patrick Pursley at the First Bank

14   North in Rockford, Illinois, in May of 1993?

15              MS. BRADY:   Objection, form.

16         A.    I take the Fifth Amendment.

17   BY MR. IASPARRO:

18         Q.    You plead guilty to that offense,

19   correct?

20              MR. CONNOR:   This is Kevin Connor.

21   Objection, asked and answered.

22   BY MR. IASPARRO:

23         Q.    For the record, what was the answer,

24   Ms. Crabtree?

1          A.      Can you repeat the question, please.

2          Q.      I think the question was, you plead

3    guilty to that offense, meaning the First Bank

4    North robbery in Rockford, which took place, I

5    think, on May 12, 1993?

6          A.      Yes.

7          Q.      And in pleading guilty to that offense,

8    you told the Court that you committed it with

9    Patrick Pursley, correct?

10         A.      I take the Fifth Amendment.

11         Q.      Ms. Crabtree, did Patrick Pursley ever

12   physically abuse you?

13              MS. BRADY:  Objection, form,

14   foundation, and assumes facts not in evidence.

15         A.      I take the Fifth Amendment.

16   BY MR. IASPARRO:

17         Q.      Do you recall your parents testifying

18   at your sentencing hearing back in 1995,

19   Ms. Crabtree?

20         A.      I take the Fifth Amendment.

21         Q.      Isn't it true that your parents

22   testified regarding their concerns that Mr. Pursley

23   had or that they had about Mr. Pursley abusing you?

24         A.      I take the Fifth Amendment.

1      Q.      The fact of the matter is in 1993 and

2   1994, you were afraid of Mr. Pursley; isn't that

3   true?

4              MS. BRADY:  Objection, form,

5   foundation.  Assumes facts not in evidence.

6      A.      I take the Fifth Amendment.

7   BY MR. IASPARRO:

8      Q.      Did Patrick Pursley ever hit you,

9   Ms. Crabtree?

10             MS. BRADY:  Objection, form,

11  foundation.  Assumes facts not in evidence.

12     A.      I take the Fifth Amendment.

13  BY MR. IASPARRO:

14     Q.      Do you recall going to the emergency

15  room at Rockford Memorial Hospital on February 22,

16  1993?

17     A.      I take the Fifth Amendment.

18     Q.      Bear with me a second.  I'm going to

19  pull up the document that I would like to show you.

20             Are you able to see the document that

21  I've just pulled up, Ms. Crabtree?

22     A.      Yes.

23     Q.      Okay.

24             MR. IASPARRO:  And I think we're on 4

1    is that right, Rachel?

2              MS. BRADY:  Yeah, that's right.

3              MR. IASPARRO:  I'm going to mark this

4    as Exhibit 4, Crabtree 4 {sic}.

5              (Deposition Exhibit 4 marked

6                for identification.)

7    BY MR. IASPARRO:

8         Q.    Ms. Crabtree, for the record, this is

9    RFD Defense Bates No. 7634 through 7636.

10             Ms. Crabtree, do you see at the top of

11   the first page, which is on the screen in front of

12   you, it lists your name, Samantha L. Crabtree,

13   towards the top of that page?

14        A.    I take the Fifth Amendment.

15        Q.    Do you see that in the description

16   narrative section of this police report on the

17   first page it says, reporting officers were

18   dispatched to Rockford Memorial Hospital in

19   reference to a battery.  Upon arrival, reporting

20   officer met with the listed victim, meaning you,

21   Samantha Crabtree, who related the following story.

22             Do you see that?

23        A.    I take the Fifth Amendment.

24        Q.    Do you recall talking to Detective

1   Forrester in August of 1993 and telling him that

2   you had lied to the police who responded to

3   Rockford Memorial Hospital on February 22, 1993,

4   about what had happened to you?

5              MS. BRADY:  Objection, form.

6         A.    I take the Fifth Amendment.

7   BY MR. IASPARRO:

8         Q.    Do you recall telling Detective

9   Forrester that you lied to the police on

10  February 22, 1993, about what happened to you

11  because you were afraid of Patrick Pursley?

12             MS. BRADY:  Objection, form,

13  foundation.  Assumes facts not in evidence.

14        A.    I take the Fifth Amendment.

15  BY MR. IASPARRO:

16        Q.    Do you see that document in front of

17  you, Ms. Crabtree?

18        A.    Yes.

19        Q.    All right.  And we'll mark this as

20  Exhibit 5. {sic}

21             (Deposition Exhibit 5 marked

22               for identification.)

23  BY MR. IASPARRO:

24        Q.    For the record, this is RFD Defense 266

1    through 269.  Do you see your name on that

2    document, Ms. Crabtree, Samantha Louise Crabtree at

3    the top?

4         A.     I take the Fifth Amendment.

5         Q.     That is your name, correct?

6                MR. CONNOR:  I'm going to object to a

7    lack of foundation.  You can answer.

8                MR. IASPARRO:  With respect to what her

9    name is?

10               MR. CONNOR:  I'm sorry, with what this

11   document is.

12               MR. IASPARRO:  Right now, I'm just

13   asking her if that is her name.

14        A.     I take the Fifth Amendment.

15   BY MR. IASPARRO:

16        Q.     I'm sorry.  You're taking the Fifth

17   Amendment with respect to whether your name is

18   Samantha Louise Crabtree?

19        A.     My name is Samantha Louise Crabtree,

20   yes.

21        Q.     And your date the birth is 1/1/1969,

22   correct?

23        A.     That is my date of birth, correct.

24        Q.     Have you ever seen this document

1    before, Ms. Crabtree?

2         A.    I take the Fifth Amendment.

3         Q.    Isn't it true that you spoke to

4    Detective Howard Forrester on August 5, 1993?

5              MS. BRADY:  Objection, form,

6    foundation.

7         A.    I take the Fifth Amendment.

8    BY MR. IASPARRO:

9         Q.    Do you see on this document it says, on

10   August 5, 1993, 1230 hours, Samantha Crabtree

11   arrived at the City Detective Division, as

12   requested.  She was placed in an interview room.

13             Do you see that?

14        A.    I take the Fifth Amendment.

15        Q.    That actually happened, right, you

16   spoke to Detective Forrester on August 5, 1993,

17   correct?

18             MS. BRADY:  Objection, foundation,

19   form.

20        A.    I take the Fifth Amendment.

21   BY MR. IASPARRO:

22        Q.    Scroll down to the second page of this

23   report.  First full paragraph beginning with the

24   word "I", says, I then advised Samantha that I

1   would like the details of the incident, but she had

2   advised me in an earlier interview that Patrick

3   Pursley had beat her and had pointed a gun at her

4   and pulled the trigger but the gun had been

5   unloaded.  She advised that this incident happened

6   in February of 1993.  She was not sure of the exact

7   date.

8           Samantha stated that Patrick Pursley

9   had been smoking some crack cocaine, and she did

10  not want him to do any more, but Patrick wanted to

11  continue smoking it.  Samantha stated that during

12  the evening hours she took the rest of the cocaine

13  and also, approximately, $800 to $900 and she left.

14  She stated that the money probably came from

15  Patrick dealing marijuana on the street.  Samantha

16  stated that she had called Rachel Whitford, and

17  they had agreed to meet at the Coyote Club.

18          You told Detective Forrester that on

19  August 5, 1993, isn't that true, Ms. Crabtree?

20      MS. BRADY:  Objection, form,

21  foundation.

22      A.    I take the Fifth Amendment.

23  BY MR. IASPARRO:

24      Q.    Scroll down to the third page here.

1    The second full paragraph which reads as follows:

2    Samantha stated that she returned home at about

3    dawn the next morning.  She stated that she had

4    thrown the cocaine away, but still had all of the

5    money.

6             Patrick asked Samantha where she had

7    been, and Samantha told him that she had been at

8    Rachel's.  Patrick told her that he knew that she

9    had not been there because he had called Rachel and

10   she had told him that she had not been there.

11   Patrick then accused her of being with someone

12   else.  Samantha then told Patrick that she had been

13   at a motel.  Samantha stated that Patrick then

14   started hitting her with his fists and at one point

15   Samantha stated that she had fallen down and

16   Patrick kicked her.  Patrick then went and got the

17   money and he left.

18            You told Detective Forrester that on

19   August 5, 1993, isn't that true, Ms. Crabtree?

20        MS. BRADY:  Objection, form,

21   foundation.

22     A.    I take the Fifth Amendment.

23            MR. CONNOR:  So if I could just

24   interject because I know we want to keep a clear

1  record.  I know it was agreed upon at the beginning

2  of this that all the defendants would join in their

3  objections.  So I'd rather than just parrot what

4  Ms. Brady is saying, we're going to join in the

5  objections that she raises at this point.

6         MR. IASPARRO:  So for the record,

7  Ms. Crabtree's attorney is aligning himself with

8  Mr. Pursley's attorney; is that right?

9         MR. CONNOR:  We're going to join her

10 objections for this line -- I'll say we'll limit it

11 to the objections of this document going forward.

12 BY MR. IASPARRO:

13     Q.    I've pulled up another document.  Are

14 you able to see that on your screen in front of

15 you?

16     A.    Yes.

17     Q.    And we'll mark this as Exhibit 6.

18          (Deposition Exhibit 6 marked

19            for identification.)

20 BY MR. IASPARRO:

21     Q.    For the record, this is Bates stamped

22 Pursley 14106 and 14107.

23          Ms. Crabtree, on the first page of this

24 exhibit is that your signature?

1           A.      I take the Fifth Amendment.

2           Q.      Do you recognize this as a firearm's

3    transaction record relating to the Taurus 9

4    millimeter firearm which you purchased at the

5    Bullet Stop Gun Shop on February 5, 1993?

6           A.      I take the Fifth Amendment.

7           Q.      You, in fact, owned a Taurus 9

8    millimeter in 1993; isn't that true?

9           A.      I take the Fifth Amendment.

10          Q.      Ms. Crabtree, I'm going to show you now

11   what's being marked as Deposition Exhibit 7.

12                  (Deposition Exhibit 7 marked

13                    for identification.)

14   BY MR. IASPARRO:

15          Q.      For the record, these are photographs

16   which have been Bates stamped RFD Defense 7563

17   through 7567.

18                  Do you see on the photograph that's

19   depicted on the first page here, the date 5/12/93?

20          A.      I take the Fifth Amendment.

21          Q.      Have you ever seen this photograph

22   before?

23          A.      I take the Fifth Amendment.

24          Q.      Isn't it true that you previously

1    identified the person in that photograph at the

2    counter as Patrick Pursley?

3                MS. BRADY:  Objection, form,

4    foundation.

5        A.    I take the Fifth Amendment.

6    BY MR. IASPARRO:

7        Q.    That is Patrick Pursley robbing the

8    First Bank North on May 12, 1993, correct?

9                MS. BRADY:  Objection, form,

10   foundation.

11       A.    I take the Fifth Amendment.

12   BY MR. IASPARRO:

13       Q.    And you previously told the police that

14   the gray sweatpants that he was wearing in this

15   photo and wore during the bank robbery were

16   actually your gray sweatpants, correct?

17               MS. BRADY:  Objection, form,

18   foundation.

19       A.    I take the Fifth Amendment.

20   BY MR. IASPARRO:

21       Q.    And, in fact, Mr. Pursley did wear your

22   gray sweatpants when he robbed the First Bank North

23   on May 12, 1993, correct?

24               MS. BRADY:  Objection, form,

1    foundation.  Assumes facts not in evidence.

2         A.    I take the Fifth Amendment.

3    BY MR. IASPARRO:

4         Q.    I'll scroll down, Ms. Crabtree, so you

5    can see the rest of the photos in this exhibit.

6              Ms. Crabtree, that's Patrick Pursley in

7    those photos robbing the First Bank North on

8    May 12, 1993, correct?

9              MS. BRADY:  Objection, form,

10   foundation.

11        A.    I take the Fifth Amendment.

12   BY MR. IASPARRO:

13        Q.    And you drove him to and from, the

14   getaway car, during that robbery, correct?

15             MS. BRADY:  Objection, form.

16        A.    I take the Fifth Amendment.

17   BY MR. IASPARRO:

18        Q.    Ms. Crabtree, do you know about a man

19   named Marvin Windham?

20        A.    I take the Fifth Amendment.

21        Q.    Have you ever met a man named Marvin

22   Windham?

23        A.    I take the Fifth Amendment.

24        Q.    Did you ever have a romantic

1    relationship with Marvin Windham?

2         A.     I take the Fifth Amendment.

3         Q.     Did you ever speak to Marvin Windham

4    about information he provided to the police

5    regarding the Andrew Ascher murder?

6         A.     I take the Fifth Amendment.

7         Q.     Do you have any knowledge of the source

8    of any information Marvin Windham provided to

9    police in 1993 regarding Patrick Pursley's

10   involvement in the Andrew Ascher murder?

11            MS. BRADY:  Objection, foundation.

12        A.     I take the Fifth Amendment.

13   BY MR. IASPARRO:

14        Q.     Do you have any knowledge of any

15   conversations that Marvin Windham had with Patrick

16   Pursley regarding the Ascher homicide?

17            MS. BRADY:  Objection, foundation.

18        A.     I take the Fifth Amendment.

19   BY MR. IASPARRO:

20        Q.     Do you have any knowledge about any

21   conversations Marvin Windham had with Patrick

22   Pursley regarding Patrick Pursley's involvement in

23   the Ascher murder?

24            MS. BRADY:  Objection, foundation.

1      A.      I take the Fifth Amendment.

2   BY MR. IASPARRO:

3      Q.      Do you have any knowledge of any

4   information that Marvin Windham provided to

5   Rockford police during a call to Crime Stoppers

6   regarding the Ascher murder?

7             MS. BRADY:  Objection, foundation.

8      A.      I take the Fifth Amendment.

9   BY MR. IASPARRO:

10     Q.      Did you ever see a copy of any written

11  statement that Marvin Windham provided to police

12  regarding Patrick Pursley's involvement in the

13  Ascher homicide?

14            MS. BRADY:  Objection, foundation.

15     A.      I take the Fifth Amendment.

16  BY MR. IASPARRO:

17     Q.      Do you know if Marvin Windham provided

18  a written statement to police before or after your

19  written statements to police on June 10, 1993?

20            MS. BRADY:  Objection, form,

21  foundation.

22     A.      I take the Fifth Amendment.

23  BY MR. IASPARRO:

24     Q.      Do you know a man named Lester Brown,

1    also goes by the nickname Latee?

2         A.    I take the Fifth Amendment.

3         Q.    Ms. Crabtree, do you have a sister

4    named Theresa Crabtree?

5         A.    I take the Fifth Amendment.

6         Q.    As to whether you have a sister named

7    Theresa Crabtree?

8         A.    I do have a sister named Theresa

9    Crabtree, yes.

10        Q.    When is the last time that you spoke to

11   her?

12        A.    It's been a couple of months.

13        Q.    Does she still live in Rockford?

14        A.    Yes.

15        Q.    Do you know where in Rockford that she

16   lives?

17        A.    I don't know her exact address.  It is

18   on the west side of Rockford.

19        Q.    Do you know what street that she lives

20   on?

21        A.    I think it's Ashley.  It's off of West

22   State.

23        Q.    Are you aware of whether your sister,

24   Theresa Crabtree, used to date a man named Lester

1    Brown?

2          A.      I take the Fifth Amendment.

3          Q.      Have you ever met a man named Lester

4    Brown?

5          A.      I take the Fifth Amendment.

6          Q.      Have you ever spoken to a man named

7    Lester Brown about the First Bank North in

8    Rockford, Illinois?

9          A.      I take the Fifth Amendment.

10         Q.      Did you ever speak to Lester Brown

11   about the Andrew Ascher homicide?

12         A.      I take the Fifth Amendment.

13         Q.      Did you ever speak to Lester Brown

14   about any information that he had about who

15   committed that murder?

16              MS. BRADY:  Objection, foundation.

17         A.      I take the Fifth Amendment.

18   BY MR. IASPARRO:

19         Q.      Did you ever speak to Lester Brown

20   about any information that he provided to police

21   regarding Patrick Pursley's involvement in the

22   Ascher murder?

23              MS. BRADY:  Objection, foundation,

24   form.

1      A.      I take the Fifth Amendment.

2   BY MR. IASPARRO:

3      Q.      Do you have any knowledge of the source

4   of any information Lester Brown provided to police

5   regarding Patrick Pursley's involvement in the

6   Andrew Ascher murder?

7              MS. BRADY:  Objection, foundation.

8      A.      I take the Fifth Amendment.

9   BY MR. IASPARRO:

10     Q.      Do you know whether Lester Brown

11  provided a written statement to police regarding

12  his knowledge of Patrick Pursley's involvement in

13  the Ascher murder?

14             MS. BRADY:  Objection, foundation.

15     A.      I take the Fifth Amendment.

16  BY MR. IASPARRO:

17     Q.      Do you have any knowledge regarding the

18  circumstances surrounding Lester Brown's

19  cooperation with police back in 1993 or 1994?

20             MS. BRADY:  Objection, form,

21  foundation.

22     A.      I take the Fifth Amendment.

23  BY MR. IASPARRO:

24     Q.      Ms. Crabtree, did you have any

1    conversations with Lester Brown during summer of

2    1993 about him committing a bank robbery at the

3    First Bank North in Rockford, Illinois?

4        A.    I take the Fifth Amendment.

5        Q.    Do you have any knowledge of Lester

6    Brown committing a bank robbery at the First Bank

7    North in Rockford, Illinois, in 1993?

8            MS. BRADY:  Objection, foundation.

9        A.    I take the Fifth Amendment.

10   BY MR. IASPARRO:

11       Q.    Do you have any knowledge of your

12   sister, Theresa Crabtree, being involved in a bank

13   robbery at the First Bank North in Rockford,

14   Illinois, in 1993?

15           MS. BRADY:  Objection, foundation.

16       A.    I take the Fifth Amendment.

17   BY MR. IASPARRO:

18       Q.    Did you have any conversations with

19   your sister, Theresa Crabtree, at any time

20   regarding she and Lester Brown committing the bank

21   robbery at the First Bank North in Rockford?

22           MS. BRADY:  Objection, foundation.

23       A.    I take the Fifth Amendment.

24   BY MR. IASPARRO:

1       Q.    Do you know a man named Owen Bell,

2  Senior, Ms. Crabtree?

3       A.    I take the Fifth Amendment.

4       Q.    Do you recall ever meeting anybody by

5  the name of Owen Bell, Senior?

6       A.    I take the Fifth Amendment.

7       Q.    Are you aware of any information that

8  Owen Bell, Senior provided at any time to police

9  regarding his knowledge of Patrick Pursley's

10  involvement in the Ascher murder?

11       A.    I take the Fifth Amendment.

12       Q.    At any time did you speak to a man

13  named Owen Bell, Senior about Patrick Pursley?

14       A.    I take the Fifth Amendment.

15       Q.    Ms. Crabtree, after the First Bank

16  North robbery on May 12, 1993, did you use proceeds

17  from that robbery to purchase a Beretta 9

18  millimeter firearm?

19       MS. BRADY:  Objection, form,

20  foundation.

21       A.    I take the Fifth Amendment.

22  BY MR. IASPARRO:

23       Q.    Did you purchase a Beretta 9 millimeter

24  firearm in 1993?

1        A.      I take the Fifth Amendment.

2        Q.      I'm pulling up another document.  I

3   think this is going to be Exhibit 8.

4               (Deposition Exhibit 8 marked

5                  for identification.)

6               MR. IASPARRO:  For the record, this is

7   Bates No. RFD Defense 235.

8   BY MR. IASPARRO:

9        Q.      In the middle of the page there where

10  I've scrolled down, is that your signature,

11  Ms. Crabtree?

12       A.      I take the Fifth Amendment.

13       Q.      Did you purchase a Beretta 9 millimeter

14  firearm from the Bullet Stop Gun Shop on May 20,

15  1993?

16       A.      I take the Fifth Amendment.

17       Q.      Ms. Crabtree, do you recall Rockford

18  police officers searching your apartment on

19  June 10, 1993?

20               MS. BRADY:  Objection, form.

21       A.      I take the Fifth Amendment.

22  BY MR. IASPARRO:

23       Q.      Isn't it true that you went to your

24  apartment at 901 Ashland on June 10, 1993, with

1   some police detectives?

2        A.     I take the Fifth Amendment.

3        Q.     Isn't it true that Detective Scott read

4   a copy of a search warrant for your apartment to

5   you that day?

6        A.     I take the Fifth Amendment.

7        Q.     Isn't it true on that day that you

8   actually assisted the detectives in locating at

9   least one firearm in your apartment at 901 Ashland?

10            MS. BRADY:  Objection, form.

11       A.     I take the Fifth Amendment.

12  BY MR. IASPARRO:

13       Q.     In fact, there were two firearms

14  recovered from your apartment at 901 Ashland that

15  day, correct?

16            MS. BRADY:  Objection, form.

17       A.     I take the Fifth Amendment.

18  BY MR. IASPARRO:

19       Q.     And isn't it true that later on that

20  day at the Rockford Police Department you

21  identified the Taurus 9 millimeter firearm that had

22  been recovered from your apartment as the firearm

23  that Patrick Pursley used in the murder of Andrew

24  Ascher?

1          MS. BRADY:  Objection, form.

2     A.     I take the Fifth Amendment.

3  BY MR. IASPARRO:

4     Q.     Ms. Crabtree, prior to June 10, 1993,

5  to the best of your knowledge, had you ever met a

6  detective named Mark Schmidt from the Rockford

7  Police Department?

8          MS. BRADY:  Objection, form,

9  foundation.

10     A.     I take the Fifth Amendment.

11  BY MR. IASPARRO:

12     Q.     To the best of your knowledge, prior to

13  June 10, 1993, had you ever met a detective named

14  Howard Forrester?

15          MS. BRADY:  Objection, form,

16  foundation.

17     A.     I take the Fifth Amendment.

18  BY MR. IASPARRO:

19     Q.     On June 10, 1993, did you know that

20  Rockford police officers were conducting

21  surveillance outside of your apartment?

22          MS. BRADY:  Objection, form,

23  foundation.

24     A.     I take the Fifth Amendment.

1    BY MR. IASPARRO:

2        Q.     While leaving your apartment that --

3    shortly thereafter learning that you were being

4    followed by Rockford police officers?

5            MS. BRADY:  Michael, I didn't catch

6    that.  You broke up a little bit.  Can you ask that

7    question again?

8            MR. IASPARRO:  Sure.

9    BY MR. IASPARRO:

10       Q.     Do you recall on June 10, 1993, during

11   the day leaving your apartment with Patrick Pursley

12   and learning shortly thereafter that you were being

13   followed by Rockford police officers?

14           MS. BRADY:  Objection, form.

15       A.     I take the Fifth Amendment.

16           MR. MOGBANA:  This is Ifeanyi for the

17   City.  Maybe it's on my end, but it appears that

18   the question doesn't fully come out before the

19   objection comes in, and I hope the court reporter

20   is not having any problems with that.

21           Ms. Court Reporter, are you having

22   problems getting all of the questions before the

23   objections come in?

24           THE COURT REPORTER:  I am not having

1   any problems.

2   BY MR. IASPARRO:

3       Q.     I'm going to show you a couple more

4   documents, Ms. Crabtree.  Do you see a document

5   that is up on your screen in front of you?

6       A.     Yes.

7              MR. IASPARRO:  And for the record, I

8   think this is going to be Exhibit 9.

9              (Deposition Exhibit 9 marked

10                for identification.)

11  BY MR. IASPARRO:

12      Q.     These are RFD Defense 128 and 129,

13  starting with RFD Defense 128.

14             Is that your signature at the bottom

15  right-hand corner of the page, Ms. Crabtree?

16      A.     I take the Fifth Amendment.

17      Q.     On the next page of the exhibit, RFD

18  Defense 129, is that your signature at the bottom

19  right-hand corner of that sheet, Ms. Crabtree?

20      A.     I take the Fifth Amendment.

21      Q.     Detectives Forrester and Schmidt

22  advised you of your Miranda Rights on June 10,

23  1993, correct?

24             MS. BRADY:  Objection, form,

1   foundation.

2        A.      I take the Fifth Amendment.

3   BY MR. IASPARRO:

4        Q.      And you voluntarily agreed to talk to

5   them during the course of that afternoon and

6   evening, correct?

7             MS. BRADY:  Objection, form,

8   foundation.  Calls for a legal conclusion.

9        A.      I take the Fifth Amendment.

10  BY MR. IASPARRO:

11       Q.      Do you recall executing a consent to

12  search form so that Rockford police officers could

13  go back to your apartment at 901 Ashland on

14  June 10, '93, and recover a briefcase?

15       A.      I take the Fifth Amendment.

16       Q.      Here's another document that should be

17  in front of you now.

18             MR. IASPARRO:  We're going to mark this

19  Exhibit 10, Ms. Crabtree.

20             (Deposition Exhibit 10 marked

21               for identification.)

22  BY MR. IASPARRO:

23       Q.      For the record, this is Bates No. RFD

24  Defense 130.

1          Ms. Crabtree, is that your signature on

2    the bottom right-hand corner of that document?

3          A.    I take the Fifth Amendment.

4          Q.    In fact, you did grant consent to

5    search your apartment at 901 Ashland, apartment

6    number two, during the evening hours of June 10,

7    1993, correct?

8          A.    I take the Fifth Amendment.

9          Q.    Ms. Crabtree, do you recall being

10   released from the Winnebago County Jail on July 28,

11   1993?

12         A.    I take the Fifth Amendment.

13         Q.    Are you aware of the circumstances

14   which lead to your release from the jail on that

15   date?

16         MS. BRADY:  Objection, foundation.

17         A.    I take the Fifth Amendment.

18   BY MR. IASPARRO:

19         Q.    Do you know if Detective Forrester

20   arranged with the state's attorney's office for

21   your release from jail that day?

22         MS. BRADY:  Objection, form,

23   foundation.

24         A.    I take the Fifth Amendment.

1   BY MR. IASPARRO:

2       Q.     You had been charged with robbery with

3   respect to the First Bank North robbery as of that

4   time.  Would you agree with that?

5              MS. BRADY:  Objection to form.

6       A.     I take the Fifth Amendment.

7   BY MR. IASPARRO:

8       Q.     Do you recall going to the detective

9   division and meeting with Detective Forrester on

10  August 5, 1993?

11             MS. BRADY:  Objection, form,

12  foundation.

13      A.     I take the Fifth Amendment.

14  BY MR. IASPARRO:

15      Q.     Isn't it true that a tan Chevy

16  Celebrity, which you owned, was released to you by

17  Detective Forrester on August 5, 1993?

18      A.     I take the Fifth Amendment.

19      Q.     Ms. Crabtree, did you execute an

20  affidavit with respect to the Ascher homicide and

21  Mr. Pursley on August 6, 1993?

22      A.     I take the Fifth Amendment.

23      Q.     Did you ever have any conversations

24  with Patrick Pursley about an affidavit that you

1    executed on August 6, 1993?

2                MS. BRADY:  Objection, form,

3    foundation.

4        A.    I take the Fifth Amendment.

5    BY MR. IASPARRO:

6        Q.    Did Patrick Pursley provide you with

7    any language to use in the affidavit that you

8    executed on August 6, 1993?

9                MS. BRADY:  Objection, form,

10   foundation.

11       A.    I take the Fifth Amendment.

12   BY MR. IASPARRO:

13       Q.    Prior to August 6, 1993, had you ever

14   drafted an affidavit before?

15       A.    I take the Fifth Amendment.

16       Q.    Did you know how to prepare an

17   affidavit as of August 6, 1993?

18       A.    I take the Fifth Amendment.

19       Q.    Did anybody help you draft the

20   affidavit which you executed on August 6, 1993 with

21   respect to Patrick Pursley?

22       A.    I take the Fifth Amendment.

23       Q.    Did you write that affidavit?

24       A.    I take the Fifth Amendment.

1      Q.      Ms. Crabtree, has a document appeared

2   on the screen in front of you?

3      A.      Yes, it has.

4              MS. BRADY:  And we'll mark this as

5   Exhibit 11.

6              (Deposition Exhibit 11 marked

7                for identification.)

8   BY MR. IASPARRO:

9      Q.      Which for the record is RFD Defendants

10  5246 through 5254.

11             Ms. Crabtree, have you ever seen this

12  document before?

13     A.      I take the Fifth Amendment.

14     Q.      Isn't this true that this is an

15  affidavit that you executed on August 6, 1993?

16     A.      I take the Fifth Amendment.

17     Q.      Going to the last page of this exhibit,

18  Ms. Crabtree, bottom right-hand corner of RFD

19  Defendants 5254, is that your signature,

20  Ms. Crabtree?

21     A.      I take the Fifth Amendment.

22     Q.      Is this document in your handwriting?

23     A.      I take the Fifth Amendment.

24     Q.      Do you know who the notary public is

1  with respect to this document, a person named Carol

2  McKenzie?

3        A.      I take the Fifth Amendment.

4              MR. IASPARRO:  I think it might make

5  sense to take maybe a 10-minute break right now.  I

6  don't think I have a whole lot more to ask you,

7  Ms. Crabtree, but I would like a few minutes to

8  gather my thoughts and check my notes, if that's

9  okay with everybody.

10             THE WITNESS:  Yes.

11             MS. BRADY:  Works for us.

12             MR. CONNOR:  Works for us.

13             MR. IASPARRO:  Okay.  Thank you.

14             (Recess taken.)

15             MR. IASPARRO:  Back on the record.

16             Ms. Crabtree, I appreciate your time

17  today.  I don't have any more questions for you

18  right now.

19             THE WITNESS:  Thank you.

20             MR. IASPARRO:  I think Mr. Pottinger or

21  Mr. Huotari may have some questions for you.

22

23                   EXAMINATION

24  BY MR. POTTINGER:

1          Q.     Ms. Crabtree, I do have a few

2     questions.  My name is R.C. Pottinger.  I'm a

3     lawyer.  I represent the estate the Howard

4     Forrester, Gary Reffett, and David Ekedahl.

5               Again, you did recall -- I think

6     earlier you said that you do recall Detective

7     Forrester's name; is that true?

8          A.     Name is familiar, yes.

9          Q.     Okay.  But you don't have any specific

10    recollection of Detective Forrester as you sit

11    here?

12         A.     Unfortunately, no.

13         Q.     I know that you haven't read the

14    complaint, but there has been a lawsuit that's been

15    filed by Patrick Pursley and one of the allegations

16    in that lawsuit was that on April 2, 1993,

17    approximately, 10:00 p.m., 22-year-old Andrew

18    Ascher was shot and killed while sitting in the

19    driver's seat of his Explorer.

20               Ascher's girlfriend, 25-year-old

21    Rebecca George, was sitting next to him on the

22    front passenger seat.  And that event happened at

23    2709 Silent Wood Trail in Rockford, Illinois.

24               Do you have any personal knowledge of

1    the allegation made in the complaint with regard to

2    that alleged incident?

3        A.    I take the Fifth Amendment.

4        Q.    Are you aware of any facts or

5    circumstances concerning that allegation?

6        A.    I take the Fifth Amendment.

7            MS. BRADY:  Objection, foundation,

8    form, and calls for a legal conclusion.

9    BY MR. POTTINGER:

10       Q.    In April of 1993, Patrick Pursley was a

11   27-year-old resident of the City of Rockford who

12   lived with 24-year old Samantha Crabtree, and he

13   had a 10-year-old son and a four-year-old daughter.

14           Do you have any personal knowledge of

15   that allegation?

16       A.    I take the Fifth Amendment.

17       Q.    Are you aware of any facts or

18   circumstances concerning that allegation?

19       A.    I take the Fifth Amendment.

20       Q.    What is Patrick Pursley's relationship

21   with your -- with his daughter Nyjah?

22           (Discussion off the record; technical

23   difficulty.)

24       A.    I need you to repeat the question.

```
1   BY MR. POTTINGER:

2       Q.      Are you aware of Patrick Pursley's

3   relationship with his daughter Nyjah, your daughter

4   Nyjah?

5               MS. BRADY:  Objection --

6       A.      That question was garbled.  I can't

7   hear the whole question.  It gets kind of garbled

8   towards the end.  If you could repeat it one more

9   time.

10  BY MR. POTTINGER:

11      Q.      Are you aware of Mr. Pursley's

12  relationship with your daughter Nyjah?

13              MS. BRADY:  Objection, form.

14              MR. CONNOR:  Can you clarify?  Like

15  right now, you mean?  Is she aware now or just

16  generally?

17  BY MR. POTTINGER:

18      Q.      Generally.

19      A.      I take the Fifth Amendment.

20      Q.      There is an allegation in the complaint

21  that Patrick Pursley had no connection whatsoever

22  to Andrew Ascher.  Do you have any personal

23  knowledge of that allegation?

24              MS. BRADY:  Objection, form.
```

1          A.      I take the Fifth Amendment.

2    BY MR. POTTINGER:

3          Q.      There is an allegation in the complaint

4    that on the night of April 2, 1993, Patrick Pursley

5    was home with you, his son Anthony, and Anthony's

6    young uncle Aaron.  Do you have any personal

7    knowledge of that allegation?

8               MS. BRADY:  Objection, form.

9          A.      I take the Fifth Amendment.

10   BY MR. POTTINGER:

11         Q.      There is an allegation in the complaint

12   that Detective Forrester and Detective Schmidt

13   brought you to the identification unit at the

14   Rockford Police Station to meet with defendant,

15   also an officer, Houde, H-o-u-d-e.  It is alleged

16   that the officers coerced you into falsely claiming

17   that on the night of Mr. Ascher's murder on

18   April 2, 1993, that Patrick Pursley wore clothing

19   and carried the 9 millimeter Taurus gun that had

20   been recovered from your apartment.

21              Do you have any personal knowledge of

22   that allegation?

23              MS. BRADY:  Objection, form.

24         A.      I take the Fifth Amendment.

1   BY MR. POTTINGER:

2       Q.      It has been alleged that the

3   defendants, which would be including but not

4   limited to Detective Schmidt and Detective

5   Forrester, typed a false statement for you

6   implicating Patrick Pursley in Mr. Ascher's murder

7   and caused you to sign.

8               Do you have any personal knowledge of

9   that allegation?

10              MS. BRADY:  Objection, form.

11      A.      I take the Fifth Amendment.

12  BY MR. POTTINGER:

13      Q.      It has also been alleged that the

14  defendant officers, which would include -- in the

15  case, interrogated you for more than 10 hours; is

16  that true?

17      A.      I take the Fifth Amendment.

18      Q.      Do you have any personal knowledge of

19  that allegation?

20      A.      I take the Fifth Amendment.

21      Q.      It's also been alleged that the

22  defendant officers in this case knew that the

23  statement they obtained from you was false and that

24  your false statement was used to initiate criminal

1  charges against Patrick Pursley to secure this

2  indictment.

3          Do you have any personal knowledge of

4  that allegation?

5          MS. BRADY:  Objection, form.

6      A.    I take the Fifth Amendment.

7  BY MR. POTTINGER:

8      Q.    It's also been alleged that on

9  August 6, 1993, that you signed an affidavit

10 recanting your prior statements and in that

11 affidavit explained that you had been interrogated

12 for more than 10 hours, were pregnant, tired, sick,

13 and emotionally weak at the time.  And that you

14 adopted the detective's false story when you

15 claimed that Patrick Pursley was involved in Andrew

16 Ascher's murder because you were intimidated and

17 coerced.

18         Do you have any personal knowledge of

19 facts to support that allegation?

20         MS. BRADY:  Objection, form.

21     A.    I take the Fifth Amendment.

22 BY MR. POTTINGER:

23     Q.    It's also been alleged that when you

24 were at the police station -- there was a point in

1   time when you were at the police state in June of

2   1993, that the defendant officers, including

3   Forrester and Schmidt, intimidated and coerced you,

4   threatened to separate you from your children, fed

5   you details about the Ascher murder that you did

6   not previously know and coerced you into

7   fabricating a story implicating Patrick Pursley in

8   the murder.

9           Do you have any personal knowledge or

10  aware of any facts to support that allegation?

11          MS. BRADY:  Objection, form,

12  foundation.

13      A.      I take the Fifth Amendment.

14  BY MR. POTTINGER:

15      Q.      It's alleged in the complaint that the

16  defendants, including Detective Forrester and

17  Detective Schmidt, brought you in the back of a

18  police car to the area where Andrew Ascher was

19  killed and thereafter coerced you into fabricating

20  a story about driving Patrick Pursley to and from

21  the scene of Andrew Ascher's murder on the night

22  that he was killed, which again was April 2, 1993.

23          Do you have any personal knowledge or

24  aware of any facts that would support that

1    allegation?

2              MS. BRADY:  Objection, form,

3    foundation.

4         A.    I take the Fifth Amendment.

5              MR. POTTINGER:  I don't have anything

6    further.

7

8                    EXAMINATION

9    BY MR. HUOTARI:

10        Q.    Ms. Crabtree, good afternoon.  My name

11   is Joel Huotari.  I represent a handful of police

12   officers who have been sued in this case.  I'm

13   going to give you their names and just ask you if

14   you remember any of them having any role in the

15   investigation.  Okay?

16              The first name is Christine Bishop.  Do

17   you recall having any interaction with Christine

18   Bishop whatsoever?

19        A.    No.

20        Q.    How about Jim Barton?

21        A.    No.

22        Q.    And Bruce Scott?

23        A.    No.

24        Q.    How about Doug Williams?

```
 1        A.      No.

 2        Q.      Or a Stephen Pirages?

 3        A.      No.

 4        Q.      None of those officers were involved in

 5   your interrogation about the bank robbery or the

 6   Ascher homicide, were they?

 7                MS. BRADY:  Objection, foundation.

 8        A.      I take the Fifth Amendment.

 9   BY MR. HUOTARI:

10        Q.      Do you recall whether any of those

11   folks interrogated you in this case?

12        A.      I take the Fifth Amendment.

13        Q.      You don't contend that any of those

14   officers in any way coerced your testimony about

15   Patrick Pursley's role in any crimes, do you?

16                MS. BRADY:  Objection, foundation.

17        A.      I take the Fifth Amendment.

18   BY MR. HUOTARI:

19        Q.      Do you deny that Patrick Pursley

20   admitted to robbing the Burger King on Alburn

21   Street on April 15, 1993?

22                MS. BRADY:  Objection, foundation,

23   form.

24        A.      I take the Fifth Amendment.
```

1    BY MR. HUOTARI:

2         Q.    You don't deny that Patrick Pursley

3    admitted to robbing the First North Bank in

4    Rockford on May 12, 1993, do you?

5              MS. BRADY:  Objection, foundation,

6    form.

7         A.    I take the Fifth Amendment.

8    BY MR. HUOTARI:

9         Q.    Do you deny that Patrick shot Andy

10   Ascher on April 2, 1993?

11             MS. BRADY:  Objection, form.

12        A.    I take the Fifth Amendment.

13   BY MR. HUOTARI:

14        Q.    You gave the police statements about

15   the Andrew Ascher murder, the bank robbery, and the

16   Burger King robbery, did you not?

17        A.    I take the Fifth Amendment.

18        Q.    Did you lie to the police when you gave

19   them those statements?

20             MS. BRADY:  Objection, form.

21        A.    I take the Fifth Amendment.

22   BY MR. HUOTARI:

23        Q.    Do you recall, Ms. Crabtree, ever

24   having a gun getting worked on in order to make it

1   untraceable?

2              MS. BRADY:  Objection, form,

3   foundation.

4        A.     I take the Fifth Amendment.

5   BY MR. HUOTARI:

6        Q.     Did Patrick Pursley ever ask you to

7   take a gun in to have it worked on to make it

8   untraceable?

9              MS. BRADY:  Objection, form,

10  foundation.

11       A.     I take the Fifth Amendment.

12  BY MR. HUOTARI:

13       Q.     Do you recall when Patrick Pursley

14  learned that you had given statements to the police

15  implicating him in the murder of Andrew Ascher?

16             MS. BRADY:  Objection, foundation.

17       A.     I take the Fifth Amendment.

18  BY MR. HUOTARI:

19       Q.     Do you recall what Patrick Pursley said

20  to you about the fact that you had given a

21  statement to the police implicating him in that

22  murder?

23             MS. BRADY:  Objection, form.

24       A.     I take the Fifth Amendment.

1   BY MR. HUOTARI:

2         Q.      Did he demand that you retract the

3   statement?

4         A.      I take the Fifth Amendment.

5         Q.      Did he threaten you or your children?

6               MS. BRADY:  Objection, form.

7         A.      I take the Fifth Amendment.

8   BY MR. HUOTARI:

9         Q.      Do you recall hanging out with a Marvin

10  Windham in 1993, also known as Maim (phonetic)?

11        A.      I take the Fifth Amendment.

12        Q.      Did you and Marvin have a plan to frame

13  Patrick for murder to get Patrick out of the

14  picture?

15        A.      I take the Fifth Amendment.

16        Q.      Did you use the police and their

17  investigation into Patrick as a way for you and

18  Marvin to get Pursley out of the picture?

19               MS. BRADY:  Objection, form.

20        A.      I take the Fifth Amendment.

21  BY MR. HUOTARI:

22        Q.      Did Pursley ever complain to you about

23  a Crime Stoppers informant that had implicated him

24  in crimes?

1              MS. BRADY:  Objection, form.

2        A.      I take the Fifth Amendment.

3    BY MR. HUOTARI:

4        Q.      And did Pursley ever ask you to work

5    with others to identify those informants or their

6    locations so that Patrick Pursley could retaliate

7    against them?

8              MS. BRADY:  Objection, form,

9    foundation.  Assumes facts not in evidence.

10        A.      I take the Fifth Amendment.

11    BY MR. HUOTARI:

12        Q.      Did Patrick Pursley ask you to give

13    Lester Brown, also known as Latee, information

14    about Marvin Windham?

15              MS. BRADY:  Objection, form.

16        A.      I take the Fifth Amendment.

17    BY MR. HUOTARI:

18        Q.      Did Patrick Pursley ever ask you to

19    give information to Owen Bell, Senior about the

20    location of Marvin Windham?

21              MS. BRADY:  Objection, form.

22        A.      I take the Fifth Amendment.

23    BY MR. HUOTARI:

24        Q.      Did Patrick Pursley ever advocate for a

1  race war or talk about his desire to kill white

2  people in your presence?

3          MS. BRADY:  Objection, form,

4  foundation.

5      A.    I take the Fifth Amendment.

6  BY MR. HUOTARI:

7      Q.    Ms. Crabtree, your testimony has

8  vacillated in the past about your whereabouts on

9  April 2, 1993.  Some of your statements indicated

10 that you were driving around with Patrick Pursley,

11 other statements indicate that you were at home

12 that night with your family the entire evening.

13         As you sit here today, do you recall

14 the events of April 2, 1993, and your whereabouts?

15         MS. BRADY:  Objection, form.

16     A.    I take the Fifth Amendment.

17 BY MR. HUOTARI:

18     Q.    Okay.  And the last question that I

19 have for you is an open-ended one:  Can you

20 describe for me your relationship with Patrick

21 Pursley today and how you feel about him?

22     A.    I take the Fifth Amendment.

23     Q.    Has anybody contacted you on his

24 behalf -- when was the last time that you talked to

1    Patrick?  You said it was about a year ago?

2         A.    Yes.

3         Q.    That was when he came to see Nyjah at

4    your house?

5         A.    Yes.

6         Q.    Prior to then, when was the last time

7    that you'd spoken to him?

8         A.    Probably -- it was probably maybe a

9    year before that.

10        Q.    Okay.

11        A.    And I was picking Nyjah up from his

12   apartment.

13        Q.    And did you have any communications

14   directly with Patrick Pursley at that time?

15        A.    The communication that I had with

16   Patrick Pursley at that time was, hello, good-bye.

17   It was a short conversation.  I was just picking up

18   my daughter.  That was the only communication at

19   that time.

20        Q.    Has he or anyone on his behalf, whether

21   it's your daughter or a lawyer, a friend, has

22   anybody contacted you at any point to encourage you

23   to testify one way or the other on behalf of

24   Patrick?

1      A.      I take the Fifth Amendment, please.

2              MR. HUOTARI:  Thank you very much.  I

3      appreciate your cooperation.

4              THE WITNESS:  Thank you.

5              MR. IASPARRO:  Kevin, this is Michael.

6      I have a couple of follow-ups.

7

8                      EXAMINATION

9      BY MR. IASPARRO:

10     Q.      Ms. Crabtree, I think just two

11     follow-up questions, have you at any time had any

12     conversations with any of the lawyers from the law

13     firm of Lovey and Lovey regarding Mr. Pursley or

14     this civil lawsuit?

15     A.      I'm sorry, Michael.  Could you repeat

16     that question?

17     Q.      Sure.  What I want to know is whether

18     you at any time had any conversations with any

19     lawyers from the law firm Lovey and Lovey regarding

20     Mr. Pursley or this civil lawsuit?

21     A.      No.

22     Q.      And similar question, did you at any

23     time have any conversations with any lawyers from

24     the law firm of Jenner and Block with respect to

1   Mr. Pursley or anything relating to Mr. Pursley?

2        A.    No.

3              MR. IASPARRO:  Thank you.

4              THE WITNESS:  Thank you.

5

6                    EXAMINATION

7   BY MR. MOGBANA:

8        Q.    Ms. Crabtree, my name is Ifeanyi, and I

9   represent the city.  I just have one question.

10             Do you know of an individual named

11  Charlene Getty?

12       A.    No.

13             MR. MOGBANA:  I don't have any other

14  questions.  Thank you.

15

16                    EXAMINATION

17  BY MR. POTTINGER:

18       Q.    Just a quick follow up.  With regard to

19  the -- Mr. Huotari's questions, he asked, you had

20  two conversations, one a few months ago, I guess,

21  or a year ago and then a prior one.  Both with

22  regard to Patrick Pursley and in the exchange of

23  your daughter at either your house or the

24  apartment.

1           Prior to that, could you take me back
2    in time to other conversations that you had with
3    Mr. Pursley?
4        A.    I can't recall there were any
5    conversations with Patrick Pursley.
6        Q.    Can you generally -- so when prior to
7    those two incidents where you were exchanging
8    Nyjah, when did you -- when, if any, conversations
9    did you have with Patrick Pursley, let's say, after
10   your trial testimony back in 1994?
11           MS. BRADY:  Objection, form,
12   foundation.
13       A.    I take the Fifth Amendment.
14   BY MR. POTTINGER:
15       Q.    So you will not -- just to be clear, I
16   understand you're taking the Fifth.  You will
17   refuse to answer any questions with regard to
18   conversations that you had with Patrick Pursley
19   about your trial testimony up until the very brief
20   conversations that you had with him in connection
21   with the exchange of your daughter; is that
22   correct?
23           MR. CONNOR:  Could we have just a
24   moment, Mr. Pottinger?

1           MR. POTTINGER:  Sure.

2           MR. CONNOR:  Thank you.

3           (Discussion was had off the record.)

4           MR. CONNOR:  Thank you very much,

5    counsel.  We are back.  Ask your question again,

6    please.

7    BY MR. POTTINGER:

8       Q.    Since you gave your trial testimony

9    back in 1994 at the trial of Patrick Pursley and up

10   until the two brief exchanges and conversations

11   that you had that you previously described in this

12   deposition, what other communication, if any, have

13   you had with Patrick Pursley between those two

14   periods?

15      A.    I was incarcerated until 1997, and we

16   had mail correspondence at that point.  But after

17   '97, I had no communication with him whatsoever.

18      Q.    So that I understand, from 1994, that's

19   when you testified at the trial and ultimately

20   Mr. Pursley was found guilty, and then you were

21   incarcerated in 1997; is that correct?

22      A.    Until 1997.

23      Q.    So from 1994 until 1997, until you were

24   released from the Department of Corrections, you

1   had mail correspondence only with Mr. Pursley?

2       A.      Yes.

3       Q.      And since your release from the

4   Department of Corrections in 1997 and up until the

5   two brief exchanges that you earlier described, you

6   had no communication whatsoever with Mr. Pursley;

7   is that correct?

8       A.      That's correct.

9           MR. POTTINGER:  Nothing further.

10          MR. HUOTARI:  If I may, very briefly,

11  Ms. Crabtree.  This is Joel Huotari again.

12

13              EXAMINATION

14  BY MR. HUOTARI:

15      Q.      What I'm trying to piece together is

16  how the relationship with Patrick changed.  After

17  the trial, he gets convicted, you're incarcerated

18  for a number of years, you're writing back and

19  forth, right?

20          MS. BRADY:  Objection, form.

21  BY MR. HUOTARI:

22      Q.      You're exchanging written

23  correspondence during those years when you are both

24  incarcerated, correct?

1        A.      From the years of the time of my

2   incarceration until 1997, yes, it was mail

3   correspondence.

4        Q.      It was 1993 until 1997?

5        A.      I wasn't incarcerated until 1995.

6        Q.      I'm sorry.  '95.  So prior to that, you

7   had been going to visit Patrick Pursley when he was

8   in jail from '93 until '97?

9        A.      I take the Fifth Amendment.

10       Q.      So some of the prison letters that you

11  and Patrick were exchanging in 1993 were talking

12  about getting married and raising a family

13  together, and obviously, you never did get married

14  to Patrick; is that right?

15          MS. BRADY:  Objection, form.

16       A.      No.

17  BY MR. HUOTARI:

18       Q.      No, you did not marry at any point?

19       A.      No, I did not marry Patrick Pursley.

20       Q.      And when did that plan change?  When

21  did you decide it wasn't meant to be; you're not

22  going to end up together?

23          MS. BRADY:  Objection, form.

24       A.      I take the Fifth Amendment.

1    BY MR. HUOTARI:

2        Q.    Was there a particular event or

3    conversation that caused you to call it off and go

4    your separate ways?

5        A.    I take the Fifth Amendment.

6        Q.    Do you recall receiving letters from

7    Patrick Pursley when he was arrested, and this was

8    in 1993 before he went to trial, where he made

9    certain threats to you if you didn't retract the

10   statements that you'd given to the police?

11            MS. BRADY:  Objection, form,

12   foundation.  Assumes facts not in evidence.

13       A.    I take the Fifth Amendment.

14            MR. HUOTARI:  Thank you, Ms. Crabtree.

15   That's all that I have for you.

16            THE WITNESS:  Thank you.

17            MS. BRADY:  Anything else from defense?

18            MR. POTTINGER:  Not from my point of

19   view.

20            MR. IASPARRO:  None from me.

21            MR. HUOTARI:  Nothing.

22            MS. BRADY:  Okay.

23

24

1              EXAMINATION

2    BY MS. BRADY:

3        Q.     Ms. Crabtree, I just have a couple of

4    follow-ups.

5              So the first thing that I want to ask

6    you about is I'm going to show you an exhibit on

7    this screen.  Can you see this on your screen?

8        A.     Yes.

9        Q.     So we're going to call this Exhibit --

10   I think this is 12.

11             MS. BRADY:  Is that right, Michael?

12             MR. IASPARRO:  Yes.

13             (Deposition Exhibit 12 marked

14               for identification.)

15   BY MS. BRADY:

16       Q.     This looks to me like a letter from you

17   to Patrick Pursley from June 22, 1993.  I'm going

18   to scroll down.  This is a five-page document

19   starting at Pursley 12134.  I'm just scrolling

20   through the pages right now.

21       A.     Yes, I see that.

22       Q.     Is this a letter from you to Patrick?

23       A.     I take the Fifth Amendment.

24       Q.     Is this your handwriting?

1          A.      I take the Fifth Amendment.

2          Q.      I want to show you now what we'll call

3     Exhibit 13.  This is a four-page document starting

4     at Bates labeled Pursley 3093.

5                   (Deposition Exhibit 13 marked

6                    for identification.)

7     BY MS. BRADY:

8          Q.      Can you see that?

9          A.      Yes.

10         Q.      I'm going to flip through the pages

11    just so you can take a look.  Is that your

12    signature there at the bottom?

13         A.      I take the Fifth Amendment.

14         Q.      This is a statement that looks like you

15    may have given or were encouraged to give to

16    Detective Schmidt and Forrester about a robbery at

17    the First Bank North in Rockford, and I think

18    counsel for the defendants asked you a couple of

19    questions about this.

20                  So Detectives Schmidt and Forrester

21    asked you about the robbery at the First Bank North

22    in Rockford on June 10, 1993, didn't they?

23                  MR. IASPARRO:  Objection, form.

24         A.      I take the Fifth Amendment.

1    BY MS. BRADY:

2        Q.    Isn't it true that they told you that

3    they had evidence against you on the bank robbery

4    and they used it as a way to extract false

5    statements against Patrick Pursley on the murder?

6            MR. IASPARRO:  Object to form.

7        A.    I take the Fifth Amendment.

8    BY MS. BRADY:

9        Q.    And you did ultimately get a deal on

10   the charges for bank robbery in exchange for your

11   statement against Patrick Pursley on the Ascher

12   murder, right?

13           MR. IASPARRO:  Object to form and

14   foundation.

15       A.    I take the Fifth Amendment.

16   BY MS. BRADY:

17       Q.    I'm going to show you one more exhibit.

18   This is 14.

19               (Deposition Exhibit 14 marked

20                  for identification.)

21   BY MS. BRADY:

22       Q.    This is a two-page document starting at

23   the Bates label RFD Defense 7632.  Can you see this

24   document on your screen?

1          A.     Yes.

2          Q.     I'm going to flip through both pages so

3     you can take a look.

4                 Do you recall giving this statement to

5     Rockford police on November 6, 1991?

6          A.     I take the Fifth Amendment.

7          Q.     Isn't it true that in the early 1990s

8     when you experienced domestic violence that you

9     called the police for help?

10         A.     I take the Fifth Amendment.

11         Q.     All right.  And as reflected in this

12    report that's Exhibit 14, you were once abused by a

13    person name Lyle Eddy; is that right?

14         A.     I take the Fifth Amendment.

15         Q.     And you called the police when Lyle

16    Eddy hurt you, right?

17         A.     I take the Fifth Amendment.

18         Q.     And you never called the police about

19    Patrick Pursley hurting you; is that right?

20         A.     I take the Fifth Amendment.

21         Q.     And if/when a Rockford detective took a

22    statement from you about Patrick Pursley abusing

23    you or threatening you with physical violence, that

24    statement was not true, was it?

1              MR. IASPARRO:  Object to form.

2         A.     I take the Fifth Amendment.

3    BY MS. BRADY:

4         Q.     Isn't it true that Patrick Pursley was

5    not the person who abused you?

6              MR. IASPARRO:  Object to form.

7         A.     I take the Fifth Amendment.

8              MS. BRADY:  Okay.  I do not have any

9    other questions.  I think we're all done.

10             MR. HUOTARI:  Very briefly.  This is

11   Joel Huotari speaking.

12

13                   EXAMINATION

14   BY MR. HUOTARI:

15        Q.     Ms. Crabtree, in 1993, did you know

16   that Patrick Pursley was a member of the Gangster

17   Disciples street gang?

18             MS. BRADY:  Objection, foundation.

19        A.     I take the Fifth Amendment.

20   BY MR. HUOTARI:

21        Q.     And did any of the members of the

22   Gangster Disciples street gang ever contact you

23   about the statements that you gave against Patrick?

24             MS. BRADY:  Objection, foundation.

```
 1        A.      I take the Fifth Amendment.

 2   BY MR. HUOTARI:

 3        Q.      Were you ever threatened by anyone with

 4   the Gangster Disciples?

 5              MS. BRADY:  Objection, foundation.

 6        A.      I take the Fifth Amendment.

 7   BY MR. HUOTARI:

 8        Q.      Were you ever afraid that anybody

 9   associated with the Gangster Disciples would

10   retaliate against you for taking a position

11   contrary to Patrick Pursley's interests?

12              MS. BRADY:  Objection, foundation.

13        A.      I take the Fifth Amendment.

14              MR. HUOTARI:  Okay.  Thank you again.

15   That is all.

16              THE WITNESS:  Thank you.

17              MS. BRADY:  All right.  I think that

18   you are done.

19              MR. POTTINGER:  I do have a follow-up

20   question.

21

22                   EXAMINATION

23   BY MR. POTTINGER:

24        Q.      At any time in your life, prior to,
```

1   let's say, December 1994, sometime after the trial

2   of Patrick Pursley, had you ever suffered or been a

3   victim of domestic abuse by anybody?

4        A.      I take the Fifth Amendment.

5               MR. POTTINGER:  That's all that I have.

6               THE WITNESS:  Thank you.

7               MS. BRADY:  Anybody else?

8               MR. IASPARRO:  Not me.

9               MS. BRADY:  Ms. Crabtree, now you're

10  done.  Thank you so much for your time and for

11  being here with us today.

12              THE WITNESS:  Thank you.

13              MS. BRADY:  We don't need a copy at

14  this time.

15              MR. IASPARRO:  Yes, I would like a

16  copy.

17              MR. CONNOR:  Ms. Crabtree's attorney

18  would like one.

19              MR. HUOTARI:  If you could send me a

20  copy electronically, that would be great.  This is

21  Joel speaking.

22              MR. BHAVE:  This is Sunil for the ISP

23  defendants with the attorney general's office, we

24  would like a copy, electronic PDF with the

1    exhibits.

2              MR. HUOTARI:  And how are the exhibits

3    going to be handled?  Will they be emailed to the

4    court reporter?

5              MS. BRADY:  I'll email or upload

6    through the Planet Depos link the exhibits that I

7    introduced.

8              MR. IASPARRO:  I'll do the same thing

9    with ours.

10             MR. POTTINGER:  This is Robert

11   Pottinger.  I'll take a copy.

12             MR. MOGBANA:  This is Ifeanyi Mogbana,

13   I'll take a copy too.

14             MR. IASPARRO:  I think that I said that

15   I want one.  Electronic, please.

16             (Proceeding concluded at 12:55 p.m.)

17

18

19

20

21

22

23

24

```
 1   STATE OF ILLINOIS )
                       )  ss.
 2   ROCK ISLAND COUNTY)

 3

 4          I, KONNI L. STAPF, a Certified Shorthand
     Reporter in and for the States of Illinois, Iowa,
 5   and Arizona, do hereby certify that the facts as
     stated in the caption hereto are true; that the
 6   witness named on the face sheet was by me sworn to
     testify to the truth and nothing but the truth
 7   concerning the matters in controversy in this
     cause; that said witness was thereupon examined
 8   under oath and the examination reduced to writing
     under my supervision, consisting of the foregoing
 9   pages, and the computer-aided transcript is a true
     record of the testimony given by said witness and
10   all objections made.

11
            I further certify that I am neither
12   attorney or counsel for, nor related to or employed
     by any of the parties to the action in which this
13   deposition is taken; and, further, that I am not a
     relative or employee of any attorney or counsel
14   employed by the parties hereto or financially
     interested in the action.

15

16          In witness whereof I have hereunto set my
     hand this 29th day in September, 2020.
17

18

19
              Konni L. Stapf
20

21          KONNI L. STAPF, CSR, RPR
            Registered Professional Reporter
22          Illinois CSR License No.
              084-004144
23          Iowa CSR License No. 1168
            Arizona CSR
24
```

| A |
|---|
| a-p-p-e-a-r-a-n--c-e-s |
| 3:1, 4:1, 5:1 |
| aaron |
| 96:6 |
| aberdeen |
| 3:5 |
| ability |
| 10:4 |
| able |
| 40:9, 64:20, 71:14 |
| about |
| 11:4, 11:22, 12:4, 12:8, 12:11, 12:18, 12:20, 13:1, 13:3, 14:9, 14:13, 14:17, 16:14, 18:6, 20:9, 20:17, 21:2, 22:5, 23:15, 24:12, 27:10, 28:15, 28:19, 28:20, 34:14, 34:21, 36:23, 37:1, 40:20, 41:6, 45:15, 46:7, 48:6, 48:9, 48:21, 51:5, 52:14, 54:18, 55:6, 61:12, 61:17, 63:23, 66:4, 66:10, 70:2, 74:18, 75:4, 75:20, 78:7, 78:11, 78:14, 78:20, 80:2, 81:13, 89:24, 99:5, 99:20, 100:20, 100:24, 101:5, 101:14, 102:14, 103:20, 104:22, 105:14, 105:19, |

106:1, 106:8, 106:21, 107:1, 110:19, 113:12, 115:6, 116:16, 116:19, 116:21, 118:18, 118:22, 119:23
**absolutely**
26:11
**abuse**
63:12, 121:3
**abused**
118:12, 119:5
**abusing**
63:23, 118:22
**accident**
50:20
**account**
20:24
**accurate**
9:24, 10:5, 45:19, 46:11, 49:19
**accused**
70:11
**action**
123:21, 123:25
**actually**
19:3, 20:12, 36:2, 68:15, 73:16, 83:8
**additional**
19:5
**address**
77:17
**admitted**
101:20, 102:3
**adopt**
40:10, 55:1
**adopted**
98:14
**advise**
22:18
**advised**
68:24, 69:2, 69:5, 86:22
**advocate**
105:24

**affect**
10:4, 10:10
**affecting**
10:7
**affidavit**
6:26, 89:20, 89:24, 90:7, 90:14, 90:17, 90:20, 90:23, 91:15, 98:9, 98:11
**afraid**
33:21, 34:7, 47:13, 56:24, 57:6, 57:11, 64:2, 66:11, 120:8
**after**
19:4, 19:16, 19:18, 20:1, 22:23, 41:6, 48:6, 48:18, 48:19, 51:5, 57:20, 58:3, 58:8, 76:18, 81:15, 110:9, 111:16, 112:16, 121:1
**afternoon**
23:19, 87:5, 100:10
**again**
13:22, 38:9, 38:11, 41:12, 43:12, 43:14, 43:22, 46:24, 53:3, 54:4, 85:7, 93:5, 99:22, 111:5, 112:11, 120:14
**against**
14:16, 61:13, 98:1, 105:7, 117:3, 117:5, 117:11, 119:23, 120:10
**ageatia**
20:12, 20:21,

20:22, 20:23
**agnew**
27:24
**ago**
107:1, 109:20, 109:21
**agree**
89:4
**agreed**
69:17, 71:1, 87:4
**agreement**
7:19, 61:20
**ahead**
9:14
**al**
1:8
**alburn**
101:20
**aldi's**
43:12
**aligning**
71:7
**all**
2:6, 9:23, 17:6, 17:20, 21:7, 21:24, 23:2, 26:3, 27:16, 29:5, 36:23, 38:6, 48:3, 66:19, 70:4, 71:2, 85:22, 114:15, 118:11, 119:9, 120:15, 120:17, 121:5, 123:17
**allegation**
94:1, 94:5, 94:15, 94:18, 95:20, 95:23, 96:3, 96:7, 96:11, 96:22, 97:9, 97:19, 98:4, 98:19, 99:10, 100:1
**allegations**
93:15
**alleged**
94:2, 96:15,

97:2, 97:13,
97:21, 98:8,
98:23, 99:15
**alpine**
29:20, 38:2
**also**
15:18, 26:6,
39:22, 43:17,
48:9, 54:23,
56:9, 69:13,
77:1, 96:15,
97:13, 97:21,
98:8, 98:23,
104:10, 105:13
**andrew**
58:17, 75:5,
75:10, 78:11,
79:6, 83:23,
93:17, 95:22,
98:15, 99:18,
99:21, 102:15,
103:15
**andy**
28:16, 47:23,
49:14, 50:1,
55:21, 56:8,
102:9
**ann**
57:17
**another**
26:17, 35:11,
52:17, 71:13,
82:2, 87:16
**answer**
8:17, 8:24,
9:2, 9:13, 9:14,
9:20, 22:20,
28:20, 30:8,
30:22, 31:2,
31:6, 31:9,
31:13, 32:11,
32:14, 32:16,
33:5, 33:9,
33:11, 33:14,
33:17, 33:21,
34:15, 34:18,
62:23, 67:7,
110:17

**answered**
28:18, 29:20,
62:21
**answers**
8:11, 9:6, 9:24
**anthony**
96:5
**anthony's**
96:5
**any**
9:17, 9:23,
10:3, 10:7,
10:10, 13:4,
13:5, 13:8,
13:11, 13:12,
13:17, 13:18,
13:23, 14:20,
15:1, 15:5,
17:4, 17:14,
19:5, 20:4,
32:1, 48:24,
50:1, 55:5,
56:13, 61:9,
61:16, 61:19,
62:7, 62:10,
69:10, 75:7,
75:8, 75:14,
75:20, 76:3,
76:10, 78:14,
78:20, 79:3,
79:4, 79:17,
79:24, 80:5,
80:11, 80:18,
80:19, 81:7,
81:8, 81:12,
85:20, 86:1,
89:23, 90:7,
92:17, 93:9,
93:24, 94:4,
94:14, 94:17,
95:22, 96:6,
96:21, 97:8,
97:18, 98:3,
98:18, 99:9,
99:10, 99:23,
99:24, 100:14,
100:17, 101:10,
101:13, 101:14,

101:15, 107:13,
107:22, 108:11,
108:12, 108:18,
108:22, 108:23,
109:13, 110:4,
110:8, 110:17,
111:12, 113:18,
119:8, 119:21,
120:24, 123:21,
123:23
**anybody**
16:24, 34:22,
48:8, 48:10,
81:4, 90:19,
106:23, 107:22,
120:8, 121:3,
121:7
**anyone**
8:1, 8:5,
11:23, 16:22,
21:17, 34:18,
34:19, 107:20,
120:3
**anything**
11:13, 13:9,
14:17, 17:2,
23:17, 31:12,
34:13, 37:23,
37:24, 41:6,
48:8, 48:21,
61:2, 61:3,
61:12, 100:5,
109:1, 114:17
**apart**
20:10, 51:7
**apartment**
38:7, 39:10,
39:13, 41:18,
47:24, 82:18,
82:24, 83:4,
83:9, 83:14,
83:22, 84:21,
85:2, 85:11,
87:13, 88:5,
96:20, 107:12,
109:24
**apartments**
39:7, 39:19,

40:19
**appeared**
91:1
**appears**
85:17
**appreciate**
92:16, 108:3
**approximately**
23:11, 69:13,
93:17
**april**
28:15, 36:20,
58:16, 93:16,
94:10, 96:4,
96:18, 99:22,
101:21, 102:10,
106:9, 106:14
**area**
42:8, 43:19,
99:18
**arguing**
37:1
**arizona**
123:7, 123:38
**arkansas**
18:11
**around**
29:17, 36:20,
36:24, 37:13,
39:11, 39:14,
39:15, 43:12,
45:24, 46:2,
106:10
**arranged**
88:20
**arrangement**
61:20
**arrested**
114:7
**arrival**
65:19
**arrived**
68:11
**articles**
13:9
**ascher**
6:18, 13:13,
13:24, 14:2,

28:16, 47:23,
49:14, 50:1,
55:21, 56:8,
58:24, 59:8,
75:5, 75:10,
75:16, 75:23,
76:6, 76:13,
78:11, 78:22,
79:6, 79:13,
81:10, 83:24,
89:20, 93:18,
95:22, 99:5,
99:18, 101:6,
102:10, 102:15,
103:15, 117:11

**ascher's**
58:17, 93:20,
96:17, 97:6,
98:16, 99:21

**ashland**
36:21, 59:19,
82:24, 83:9,
83:14, 87:13,
88:5

**ashley**
77:21

**asked**
9:21, 16:3,
24:10, 33:6,
33:8, 41:11,
47:7, 47:10,
47:14, 50:18,
60:23, 62:21,
70:6, 109:19,
116:18, 116:21

**asking**
9:2, 22:4,
67:13

**assert**
22:18

**asserting**
22:24

**asserts**
26:9

**assistant**
4:5, 5:15,
57:17

**assisted**
83:8

**associate's**
19:9, 22:1

**associated**
120:9

**assume**
8:18

**assumes**
63:14, 64:5,
64:11, 66:13,
74:1, 105:9,
114:12

**attended**
2:6

**attention**
23:7, 27:19

**attorney**
4:5, 5:15, 8:3,
11:15, 11:17,
11:18, 11:24,
12:2, 12:5,
12:8, 12:16,
12:23, 16:21,
27:23, 57:17,
71:7, 71:8,
121:17, 121:23,
123:20, 123:23

**attorney's**
17:1, 88:20

**attorneys**
17:5

**august**
66:1, 68:4,
68:10, 68:16,
69:19, 70:19,
89:10, 89:17,
89:21, 90:1,
90:8, 90:13,
90:17, 90:20,
91:15, 98:9

**avenue**
3:22, 36:21,
60:12

**aware**
77:23, 81:7,
88:13, 94:4,
94:17, 95:2,
95:11, 95:15,
99:10, 99:24

**away**
50:19, 50:21,
53:23, 70:4

**B**

**baby**
48:23

**bachelor's**
19:12

**back**
19:9, 31:9,
38:1, 38:8,
39:12, 39:17,
40:18, 41:5,
43:14, 43:21,
48:22, 52:11,
52:16, 52:17,
52:19, 52:21,
57:22, 63:18,
79:19, 87:13,
92:15, 99:17,
110:1, 110:10,
111:5, 111:9,
112:18

**bacon's**
20:17, 21:12

**bad**
35:22

**balsley**
4:14

**bank**
6:28, 62:12,
62:13, 63:3,
73:8, 73:15,
73:22, 74:7,
78:7, 80:2,
80:3, 80:6,
80:12, 80:13,
80:20, 80:21,
81:15, 89:3,
101:5, 102:3,
102:15, 116:17,
116:21, 117:3,
117:10

**barrel**
51:9

**barrick**
4:14

**barton**
15:3, 16:9,
100:20

**based**
20:12, 20:14

**basically**
20:18

**bates**
22:15, 26:22,
27:17, 35:13,
36:8, 65:9,
71:21, 72:16,
82:7, 87:23,
116:4, 117:23

**bath**
23:17, 46:1,
46:3, 46:4

**bathroom**
45:12

**battery**
65:19

**bear**
64:18

**beat**
69:3

**because**
8:20, 24:3,
25:1, 25:18,
33:21, 34:23,
38:22, 43:4,
44:11, 46:16,
46:21, 47:13,
48:11, 48:23,
49:8, 51:22,
52:4, 53:4,
53:16, 53:21,
54:10, 54:24,
56:4, 57:6,
66:11, 70:9,
70:24, 98:16

**bed**
45:12, 45:14,
45:16, 45:18,
46:5

**bedroom**
33:5, 45:13,
45:16, 47:6,
47:15

**been**
7:2, 8:7,
10:15, 10:21,
10:24, 56:21,
69:4, 69:9,
70:7, 70:9,
70:10, 70:12,
72:16, 77:12,
83:22, 89:2,
93:14, 96:20,
97:2, 97:13,
97:21, 98:8,
98:11, 98:23,
100:12, 113:7,
121:2

**before**
2:10, 8:7,
8:23, 9:2,
12:14, 12:21,
20:16, 22:17,
22:21, 26:9,
27:14, 27:22,
27:24, 28:2,
34:16, 36:12,
47:21, 48:7,
68:1, 72:22,
76:18, 85:18,
85:22, 90:14,
91:12, 107:9,
114:8

**beginning**
24:16, 26:21,
36:20, 68:23,
71:1

**behalf**
3:2, 3:10,
3:17, 4:3, 4:12,
5:3, 5:12,
25:24, 106:24,
107:20, 107:23

**behind**
30:23

**being**
28:13, 70:11,
72:11, 80:12,
85:3, 85:12,
88:9, 121:11

**believe**
12:17, 14:22,

**been**
19:20, 60:4

**bell**
81:1, 81:5,
81:8, 81:13,
105:19

**beretta**
81:17, 81:23,
82:13

**best**
8:16, 14:13,
60:21, 84:5,
84:12

**better**
8:16

**between**
33:13, 111:13

**bhave**
4:6, 121:22

**big**
23:8, 39:6

**bills**
36:23

**birth**
67:21, 67:23

**bishop**
100:16, 100:18

**bit**
26:8, 54:15,
54:23, 85:6

**black**
23:12

**block**
108:24

**boots**
23:12

**born**
17:8

**both**
109:21, 112:23,
118:2

**bothered**
47:11

**bottom**
25:7, 29:6,
30:1, 30:17,
32:6, 32:23,
36:16, 40:14,
44:16, 50:16,

**been**
86:14, 86:18,
88:2, 91:18,
116:12

**bought**
49:15

**bowman**
3:17, 15:4,
16:11

**box**
5:7

**boyfriend**
36:22

**brady@loevy**
3:8

**branch**
21:7

**brand**
49:16

**break**
9:17, 9:19,
9:21, 16:5,
29:9, 37:10,
37:15, 40:20,
55:11, 92:5

**breaking**
15:9, 15:13,
15:15

**brief**
110:19, 111:10,
112:5

**briefcase**
87:14

**briefly**
112:10, 119:10

**broke**
37:1, 85:6

**brought**
14:15, 96:13,
99:17

**brown**
76:24, 78:1,
78:4, 78:7,
78:10, 78:13,
78:19, 79:4,
79:10, 80:1,
80:6, 80:20,
105:13

**brown's**
79:18

**bruce**
100:22

**brush**
51:8, 51:13

**building**
57:23, 58:3,
58:7

**buildings**
38:7, 39:10,
39:14

**bullet**
72:5, 82:14

**bullets**
50:17, 51:6,
52:14

**burden**
15:22

**burger**
6:16, 19:20,
19:23, 20:1,
20:10, 24:10,
101:20, 102:16

**business**
19:10, 20:24,
22:3

**C**

**c-r-a-b-t-r-e-e**
7:14

**cabinet**
50:18

**call**
76:5, 114:3,
115:9, 116:2

**called**
20:12, 20:17,
69:16, 70:9,
118:9, 118:15,
118:18

**calls**
87:8, 94:8

**came**
38:8, 39:9,
43:19, 51:8,
69:14, 107:3

**can't**
22:7, 23:20,
48:2, 95:6,

110:4
**cannot**
9:24
**caption**
123:8
**car**
30:20, 30:23,
31:1, 31:5,
31:10, 31:13,
32:13, 37:23,
39:11, 39:20,
40:17, 40:18,
41:8, 41:9,
41:24, 55:22,
56:9, 74:14,
99:18
**care**
37:2, 41:11
**carol**
92:1
**carried**
96:19
**cars**
43:15, 43:17
**case**
1:6, 11:8,
11:11, 14:5,
14:9, 14:14,
14:18, 97:15,
97:22, 100:12,
101:11
**cases**
10:24, 11:3
**catch**
85:5
**caught**
42:18, 44:21,
47:22, 48:20
**cause**
123:12
**caused**
97:7, 114:3
**celebrity**
89:16
**certain**
114:9
**certified**
2:11, 123:5

**certify**
123:7, 123:19
**chamber**
49:17, 50:6
**change**
113:20
**changed**
112:16
**charged**
89:2
**charges**
98:1, 117:10
**charlene**
109:11
**check**
92:8
**chevy**
89:15
**chicago**
3:6, 3:14, 4:8,
7:24
**children**
17:14, 17:17,
18:2, 34:20,
35:6, 46:24,
48:23, 49:1,
49:3, 53:23,
54:4, 57:12,
99:4, 104:5
**children's**
17:22
**christine**
100:16, 100:17
**circumstances**
79:18, 88:13,
94:5, 94:18
**city**
1:7, 5:12,
5:13, 5:15,
14:16, 26:7,
61:13, 68:11,
85:17, 94:11,
109:9
**civil**
7:17, 10:15,
14:5, 14:9,
14:14, 14:18,
61:13, 61:17,

61:21, 108:14,
108:20
**claimed**
98:15
**claiming**
96:16
**clarify**
8:15, 95:14
**clean**
8:22, 26:10,
51:7, 51:18,
51:22
**cleaned**
51:7
**cleaning**
52:10
**clear**
70:24, 110:15
**clip**
49:17, 50:6,
52:15
**clipping**
21:15
**clothing**
96:18
**club**
69:17
**cocaine**
69:9, 69:12,
70:4
**codefendants**
26:3
**coerced**
58:22, 96:16,
98:17, 99:3,
99:6, 99:19,
101:14
**collect**
33:3
**com**
3:8, 4:20, 5:10
**combat**
23:12
**come**
26:8, 27:22,
41:5, 48:22,
51:12, 85:18,
85:23

**comes**
85:19
**coming**
60:19
**commit**
62:12
**committed**
63:8, 78:15
**committing**
80:2, 80:6,
80:20
**communication**
107:15, 107:18,
111:12, 111:17,
112:6
**communications**
107:13
**company**
20:11, 20:16
**complain**
104:22
**complaining**
36:22
**complaint**
14:4, 93:14,
94:1, 95:20,
96:3, 96:11,
99:15
**complete**
9:2, 9:24, 16:5
**complied**
54:5
**computer**
35:17
**computer-aided**
123:15
**concerning**
94:5, 94:18,
123:11
**concerns**
63:22
**concluded**
122:16
**conclusion**
87:8, 94:8
**conditions**
10:3, 10:7
**conducted**
1:15, 2:2

conducting
84:20
connection
95:21, 110:20
connor
3:12, 15:18,
62:20, 67:6,
67:10, 70:23,
71:9, 92:12,
95:14, 110:23,
111:2, 111:4,
121:17
consent
6:25, 87:11,
88:4
consequences
57:6
consisting
123:14
contact
119:22
contacted
106:23, 107:22
contend
101:13
continue
69:11
continued
4:1, 5:1, 39:8
continuing
29:5
contrary
120:11
controversy
123:11
conversation
12:8, 12:12,
12:15, 12:19,
12:22, 13:2,
48:12, 50:22,
58:6, 60:5,
60:6, 60:9,
60:14, 61:9,
107:17, 114:3
conversations
11:15, 11:20,
12:5, 61:16,
75:15, 75:21,

80:1, 80:18,
89:23, 108:12,
108:18, 108:23,
109:20, 110:2,
110:5, 110:8,
110:18, 110:20,
111:10
convicted
112:17
convictions
57:22
cooperation
79:19, 108:3
copy
27:5, 76:10,
83:4, 121:13,
121:16, 121:20,
121:24, 122:11,
122:13
corner
86:15, 86:19,
88:2, 91:18
coronavirus
7:20
corporate
20:14, 21:5,
21:9
correct
8:4, 18:14,
21:13, 21:23,
24:18, 25:13,
27:22, 30:13,
31:17, 31:21,
34:2, 34:7,
35:1, 35:7,
37:16, 46:11,
49:20, 51:18,
59:16, 60:17,
62:19, 63:9,
67:5, 67:22,
67:23, 68:17,
73:8, 73:16,
73:23, 74:8,
74:14, 83:15,
86:23, 87:6,
88:7, 110:22,
111:21, 112:7,
112:8, 112:24

corrections
111:24, 112:4
correspondence
111:16, 112:1,
112:23, 113:3
could
15:21, 26:7,
31:1, 37:2,
37:10, 39:6,
39:11, 70:23,
87:12, 95:8,
105:6, 108:15,
110:1, 110:23,
121:19
couldn't
41:6
counsel
22:18, 22:22,
26:5, 55:17,
111:5, 116:18,
123:20, 123:23
counter
73:2
country
52:12
county
88:10, 123:3
couple
19:24, 42:14,
43:10, 44:5,
51:9, 52:3,
55:16, 77:12,
86:3, 108:6,
115:3, 116:18
course
87:5
court
1:1, 8:20,
15:10, 15:12,
63:8, 85:19,
85:21, 85:24,
122:4
courtroom
8:13
covid
21:4
coyote
69:17

crabtree
1:14, 2:1,
3:10, 6:3, 7:1,
7:8, 7:13, 7:16,
7:22, 18:1,
22:16, 25:7,
26:24, 27:13,
31:16, 35:16,
36:13, 41:13,
53:10, 55:16,
56:19, 56:24,
57:12, 57:16,
57:21, 59:12,
59:21, 62:12,
62:24, 63:11,
63:19, 64:9,
64:21, 65:4,
65:8, 65:10,
65:12, 65:21,
66:17, 67:2,
67:18, 67:19,
68:1, 68:10,
69:19, 70:19,
71:23, 72:10,
74:4, 74:6,
74:18, 77:3,
77:4, 77:7,
77:9, 77:24,
79:24, 80:12,
80:19, 81:2,
81:15, 82:11,
82:17, 84:4,
86:4, 86:15,
86:19, 87:19,
88:1, 88:9,
89:19, 91:1,
91:11, 91:18,
91:20, 92:7,
92:16, 93:1,
94:12, 100:10,
102:23, 106:7,
108:10, 109:8,
112:11, 114:14,
115:3, 119:15,
121:9
crabtree's
71:7, 121:17
crack
69:9

crime
76:5, 104:23
crimes
101:15, 104:24
criminal
10:21, 10:24,
13:13, 97:24
crisis
7:20
crossed
38:2
csr
1:24, 123:33,
123:35, 123:37,
123:38
cst
1:18
culbertson
3:20
cunningham
52:13
curb
39:21
currently
7:22, 17:12,
19:14, 21:18,
62:6

**D**

dan
16:15
daniel
4:3, 17:18,
17:24, 18:4
dark
41:5
date
67:21, 67:23,
69:7, 72:19,
77:24, 88:15
dating
59:15
daughter
60:15, 94:13,
94:21, 95:3,
95:12, 107:18,
107:21, 109:23,
110:21

dave
15:3
david
4:13, 16:10,
93:4
dawn
70:3
day
23:19, 60:19,
61:10, 61:24,
83:5, 83:7,
83:15, 83:20,
85:11, 88:21,
123:28
days
48:19
deal
117:9
dealing
69:15
december
121:1
decide
113:21
decline
22:19
defendant
5:12, 10:19,
10:22, 11:1,
32:22, 96:14,
97:14, 97:22,
99:2
defendants
1:9, 3:17, 4:3,
4:12, 5:3,
14:20, 17:5,
26:22, 27:18,
34:12, 56:22,
71:2, 91:9,
91:19, 97:3,
99:16, 116:18,
121:23
defense
26:5, 55:17,
65:9, 66:24,
72:16, 82:7,
86:12, 86:13,
86:18, 87:24,

114:17, 117:23
definitely
15:13
degree
22:2
demand
104:2
deny
101:19, 102:2,
102:9
dep
12:9
department
17:2, 83:20,
84:7, 111:24,
112:4
depicted
72:19
depos
122:6
deposed
8:7
deposition
1:13, 2:1,
7:16, 7:21,
9:11, 11:14,
13:6, 14:6,
16:22, 26:3,
26:14, 26:18,
36:4, 65:5,
66:21, 71:18,
72:11, 72:12,
82:4, 86:9,
87:20, 91:6,
111:12, 115:13,
116:5, 117:19,
123:22
describe
14:12, 106:20
described
62:1, 111:11,
112:5
describing
48:4
description
6:15, 48:2,
53:4, 65:15
desire
106:1

details
69:1, 99:5
detective
24:4, 25:1,
25:19, 38:22,
40:7, 43:4,
44:11, 45:2,
46:16, 46:21,
49:8, 52:5,
53:4, 53:17,
53:22, 54:3,
54:24, 55:20,
65:24, 66:8,
68:4, 68:11,
68:16, 69:18,
70:18, 83:3,
84:6, 84:13,
88:19, 89:8,
89:9, 89:17,
93:6, 93:10,
96:12, 97:4,
99:16, 99:17,
116:16, 118:21
detective's
98:14
detectives
83:1, 83:8,
86:21, 116:20
development
20:24
different
20:15
difficulty
13:20, 16:1,
94:23
direct
23:7, 27:18
directly
107:14
disassemble
51:17
disciples
119:17, 119:22,
120:4, 120:9
discovered
51:6
discussed
11:16, 16:22

discussion
13:19, 15:24,
94:22, 111:3
dispatched
65:18
distraught
54:11
district
1:1, 1:2
division
68:11, 89:9
dixon
20:15
document
22:8, 22:11,
22:15, 22:17,
24:9, 25:12,
26:13, 26:21,
26:23, 27:12,
35:12, 35:13,
35:16, 35:21,
36:3, 36:8,
36:9, 36:19,
37:21, 64:19,
64:20, 66:16,
67:2, 67:11,
67:24, 68:9,
71:11, 71:13,
82:2, 86:4,
87:16, 88:2,
91:1, 91:12,
91:22, 92:1,
115:18, 116:3,
117:22, 117:24
documents
13:5, 13:12,
86:4
domestic
118:8, 121:3
done
14:24, 119:9,
120:18, 121:10
door
41:7
doug
15:4, 16:10,
100:24
down
24:8, 25:6,

28:11, 29:5,
29:16, 30:1,
30:17, 32:6,
34:11, 39:5,
39:8, 42:14,
43:10, 52:9,
68:22, 69:24,
70:15, 74:4,
82:10, 115:18
downtown
57:24, 58:3,
58:7
draft
90:19
drafted
90:14
dressed
46:1, 46:4
drive
3:13, 4:17,
31:15, 37:13,
40:8, 41:10,
41:11, 41:12
driver's
93:19
driveway
39:13, 39:15,
39:16
driving
37:23, 38:1,
39:5, 44:19,
99:20, 106:10
drove
38:4, 38:7,
39:17, 55:22,
56:9, 74:13
due
7:19, 21:3
duly
7:2
during
13:4, 14:2,
61:3, 69:11,
73:15, 74:14,
76:5, 80:1,
85:10, 87:5,
88:6, 112:23
dykema
3:11, 7:24

**E**

earlier
22:21, 54:15,
54:23, 69:2,
93:6, 112:5
early
28:17, 118:7
east
5:16, 37:13,
43:16
eddy
6:29, 17:24,
118:13, 118:16
either
10:18, 29:11,
109:23
ekedahl
4:13, 15:4,
16:10, 93:4
electronic
121:24, 122:15
electronically
121:20
else
8:5, 14:17,
33:12, 61:2,
61:3, 70:12,
114:17, 121:7
email
122:5
emailed
122:3
emergency
64:14
emotionally
98:13
employed
18:16, 20:21,
123:20, 123:24
employee
123:23
emptied
46:4
empty
39:6, 52:19
encourage
107:22

encouraged
116:15
end
24:16, 29:18,
85:17, 95:8,
113:22
ended
21:3
enough
39:12
enrolled
19:15
entire
44:19, 53:15,
58:16, 106:12
erica
17:18, 17:24,
18:6
estate
4:12, 25:24,
93:3
estimate
31:1
et
1:8
even
8:24, 16:13,
25:12, 45:15,
50:11
evening
28:18, 29:18,
58:16, 69:12,
87:6, 88:6,
106:12
event
93:22, 114:2
events
28:15, 106:14
ever
8:7, 10:15,
10:21, 22:16,
27:13, 44:6,
59:21, 63:11,
64:8, 67:24,
72:21, 74:21,
74:24, 75:3,
76:10, 78:3,
78:6, 78:10,

78:13, 78:19,
81:4, 84:5,
84:13, 89:23,
90:13, 91:11,
102:23, 103:6,
104:22, 105:4,
105:18, 105:24,
119:22, 120:3,
120:8, 121:2
**evera**
4:15
**every**
44:19
**everybody**
9:13, 15:21,
92:9
**everyone**
15:16
**everything**
8:21
**evidence**
63:14, 64:5,
64:11, 66:13,
74:1, 105:9,
114:12, 117:3
**exact**
69:6, 77:17
**examination**
6:1, 6:5, 7:6,
56:17, 92:23,
100:8, 108:8,
109:6, 109:16,
112:13, 115:1,
119:13, 120:22,
123:13
**examined**
7:4, 123:12
**exchange**
27:19, 28:7,
109:22, 110:21,
117:10
**exchanges**
111:10, 112:5
**exchanging**
110:7, 112:22,
113:11
**execute**
89:19

**executed**
90:1, 90:8,
90:20, 91:15
**executing**
87:11
**exhausted**
54:11
**exhibit**
22:5, 26:13,
26:14, 26:17,
26:18, 35:12,
36:2, 36:4,
36:7, 65:4,
65:5, 66:20,
66:21, 71:17,
71:18, 71:24,
72:11, 72:12,
74:5, 82:3,
82:4, 86:8,
86:9, 86:17,
87:19, 87:20,
91:5, 91:6,
91:17, 115:6,
115:9, 115:13,
116:3, 116:5,
117:17, 117:19,
118:12
**exhibits**
6:13, 122:1,
122:2, 122:6
**experienced**
118:8
**experiencing**
15:10
**explained**
54:18, 98:11
**explorer**
93:19
**extract**
117:4

**F**
**fabricating**
99:7, 99:19
**face**
123:9
**face-to-face**
11:19

**fact**
34:6, 35:5,
40:7, 41:17,
44:5, 45:2,
49:7, 50:11,
53:15, 64:1,
72:7, 73:21,
83:13, 88:4,
103:20
**facts**
63:14, 64:5,
64:11, 66:13,
74:1, 94:4,
94:17, 98:19,
99:10, 99:24,
105:9, 114:12,
123:7
**fallen**
70:15
**false**
32:17, 55:22,
56:10, 59:8,
97:5, 97:23,
97:24, 98:14,
117:4
**falsely**
96:16
**familiar**
16:13, 16:18,
16:19, 93:8
**familiarize**
27:12
**family**
106:12, 113:12
**fast**
42:9
**february**
49:15, 64:15,
66:3, 66:10,
69:6, 72:5
**fed**
99:4
**federal**
7:17
**feed**
15:22
**feel**
46:22, 56:4,

106:21
**fell**
52:20
**felt**
25:19
**few**
20:19, 21:16,
33:1, 33:2,
39:6, 48:19,
92:7, 93:1,
109:20
**fields**
39:6
**figured**
23:21, 37:24,
42:9, 52:18
**filed**
61:13, 93:15
**final**
24:8, 51:3
**financial**
61:19, 62:7,
62:10
**financially**
123:24
**find**
29:9, 30:6,
37:11
**finding**
57:12
**finish**
9:13, 9:20
**finished**
46:3, 52:10
**firearm**
72:4, 81:18,
81:24, 82:14,
83:9, 83:21,
83:22
**firearm's**
72:2
**firearms**
6:21, 6:23,
83:13
**fired**
52:15
**firm**
7:24, 108:13,

108:19, 108:24

**first**
7:2, 19:17,
31:6, 36:18,
36:19, 51:4,
59:12, 62:13,
63:3, 65:11,
65:17, 68:23,
71:23, 72:19,
73:8, 73:22,
74:7, 78:7,
80:3, 80:6,
80:13, 80:21,
81:15, 89:3,
100:16, 102:3,
115:5, 116:17,
116:21

**fists**
70:14

**five**
20:17, 60:24,
61:3

**five-minute**
55:11

**five-page**
115:18

**flip**
8:17, 27:8,
27:16, 34:11,
35:19, 116:10,
118:2

**flipping**
29:8, 30:21,
32:21, 45:8

**floor**
4:7, 5:6

**floorboard**
31:14, 41:9

**folks**
17:6, 101:11

**follow**
39:8, 109:18

**follow-up**
108:11, 120:19

**follow-ups**
108:6, 115:4

**followed**
38:13, 85:4,

85:13

**following**
65:21

**follows**
7:4, 70:1

**foregoing**
123:14

**formally**
22:24

**forrester**
4:13, 15:2,
15:7, 16:9,
16:12, 16:18,
16:19, 24:4,
25:1, 25:20,
26:1, 38:23,
40:8, 43:5,
44:11, 45:3,
46:16, 46:22,
49:8, 52:5,
53:5, 53:17,
53:22, 54:3,
54:24, 55:20,
66:1, 66:9,
68:4, 68:16,
69:18, 70:18,
84:14, 86:21,
88:19, 89:9,
89:17, 93:4,
93:10, 96:12,
97:5, 99:3,
99:16, 116:16,
116:20

**forrester's**
93:7

**forth**
112:19

**forward**
23:1, 52:17,
52:20, 71:11

**found**
34:19, 50:17,
111:20

**foundation**
63:14, 64:5,
64:11, 66:13,
67:7, 68:6,
68:18, 69:21,

70:21, 73:4,
73:10, 73:18,
74:1, 74:10,
75:11, 75:17,
75:24, 76:7,
76:14, 76:21,
78:16, 78:23,
79:7, 79:14,
79:21, 80:8,
80:15, 80:22,
81:20, 84:9,
84:16, 84:23,
87:1, 87:8,
88:16, 88:23,
89:12, 90:3,
90:10, 94:7,
99:12, 100:3,
101:7, 101:16,
101:22, 102:5,
103:3, 103:10,
103:16, 105:9,
106:4, 110:12,
114:12, 117:14,
119:18, 119:24,
120:5, 120:12

**four**
23:8

**four-page**
35:13, 116:3

**four-year-old**
94:13

**fourth**
28:11

**frame**
104:12

**friday**
28:15, 28:17,
36:20, 46:6,
48:1

**friend**
33:14, 47:9,
107:21

**front**
27:5, 65:11,
66:16, 71:14,
86:5, 87:17,
91:2, 93:22

**full**
8:23, 17:22,

45:9, 68:23,
70:1

**fuller**
21:21, 21:22

**fully**
85:18

**further**
61:9, 100:6,
112:9, 123:19,
123:22

**G**

**gallardo**
3:18

**gang**
119:17, 119:22

**gangster**
119:16, 119:22,
120:4, 120:9

**garbled**
95:6, 95:7

**gary**
4:13, 15:3,
16:10, 93:4

**gather**
92:8

**gave**
13:17, 13:18,
13:24, 14:2,
27:3, 48:2,
53:15, 53:21,
54:5, 54:10,
102:14, 102:18,
111:8, 119:23

**genens**
3:18, 15:3,
16:9

**general**
4:5

**general's**
121:23

**generally**
15:14, 95:16,
95:18, 110:6

**george**
93:21

**getaway**
74:14

**getting**
85:22, 102:24,
113:12
**getty**
109:11
**girl**
47:14
**girlfriend**
93:20
**give**
8:11, 17:16,
22:6, 100:13,
105:12, 105:19,
116:15
**given**
103:14, 103:20,
114:10, 116:15,
123:16
**giving**
23:4, 58:23,
118:4
**global**
20:22
**go**
8:9, 9:14,
19:4, 29:7,
32:6, 35:23,
38:1, 40:21,
41:3, 41:18,
43:14, 43:23,
46:23, 87:13,
114:3
**goes**
77:1
**going**
8:10, 8:17,
9:1, 14:23,
22:5, 22:22,
23:1, 23:14,
26:16, 27:4,
27:8, 27:16,
28:2, 28:14,
29:9, 35:11,
35:19, 38:10,
40:14, 40:15,
43:13, 43:14,
43:15, 55:9,
55:17, 64:14,

64:18, 65:3,
67:6, 71:4,
71:9, 71:11,
72:10, 82:3,
86:3, 86:8,
87:18, 89:8,
91:17, 100:13,
113:7, 113:22,
115:6, 115:9,
115:17, 116:10,
117:17, 118:2,
122:3
**gone**
23:15, 30:24
**good**
7:8, 100:10
**good-bye**
107:16
**gossett**
3:11
**graduate**
18:18, 18:23
**graduated**
19:16
**grand**
6:17, 27:3,
27:14, 28:2,
28:7, 32:7,
54:16, 54:17,
54:22, 55:6,
56:7, 59:7
**grant**
60:12, 88:4
**gray**
73:14, 73:16,
73:22
**great**
121:20
**greg**
3:18
**ground**
8:9
**grow**
17:10
**guess**
13:5, 20:18,
109:20
**guilty**
11:9, 11:12,

62:18, 63:3,
63:7, 111:20
**gun**
30:3, 30:6,
30:8, 31:7,
32:1, 32:9,
32:12, 32:15,
42:1, 42:7,
42:17, 43:22,
44:18, 44:20,
49:14, 49:15,
50:1, 51:6,
51:7, 51:12,
51:17, 51:23,
52:11, 52:12,
52:13, 52:15,
52:16, 52:17,
52:18, 52:21,
69:3, 69:4,
72:5, 82:14,
96:19, 102:24,
103:7
**gunnell**
4:3, 16:15
**gunshots**
40:21, 41:3

**H**

**h-o-u-d-e**
96:15
**half**
31:2
**hand**
32:14, 42:1,
42:7, 44:18,
123:28
**handful**
100:11
**handled**
122:3
**handwriting**
91:22, 115:24
**hanging**
104:9
**hanson**
3:18
**happen**
40:22

**happened**
30:19, 31:8,
41:11, 44:6,
48:1, 48:12,
48:18, 48:19,
48:21, 50:19,
50:22, 61:7,
66:4, 66:10,
68:15, 69:5,
93:22
**harlem**
19:1
**harrison**
29:19, 37:24,
38:3, 38:9,
38:10, 38:12,
39:18, 43:15,
43:16
**head**
9:7
**hear**
16:4, 31:4,
32:1, 95:7
**heard**
31:6, 31:7,
40:21, 41:2,
42:7, 43:17,
47:22
**hearing**
63:18
**held**
49:16
**hello**
107:16
**help**
37:12, 90:19,
118:9
**here**
15:19, 27:11,
27:19, 27:22,
28:12, 30:18,
32:24, 37:22,
42:15, 43:11,
44:17, 47:5,
49:13, 50:16,
52:10, 57:1,
69:24, 72:19,
93:11, 106:13,

121:11
**here's**
87:16
**hereby**
123:7
**herein**
7:2
**hereto**
123:8, 123:24
**hereunto**
123:27
**hi**
56:19
**high**
18:18, 18:23,
19:1, 19:4,
19:16, 19:18,
20:5, 20:6, 20:7
**highlighted**
27:20, 28:12
**himself**
71:7
**hinshaw**
3:20
**hit**
64:8
**hitting**
70:14
**home**
28:17, 28:20,
38:1, 43:23,
46:23, 52:21,
58:16, 70:2,
96:5, 106:11
**homicide**
14:1, 75:16,
76:13, 78:11,
89:20, 101:6
**hope**
85:19
**hospital**
64:15, 65:18,
66:3
**houde**
3:18, 15:3,
16:9, 96:15
**hour**
23:15

**hours**
68:10, 69:12,
88:6, 97:15,
98:12
**house**
29:9, 36:21,
37:10, 37:14,
40:19, 45:11,
48:8, 61:24,
107:4, 109:23
**houses**
41:18
**howard**
4:12, 15:2,
16:8, 16:18,
16:19, 25:24,
68:4, 84:14,
93:3
**human**
19:12
**huotari**
5:5, 6:9,
15:20, 55:9,
55:13, 92:21,
100:9, 100:11,
101:9, 101:18,
102:1, 102:8,
102:13, 102:22,
103:5, 103:12,
103:18, 104:1,
104:8, 104:21,
105:3, 105:11,
105:17, 105:23,
106:6, 106:17,
108:2, 112:10,
112:11, 112:14,
112:21, 113:17,
114:1, 114:14,
114:21, 119:10,
119:11, 119:14,
119:20, 120:2,
120:7, 120:14,
121:19, 122:2
**huotari's**
109:19
**hurt**
33:22, 34:7,
118:16

**hurting**
118:19

**I**

**idea**
16:16
**identification**
26:15, 26:19,
36:5, 65:6,
66:22, 71:19,
72:13, 82:5,
86:10, 87:21,
91:7, 96:13,
115:14, 116:6,
117:20
**identified**
73:1, 83:21
**identify**
105:5
**ifeanyi**
5:14, 26:6,
85:16, 109:8,
122:12
**il**
3:6, 3:14,
3:23, 4:8, 4:10,
4:18, 5:8, 5:17
**illinois**
1:2, 2:13,
17:9, 17:11,
18:5, 18:9,
18:13, 59:19,
62:14, 78:8,
80:3, 80:7,
80:14, 93:23,
123:1, 123:6,
123:35
**immunity**
28:1, 28:6
**implicated**
104:23
**implicating**
54:6, 58:24,
59:7, 97:6,
99:7, 103:15,
103:21
**important**
9:6

**in-person**
60:5, 60:8
**incarcerated**
111:15, 111:21,
112:17, 112:24,
113:5
**incarceration**
113:2
**incident**
6:19, 6:20,
34:14, 69:1,
69:5, 94:2
**incidents**
110:7
**include**
43:5, 44:12,
45:3, 46:23,
97:14
**included**
24:23, 46:15,
49:7, 52:3, 53:3
**including**
97:3, 99:2,
99:16
**index**
6:1, 6:13
**indicate**
106:11
**indicated**
106:9
**indictment**
98:2
**individual**
109:10
**informant**
104:23
**informants**
105:5
**information**
20:17, 21:12,
44:10, 45:3,
46:15, 46:23,
75:4, 75:8,
76:4, 78:14,
78:20, 79:4,
81:7, 105:13,
105:19
**initial**
26:4

initials
24:15
initiate
97:24
inside
61:8
instead
52:16
instructs
9:12
interaction
100:17
interested
123:25
interests
120:11
interject
70:24
interrogated
97:15, 98:11,
101:11
interrogation
101:5
intersection
29:19
interview
68:12, 69:2
intimidated
98:16, 99:3
introduced
122:7
investigation
14:2, 100:15,
104:17
involved
80:12, 98:15,
101:4
involvement
75:10, 75:22,
76:12, 78:21,
79:5, 79:12,
81:10
iowa
123:6, 123:37
island
123:3
isp
121:22

itself
27:12

**J**

jack
4:4, 16:14
jail
88:10, 88:14,
88:21, 113:8
james
15:2, 15:4,
16:9, 16:11
jeans
23:13
jeff
3:18, 15:3,
16:9
jenner
36:8, 108:24
jhuotari@wilmac
5:10
jill
33:4
jill's
33:15, 47:10
jim
3:17, 100:20
job
1:22, 19:17,
20:1
jobs
20:4, 20:9,
21:16
joel
5:5, 15:20,
100:11, 112:11,
119:11, 121:21
john
3:18, 15:3,
16:9
join
71:2, 71:4,
71:9
joining
26:4
judge
27:24
july
21:3, 88:10

jumping
29:16, 52:9
june
27:4, 35:15,
58:23, 59:6,
76:19, 82:19,
82:24, 84:4,
84:13, 84:19,
85:10, 86:22,
87:14, 88:6,
99:1, 115:17,
116:22
jury
6:17, 27:3,
27:14, 28:3,
28:7, 32:7,
54:16, 54:17,
54:22, 55:6,
56:8, 59:7

**K**

keep
9:6, 40:16,
70:24
kept
37:23, 41:4,
43:13, 48:19
kevin
3:12, 8:2,
62:20, 108:5
kicked
70:16
kill
42:18, 42:19,
43:21, 48:22,
49:3, 50:1,
59:22, 106:1
killed
34:20, 35:6,
47:23, 55:21,
56:8, 93:18,
99:19, 99:22
killing
49:1
kind
15:15, 23:8,
30:7, 95:7
king
6:16, 19:20,

19:23, 20:1,
20:10, 24:10,
101:20, 102:16
knew
33:6, 33:8,
47:7, 48:3,
70:8, 97:22
know
8:24, 9:19,
14:17, 14:20,
15:1, 15:5,
16:13, 22:7,
27:10, 29:18,
30:4, 33:1,
34:19, 48:9,
50:5, 51:22,
60:18, 60:24,
70:24, 71:1,
74:18, 76:17,
76:24, 77:15,
77:17, 77:19,
79:10, 81:1,
84:19, 88:19,
90:16, 91:24,
93:13, 99:6,
108:17, 109:10,
119:15
knowledge
75:7, 75:14,
75:20, 76:3,
79:3, 79:12,
79:17, 80:5,
80:11, 81:9,
84:5, 84:12,
93:24, 94:14,
95:23, 96:7,
96:21, 97:8,
97:18, 98:3,
98:18, 99:9,
99:23
known
104:10, 105:13
konni
1:24, 2:10,
123:5, 123:33

**L**

label
117:23

labeled
22:15, 26:22,
27:18, 35:14,
36:8, 116:4
lack
67:7
laid
45:14
lane
38:2, 38:4
language
90:7
large
23:20, 39:9
last
12:19, 16:3,
17:20, 20:11,
47:8, 60:2,
62:9, 77:10,
91:17, 106:18,
106:24, 107:6
lasted
12:12, 13:2
latee
77:1, 105:13
later
23:18, 30:6,
83:19
law
7:24, 108:12,
108:19, 108:24
lawsuit
7:10, 10:16,
10:22, 14:15,
56:22, 61:13,
61:17, 61:21,
93:14, 93:16,
108:14, 108:20
lawyer
9:10, 9:12,
93:3, 107:21
lawyers
9:11, 108:12,
108:19, 108:23
lead
88:14
learned
103:14

learning
85:3, 85:12
least
83:9
leave
28:20, 48:7
leaving
85:2, 85:11
left
23:14, 23:22,
29:7, 34:17,
38:6, 38:9,
38:11, 38:12,
39:19, 41:18,
43:12, 43:14,
47:15, 47:21,
48:8, 52:14,
69:13, 70:17
left-hand
38:4
legal
87:8, 94:8
lester
76:24, 77:24,
78:3, 78:7,
78:10, 78:13,
78:19, 79:4,
79:10, 79:18,
80:1, 80:5,
80:20, 105:13
let's
35:23, 110:9,
121:1
letter
6:27, 115:16,
115:22
letters
113:10, 114:6
license
123:35, 123:37
lie
58:14, 58:21,
59:5, 102:18
lied
58:11, 66:2,
66:9
life
120:24

lights
30:20, 39:21,
43:16
likewise
9:1
limit
71:10
limited
97:4
line
28:12, 29:16,
47:5, 51:4,
52:9, 71:10
lines
42:15, 43:11,
50:16
link
122:6
list
14:23, 16:4,
16:5, 16:8
listed
65:20
lists
65:12
little
26:8, 38:5,
38:7, 52:19,
54:15, 54:23,
85:6
live
18:2, 18:4,
18:10, 18:12,
18:14, 21:17,
21:20, 57:12,
77:13
lived
59:18, 94:12
lives
77:16, 77:19
llp
3:20, 4:15, 5:4
load
52:17
located
7:23
locating
83:8

location
39:22, 105:20
locations
20:15, 38:23,
40:9, 105:6
loevy
3:3
long
4:14, 12:11,
12:18, 13:2,
19:22, 21:9,
30:24
look
24:8, 27:9,
28:10, 35:20,
36:18, 37:14,
39:4, 116:11,
118:3
looked
43:18, 46:7,
54:15, 54:23
looking
23:9, 60:15
looks
115:16, 116:14
lot
48:1, 92:6
loud
9:8
louise
67:2, 67:18,
67:19
loves
17:11, 19:2
lovey
108:13, 108:19
lyle
118:13, 118:15

**M**

ma'am
9:4
machesney
19:3, 19:21,
19:23
mad
42:17
made
24:3, 46:22,

47:21, 56:4,
94:1, 114:8,
123:17
**mail**
111:16, 112:1,
113:2
**maim**
104:10
**make**
16:6, 26:1,
39:11, 92:4,
102:24, 103:7
**man**
74:18, 74:21,
76:24, 77:24,
78:3, 78:6,
81:1, 81:12
**management**
19:10, 22:3
**manager**
21:1, 21:7
**many**
10:24, 11:17
**marcus**
17:18, 17:24,
18:8, 48:23
**marijuana**
69:15
**mark**
3:19, 15:4,
16:10, 26:13,
26:17, 65:3,
66:19, 71:17,
84:6, 87:18,
91:4
**marked**
26:14, 26:18,
36:4, 65:5,
66:21, 71:18,
72:11, 72:12,
82:4, 86:9,
87:20, 91:6,
115:13, 116:5,
117:19
**married**
17:12, 113:12,
113:13
**marry**
113:18, 113:19

**marvin**
74:19, 74:21,
75:1, 75:3,
75:8, 75:15,
75:21, 76:4,
76:11, 76:17,
104:9, 104:12,
104:18, 105:14,
105:20
**matter**
33:18, 47:12,
47:13, 64:1
**matters**
123:11
**mattress**
52:22
**maybe**
11:2, 12:22,
85:17, 92:5,
107:8
**mccarthy**
5:4
**mcdonald's**
38:5
**mckenzie**
17:19, 18:1,
18:12, 92:2
**mean**
50:20, 95:15
**meaning**
27:23, 63:3,
65:20
**meant**
113:21
**media**
13:9
**median**
42:16
**medications**
10:10
**meet**
59:12, 69:17,
96:14
**meeting**
81:4, 89:9
**meetings**
12:4, 13:4
**member**
119:16

**members**
119:21
**memorial**
64:15, 65:18,
66:3
**memory**
10:8, 10:11
**mention**
38:23
**mentioned**
22:1
**mess**
44:20
**met**
11:18, 11:23,
65:20, 74:21,
78:3, 84:5,
84:13
**michael**
3:21, 21:21,
24:21, 56:19,
85:5, 108:5,
108:15, 115:11
**michigan**
18:7
**middle**
82:9
**might**
9:11, 10:3,
15:22, 57:7,
92:4
**millimeter**
30:8, 41:24,
49:16, 72:4,
72:8, 81:18,
81:23, 82:13,
83:21, 96:19
**mind**
55:10
**minute**
31:2, 41:6,
92:5
**minutes**
12:13, 12:20,
13:3, 31:3,
33:3, 40:21,
60:24, 61:4,
92:7

**miranda**
6:24, 86:22
**missing**
50:18, 51:6
**mixed**
48:24
**mogbana**
5:14, 6:10,
26:6, 85:16,
109:7, 109:13,
122:12
**moment**
110:24
**monday**
12:17
**money**
23:21, 36:23,
37:11, 46:6,
69:14, 70:5,
70:17
**months**
77:12, 109:20
**more**
24:11, 33:1,
33:3, 43:10,
55:16, 56:14,
69:10, 86:3,
92:6, 92:17,
95:8, 97:15,
98:12, 117:17
**morning**
7:8, 23:10,
23:22, 45:24,
70:3
**most**
12:7, 12:15,
20:20
**motel**
70:13
**much**
26:10, 34:23,
48:10, 108:2,
111:4, 121:10
**murder**
6:18, 13:13,
48:6, 58:17,
59:1, 59:8,
75:5, 75:10,

75:23, 76:6,
78:15, 78:22,
79:6, 79:13,
81:10, 83:23,
96:17, 97:6,
98:16, 99:5,
99:8, 99:21,
102:15, 103:15,
103:22, 104:13,
117:5, 117:12

**must**
41:4, 42:9

**N**

**name**
7:8, 7:11,
15:7, 16:12,
16:19, 16:20,
17:20, 56:19,
65:12, 67:1,
67:5, 67:9,
67:13, 67:17,
67:19, 81:5,
93:2, 93:7,
93:8, 100:10,
100:16, 109:8,
118:13

**named**
7:10, 56:21,
57:17, 74:19,
74:21, 76:24,
77:4, 77:6,
77:8, 77:24,
78:3, 78:6,
81:1, 81:13,
84:6, 84:13,
92:1, 109:10,
123:9

**names**
14:24, 16:4,
17:16, 17:23,
100:13

**narrative**
65:16

**near**
29:19

**need**
8:11, 8:12,

9:8, 9:18, 9:19,
33:2, 94:24,
121:13

**neighborhood**
38:6, 38:8

**neighborhoods**
37:13

**neither**
123:19

**nervous**
48:18

**never**
31:21, 35:5,
41:17, 42:22,
43:24, 48:12,
49:2, 50:22,
54:4, 113:13,
118:18

**new**
55:10

**news**
34:14, 47:22,
47:23, 48:5

**newspaper**
13:8

**next**
9:3, 12:15,
28:10, 29:8,
30:5, 30:21,
33:7, 37:9,
39:4, 40:15,
41:2, 41:23,
42:6, 45:8,
45:23, 47:20,
48:17, 48:18,
49:13, 70:3,
86:17, 93:21

**nickname**
77:1

**night**
28:15, 28:16,
28:17, 36:20,
36:24, 41:18,
46:6, 47:8,
48:1, 58:17,
96:4, 96:17,
99:21, 106:12

**nodding**
9:7

**none**
31:16, 52:23,
101:4, 114:20

**north**
62:14, 63:4,
73:8, 73:22,
74:7, 78:7,
80:3, 80:7,
80:13, 80:21,
81:16, 89:3,
102:3, 116:17,
116:21

**northern**
1:2

**notary**
91:24

**notes**
92:8

**nothing**
7:3, 24:11,
31:6, 38:16,
40:2, 44:5,
53:10, 112:9,
114:21, 123:10

**november**
118:5

**number**
6:15, 88:6,
112:18

**nyjah**
17:18, 18:1,
18:10, 60:16,
60:19, 60:24,
61:6, 94:21,
95:3, 95:4,
95:12, 107:3,
107:11, 110:8

**O**

**oath**
8:11, 123:13

**object**
9:11, 24:20,
25:3, 25:15,
25:21, 29:2,
29:13, 29:22,
30:14, 31:18,
31:22, 32:3,

32:18, 34:3,
34:8, 35:2,
35:8, 37:6,
37:17, 38:18,
39:1, 40:4,
40:11, 40:23,
42:3, 42:11,
42:24, 43:7,
44:2, 44:7,
44:13, 44:23,
45:5, 45:20,
46:12, 46:18,
47:1, 47:17,
48:14, 49:4,
49:10, 49:21,
50:2, 50:8,
50:13, 50:24,
51:14, 51:19,
51:24, 52:6,
52:24, 53:7,
53:12, 53:18,
53:24, 54:7,
54:12, 55:2,
55:24, 56:11,
58:18, 67:6,
117:6, 117:13,
119:1, 119:6

**objection**
24:5, 26:4,
26:8, 57:2,
57:8, 57:13,
59:2, 59:9,
59:23, 62:15,
62:21, 63:13,
64:4, 64:10,
66:5, 66:12,
68:5, 68:18,
69:20, 70:20,
73:3, 73:9,
73:17, 73:24,
74:9, 74:15,
75:11, 75:17,
75:24, 76:7,
76:14, 76:20,
78:16, 78:23,
79:7, 79:14,
79:20, 80:8,

80:15, 80:22,
81:19, 82:20,
83:10, 83:16,
84:1, 84:8,
84:15, 84:22,
85:14, 85:19,
86:24, 87:7,
88:16, 88:22,
89:5, 89:11,
90:2, 90:9,
94:7, 95:5,
95:13, 95:24,
96:8, 96:23,
97:10, 98:5,
98:20, 99:11,
100:2, 101:7,
101:16, 101:22,
102:5, 102:11,
102:20, 103:2,
103:9, 103:16,
103:23, 104:6,
104:19, 105:1,
105:8, 105:15,
105:21, 106:3,
106:15, 110:11,
112:20, 113:15,
113:23, 114:11,
116:23, 119:18,
119:24, 120:5,
120:12
**objections**
9:14, 71:3,
71:5, 71:10,
71:11, 85:23,
123:17
**obtained**
97:23
**obviously**
113:13
**offense**
62:18, 63:3,
63:7
**offer**
28:6
**office**
17:1, 27:23,
27:24, 28:1,
57:23, 58:2,

88:20, 121:23
**officer**
65:20, 96:15
**officers**
53:16, 56:21,
65:17, 82:18,
84:20, 85:4,
85:13, 87:12,
96:16, 97:14,
97:22, 99:2,
100:12, 101:4,
101:14
**okay**
7:15, 8:18,
9:16, 9:22,
10:18, 12:14,
12:21, 13:1,
14:12, 16:17,
16:21, 18:2,
18:4, 18:18,
19:11, 20:20,
21:17, 22:4,
22:14, 23:4,
28:24, 35:11,
36:15, 37:5,
38:21, 49:24,
55:5, 56:13,
56:23, 64:23,
92:9, 92:13,
93:9, 100:15,
106:18, 107:10,
114:22, 119:8,
120:14
**old**
94:12
**once**
118:12
**one**
8:14, 9:10,
9:12, 9:18,
11:2, 11:5,
13:22, 14:5,
23:9, 26:4,
39:13, 49:17,
50:6, 70:14,
83:9, 93:15,
95:8, 106:19,
107:23, 109:9,

109:20, 109:21,
117:17, 121:18,
122:15
**one-page**
22:15
**ongoing**
7:19
**only**
38:10, 43:3,
52:4, 52:14,
107:18, 112:1
**open-ended**
106:19
**opened**
41:7
**order**
8:21, 46:23,
102:24
**other**
9:11, 10:13,
16:21, 20:4,
20:9, 21:21,
26:3, 26:5,
49:1, 106:11,
107:23, 109:13,
110:2, 111:12,
119:9
**others**
105:5
**otherwise**
13:5, 62:4
**out**
20:12, 20:14,
30:6, 30:22,
31:5, 34:20,
37:12, 38:8,
39:16, 39:17,
39:23, 40:8,
40:18, 42:8,
43:18, 45:16,
52:12, 52:20,
57:12, 85:18,
104:9, 104:13,
104:18
**outcome**
11:7, 11:10
**outside**
60:10, 61:24,

84:21
**over**
8:9, 11:20,
15:19, 39:20,
42:16, 55:18
**owen**
81:1, 81:5,
81:8, 81:13,
105:19
**own**
13:16, 13:23,
40:10, 61:1
**owned**
72:7, 89:16

---
**P**
---

**page**
6:5, 6:15,
26:21, 27:17,
28:10, 28:11,
29:6, 29:8,
30:5, 30:18,
30:21, 32:7,
32:21, 33:7,
34:11, 34:13,
36:18, 37:20,
40:15, 44:17,
45:8, 45:9,
47:4, 51:3,
65:11, 65:13,
65:17, 68:22,
69:24, 71:23,
72:19, 82:9,
86:15, 86:17,
91:17
**pages**
1:23, 27:5,
27:9, 35:20,
115:20, 116:10,
118:2, 123:15
**pair**
23:13
**pants**
46:5
**paper**
27:5, 51:10
**paragraph**
23:8, 24:9,

36:19, 37:9,
37:21, 38:16,
39:4, 39:24,
40:2, 41:2,
41:23, 45:10,
45:23, 47:20,
48:17, 50:17,
68:23, 70:1
**paragraphs**
23:9
**parents**
63:17, 63:21
**park**
3:22, 17:11,
19:2, 19:3,
19:21, 19:23
**parking**
48:1
**parrot**
71:3
**part**
34:23, 48:11,
52:16
**particular**
114:2
**parties**
2:6, 7:20,
123:21, 123:24
**parts**
51:10
**party**
10:15
**passed**
39:18
**passenger**
30:22, 31:14,
41:7, 41:9,
93:22
**past**
38:5, 106:8
**pause**
26:7
**pay**
36:23
**pdf**
121:24
**pending**
9:18

**people**
15:1, 15:5,
106:2
**periods**
111:14
**perjury**
11:6, 11:10,
57:21
**person**
73:1, 92:1,
118:13, 119:5
**personal**
93:24, 94:14,
95:22, 96:6,
96:21, 97:8,
97:18, 98:3,
98:18, 99:9,
99:23
**personally**
17:4, 43:24,
49:24
**pete**
16:14
**peter**
4:3
**phone**
11:21, 33:4,
47:6, 62:3
**phonetic**
104:10
**photo**
73:15
**photograph**
72:18, 72:21,
73:1
**photographs**
6:22, 72:15
**photos**
74:5, 74:7
**physical**
118:23
**physically**
63:12
**picking**
42:15, 43:11,
107:11, 107:17
**picture**
104:14, 104:18

**piece**
112:15
**pirages**
15:2, 16:8,
101:2
**place**
60:7, 60:9,
63:4
**placed**
68:12
**places**
18:3
**plaintiff**
1:5, 3:2, 7:9,
10:18
**plan**
104:12, 113:20
**planet**
122:6
**plead**
62:18, 63:2
**pleaded**
11:9, 11:12
**pleading**
63:7
**please**
7:11, 8:15,
17:17, 17:23,
63:1, 108:1,
111:6, 122:15
**pllc**
3:11
**pobjecky**
3:19
**pockets**
46:5
**point**
13:11, 32:10,
44:20, 55:5,
70:14, 71:5,
98:24, 107:22,
111:16, 113:18,
114:18
**pointed**
39:16, 39:23,
42:17, 43:22,
69:3
**police**
17:1, 43:17,

45:14, 48:20,
56:21, 58:22,
65:16, 66:2,
66:9, 73:13,
75:4, 75:9,
76:5, 76:11,
76:18, 76:19,
78:20, 79:4,
79:11, 79:19,
81:8, 82:18,
83:1, 83:20,
84:7, 84:20,
85:4, 85:13,
87:12, 96:14,
98:24, 99:1,
99:18, 100:11,
102:14, 102:18,
103:14, 103:21,
104:16, 114:10,
118:5, 118:9,
118:15, 118:18
**position**
120:10
**posts**
13:9
**pottinger**
4:16, 6:8,
15:9, 15:14,
25:23, 25:24,
92:20, 92:24,
93:2, 94:9,
95:1, 95:10,
95:17, 96:2,
96:10, 97:1,
97:12, 98:7,
98:22, 99:14,
100:5, 109:17,
110:14, 110:24,
111:1, 111:7,
112:9, 114:18,
120:19, 120:23,
121:5, 122:10,
122:11
**pregnant**
98:12
**prepare**
11:13, 13:6,
90:16

presence
106:2
pressured
56:4
previously
15:8, 72:24,
73:13, 99:6,
111:11
prior
12:24, 20:13,
26:2, 84:4,
84:12, 90:13,
98:10, 107:6,
109:21, 110:1,
110:6, 113:6,
120:24
prison
57:20, 58:4,
58:8, 113:10
probably
13:3, 31:2,
69:14, 107:8
problem
48:24
problems
85:20, 85:22,
86:1
procedure
7:18
proceeding
7:21, 122:16
proceeds
81:16
professional
2:12, 123:34
property
37:11
prosecutor
55:6
provide
9:24, 10:4,
62:6, 90:6
provided
62:10, 75:4,
75:8, 76:4,
76:11, 76:17,
78:20, 79:4,
79:11, 81:8

public
91:24
pull
39:13, 64:19
pulled
39:20, 52:19,
60:24, 61:6,
64:21, 69:4,
71:13
pulling
82:2
pullover
23:13
purchase
81:17, 81:23,
82:13
purchased
72:4
purpose
60:13
pursley's
13:13, 14:5,
57:18, 58:12,
58:14, 58:21,
59:5, 71:8,
75:9, 75:22,
76:12, 78:21,
79:5, 79:12,
81:9, 94:20,
95:2, 95:11,
101:15, 120:11
pursuant
2:10, 7:17
put
22:6, 23:12,
35:11, 52:11,
52:18, 52:21

Q

question
8:16, 8:17,
8:23, 9:1, 9:3,
9:15, 9:18,
9:20, 16:3,
22:20, 24:21,
25:16, 27:21,
28:14, 28:19,
29:6, 29:17,

30:5, 30:7,
30:19, 30:24,
31:4, 31:8,
31:11, 32:9,
32:12, 32:15,
32:24, 33:2,
33:7, 33:10,
33:12, 33:16,
33:20, 34:13,
34:16, 34:21,
63:1, 63:2,
85:7, 85:18,
94:24, 95:6,
95:7, 106:18,
108:16, 108:22,
109:9, 111:5,
120:20
questioned
28:13, 57:18
questioning
55:18
questions
8:10, 8:15,
9:12, 10:1,
22:5, 33:1,
55:17, 56:14,
85:22, 92:17,
92:21, 93:2,
108:11, 109:14,
109:19, 110:17,
116:19, 119:9
quick
109:18

R

race
106:1
rachel
3:4, 7:9, 65:1,
69:16, 70:9
rachel's
70:8
raises
71:5
raising
113:12
ran
30:23, 31:9,

42:16, 46:3
randolph
4:7
rather
9:7, 71:3
rcpottinger@bslbv
4:20
read
14:4, 14:23,
16:4, 23:20,
40:14, 44:6,
46:11, 53:11,
54:19, 83:3,
93:13
reads
70:1
ready
45:12, 47:20
real
41:3
reason
9:5, 9:23,
38:21, 43:3,
56:3
rebecca
93:21
recall
23:4, 28:6,
55:5, 57:16,
57:22, 58:6,
60:14, 60:21,
63:17, 64:14,
65:24, 66:8,
81:4, 82:17,
85:10, 87:11,
88:9, 89:8,
93:5, 93:6,
100:17, 101:10,
102:23, 103:13,
103:19, 104:9,
106:13, 110:4,
114:6, 118:4
recanting
98:10
received
28:7
receiving
114:6

recent
12:7, 12:15
recently
20:21
recess
36:1, 55:14,
92:14
recognize
72:2
recollection
93:10
record
6:21, 6:23,
7:12, 7:15,
8:22, 13:19,
15:24, 22:14,
22:22, 26:2,
26:10, 26:12,
27:2, 35:23,
62:23, 65:8,
66:24, 71:1,
71:6, 71:21,
72:3, 72:15,
82:6, 86:7,
87:23, 91:9,
92:15, 94:22,
111:3, 123:16
recover
87:14
recovered
83:14, 83:22,
96:20
red
43:16
reduce
15:22
reduced
123:13
reference
65:19
referring
30:2
reffett
4:13, 15:3,
16:10, 93:4
reflect
7:15
reflected
118:11

refuse
110:17
regard
94:1, 109:18,
109:22, 110:17
regarding
28:1, 63:22,
75:5, 75:9,
75:16, 75:22,
76:6, 76:12,
78:21, 79:5,
79:11, 79:17,
80:20, 81:9,
108:13, 108:19
registered
2:11, 123:34
related
13:12, 65:21,
123:20
relating
72:3, 109:1
relation
13:24
relationship
59:15, 75:1,
94:20, 95:3,
95:12, 106:20,
112:16
relative
123:23
release
88:14, 88:21,
112:3
released
57:20, 58:4,
58:8, 88:10,
89:16, 111:24
remember
11:8, 12:11,
12:15, 12:23,
13:1, 15:7,
16:20, 19:22,
20:3, 20:5,
20:8, 20:19,
48:3, 100:14
remotely
2:6
repeat
16:6, 63:1,

94:24, 95:8,
108:15
report
6:19, 6:20,
6:29, 65:16,
68:23, 118:12
reported
1:24
reporter
2:11, 2:12,
8:20, 15:10,
15:12, 85:19,
85:21, 85:24,
122:4, 123:6,
123:34
reporting
65:17, 65:19
represent
7:9, 56:20,
93:3, 100:11,
109:9
representing
17:5
requested
28:1, 68:12
residence
60:10
resident
94:11
resources
19:13
respect
24:21, 25:16,
61:21, 67:8,
67:17, 89:3,
89:20, 90:21,
92:1, 108:24
respectfully
22:19
responded
28:3, 66:2
rest
69:12, 74:5
result
57:7
retaliate
105:6, 120:10
retired
56:20

retract
104:2, 114:9
returned
23:16, 70:2
review
13:5, 13:8
reviewed
13:12, 13:16,
13:23
rfd
26:22, 27:18,
32:22, 34:12,
65:9, 66:24,
72:16, 82:7,
86:12, 86:13,
86:17, 87:23,
91:9, 91:18,
117:23
right
9:23, 17:6,
21:24, 22:19,
22:24, 24:4,
25:2, 25:10,
25:20, 27:16,
27:19, 29:1,
29:5, 30:18,
32:2, 37:5,
37:22, 39:7,
40:10, 42:15,
42:19, 43:6,
43:11, 44:12,
44:17, 45:4,
45:13, 46:17,
46:24, 47:5,
49:9, 49:13,
50:7, 51:23,
52:5, 52:10,
52:12, 53:6,
53:17, 53:23,
54:6, 54:11,
54:20, 55:1,
56:5, 65:1,
65:2, 66:19,
67:12, 68:15,
71:8, 92:5,
92:18, 95:15,
112:19, 113:14,
115:11, 115:20,

117:12, 118:11,
118:13, 118:16,
118:19, 120:17
**right-hand**
38:2, 86:15,
86:19, 88:2,
91:18
**rights**
6:24, 86:22
**riverside**
24:11
**road**
38:13, 39:7,
39:9, 39:12,
43:13, 52:13
**rob**
41:18
**robbed**
23:21, 24:10,
73:22
**robbery**
6:28, 11:5,
11:7, 57:21,
62:13, 63:4,
73:15, 74:14,
80:2, 80:6,
80:13, 80:21,
81:16, 81:17,
89:2, 89:3,
101:5, 102:15,
102:16, 116:16,
116:21, 117:3,
117:10
**robbing**
73:7, 74:7,
101:20, 102:3
**robert**
4:16, 25:23,
122:10
**rock**
123:3
**rockford**
1:7, 3:23,
4:18, 5:8, 5:12,
5:13, 5:17,
14:16, 17:1,
17:9, 18:9,
18:13, 18:14,

19:2, 20:14,
56:21, 57:24,
58:3, 58:7,
59:19, 61:14,
62:14, 63:4,
64:15, 65:18,
66:3, 76:5,
77:13, 77:15,
77:18, 78:8,
80:3, 80:7,
80:13, 80:21,
82:17, 83:20,
84:6, 84:20,
85:4, 85:13,
87:12, 93:23,
94:11, 96:14,
102:4, 116:17,
116:22, 118:5,
118:21
**role**
100:14, 101:15
**romantic**
74:24
**ron**
3:17
**room**
8:1, 52:22,
64:15, 68:12
**round**
49:17, 50:6
**rounds**
49:16, 50:6
**rpr**
1:24, 123:33
**rules**
7:17, 8:9
**run**
51:8
**running**
40:17, 57:23

---
**S**
---

**s-a-m-a-n-t-h-a**
7:13
**said**
12:21, 16:12,
16:17, 20:20,
21:2, 21:12,

22:22, 24:12,
29:9, 30:3,
30:7, 33:12,
33:14, 33:17,
33:18, 33:19,
34:18, 37:2,
41:10, 41:12,
42:17, 42:22,
47:9, 47:10,
47:11, 47:12,
48:3, 48:7,
48:9, 48:20,
50:19, 50:20,
93:6, 103:19,
107:1, 122:14,
123:12, 123:16
**sam**
3:19, 27:21,
28:14, 32:24,
34:22, 43:21
**samantha**
1:14, 2:1,
3:10, 6:3, 7:1,
7:13, 7:16,
25:7, 65:12,
65:21, 67:2,
67:18, 67:19,
68:10, 68:24,
69:8, 69:11,
69:15, 70:2,
70:6, 70:7,
70:12, 70:13,
70:15, 94:12
**same**
15:1, 29:17,
39:16, 39:22,
122:8
**sat**
31:13, 41:8
**saturday**
45:24
**save**
22:23
**saw**
23:19
**say**
8:21, 9:8,
22:10, 23:1,

23:16, 31:11,
33:10, 33:16,
33:20, 34:16,
34:21, 47:13,
48:8, 60:22,
61:2, 61:3,
61:12, 71:10,
110:9, 121:1
**saying**
37:22, 71:4
**says**
23:10, 24:9,
30:2, 36:19,
37:9, 37:22,
39:5, 40:16,
41:2, 41:23,
42:6, 43:11,
45:11, 45:23,
47:5, 47:20,
48:17, 50:17,
51:5, 52:10,
65:17, 68:9,
68:24
**sbhave@atg**
4:10
**scanner**
45:14, 45:17
**scared**
41:3, 42:6,
45:15
**scene**
99:21
**schaumburg**
20:13
**schmidt**
3:19, 15:4,
16:10, 22:15,
24:4, 25:1,
25:19, 38:22,
40:7, 43:4,
44:11, 45:2,
46:16, 46:21,
49:8, 52:5,
53:5, 53:17,
53:22, 54:3,
54:24, 55:20,
84:6, 86:21,
96:12, 97:4,

99:3, 99:17,
116:16, 116:20
**school**
18:19, 18:23,
19:1, 19:4,
19:9, 19:14,
19:16, 19:18,
20:5, 20:6, 20:7
**schooling**
19:5
**scott**
83:3, 100:22
**screen**
22:6, 22:9,
22:12, 26:24,
36:10, 65:11,
71:14, 86:5,
91:2, 115:7,
117:24
**scroll**
27:4, 68:22,
69:24, 74:4,
115:18
**scrolled**
82:10
**scrolling**
115:19
**search**
6:25, 83:4,
87:12, 88:5
**searching**
82:18
**seat**
93:19, 93:22
**second**
11:5, 22:6,
23:8, 23:9,
35:24, 37:20,
37:21, 45:9,
64:18, 68:22,
70:1
**section**
65:16
**secure**
98:1
**see**
22:7, 22:8,
22:11, 23:23,

24:13, 24:15,
25:6, 26:23,
28:4, 28:22,
30:10, 32:9,
33:23, 35:16,
36:9, 37:3,
37:24, 38:14,
39:6, 39:24,
41:6, 42:20,
46:8, 46:24,
52:13, 54:4,
60:15, 60:19,
64:20, 65:10,
65:15, 65:22,
66:16, 67:1,
68:9, 68:13,
71:14, 72:18,
74:5, 76:10,
86:4, 107:3,
115:7, 115:21,
116:8, 117:23
**seems**
15:16
**seen**
22:16, 27:13,
36:12, 43:13,
43:15, 43:18,
46:6, 61:23,
67:24, 72:21,
91:11
**sell**
37:11
**send**
121:19
**senior**
81:2, 81:5,
81:8, 81:13,
105:19
**sense**
92:5
**sentence**
24:16, 24:18,
24:23, 42:16,
44:16, 49:13
**sentences**
24:24, 44:6,
46:10, 52:4
**sentencing**
63:18

**separate**
7:20, 99:4,
114:4
**september**
1:17, 123:28
**service**
21:15
**services**
20:14, 21:6,
21:10
**set**
123:27
**seven**
56:20
**share**
17:20
**sheet**
86:19, 123:9
**shell**
52:19
**shoot**
44:21, 49:14,
52:13
**shop**
72:5, 82:14
**short**
38:10, 107:17
**shorthand**
2:11, 123:5
**shortly**
85:3, 85:12
**shot**
28:16, 33:6,
33:8, 33:15,
41:4, 42:9,
47:8, 47:14,
47:23, 52:15,
52:17, 93:18,
102:9
**shots**
31:7, 32:1,
41:7, 42:8
**should**
9:13, 87:16
**shoulders**
9:8
**show**
26:16, 64:19,

72:10, 86:3,
115:6, 116:2,
117:17
**shrugging**
9:7
**sick**
98:12
**side**
8:17, 30:22,
31:14, 37:14,
39:7, 41:7,
77:18
**sign**
97:7
**signature**
25:6, 25:10,
36:15, 71:24,
82:10, 86:14,
86:18, 88:1,
91:19, 116:12
**signature-k9lvk**
123:31
**signed**
25:7, 25:12,
25:18, 98:9
**significant**
21:21
**silent**
29:18, 31:21,
38:12, 39:5,
39:8, 39:18,
40:17, 47:24,
93:23
**similar**
54:17, 108:22
**since**
13:11, 20:7,
42:6, 61:23,
62:4, 111:8,
112:3
**sirens**
43:16
**sister**
77:3, 77:6,
77:8, 77:23,
80:12, 80:19
**sit**
57:1, 93:10,

106:13
**sitting**
93:18, 93:21
**six**
21:11, 52:14
**six-page**
36:3, 36:7
**skipping**
42:14, 43:10
**sliding**
52:16
**small**
38:6
**smoking**
69:9, 69:11
**solutions**
20:22
**some**
8:9, 12:24,
15:19, 20:8,
22:5, 27:10,
37:11, 37:13,
39:6, 39:9,
47:24, 51:10,
69:9, 83:1,
92:21, 106:9,
113:10
**somebody**
41:4, 42:9,
48:22
**someone**
27:23, 70:11
**something**
23:2, 23:20,
23:22, 34:21
**sometime**
23:19, 121:1
**son**
94:13, 96:5
**soon**
38:1
**sorry**
10:13, 22:10,
54:17, 58:11,
67:10, 67:16,
108:15, 113:6
**sort**
61:19

**source**
75:7, 79:3
**south**
3:13
**spaces**
7:21
**speak**
7:3, 75:3,
78:10, 78:13,
78:19, 81:12
**speaking**
15:20, 15:21,
119:11, 121:21
**specific**
27:10, 40:9,
93:9
**spell**
7:12
**spied**
40:19
**spoke**
60:2, 68:3,
68:16, 77:10
**spoken**
17:4, 62:3,
78:6, 107:7
**spot**
39:23
**squad**
43:15
**ss**
123:2
**staffing**
21:8
**stalter**
4:17
**stamped**
71:21, 72:16
**stapf**
1:24, 2:11,
123:5, 123:33
**start**
8:23, 9:2,
22:4, 55:9
**started**
19:12, 37:1,
37:10, 39:8,
46:1, 46:4,

70:14
**starting**
28:11, 32:24,
36:3, 36:8,
37:21, 44:17,
47:5, 86:13,
115:19, 116:3,
117:22
**state**
2:12, 4:10,
5:6, 5:16, 7:11,
77:22, 99:1,
123:1
**state's**
17:1, 57:17,
88:20
**stated**
14:11, 24:11,
47:24, 69:8,
69:11, 69:14,
69:16, 70:2,
70:3, 70:13,
70:15, 123:8
**statement**
6:16, 6:18,
6:28, 23:5,
24:1, 24:3,
24:24, 25:18,
27:14, 35:14,
36:12, 38:22,
38:24, 43:4,
43:5, 44:11,
45:4, 45:9,
46:16, 47:4,
49:8, 49:19,
51:4, 52:4,
53:4, 53:10,
53:16, 53:21,
54:5, 54:10,
54:19, 55:20,
58:24, 76:11,
76:18, 79:11,
97:5, 97:23,
97:24, 103:21,
104:3, 116:14,
117:11, 118:4,
118:22, 118:24
**statements**
13:18, 14:1,

76:19, 98:10,
102:14, 102:19,
103:14, 106:9,
106:11, 114:10,
117:5, 119:23
**states**
1:1, 123:6
**station**
96:14, 98:24
**stayed**
23:17, 52:16
**stephen**
101:2
**sterling**
20:15
**steve**
15:2
**steven**
16:8
**still**
32:7, 38:3,
45:15, 70:4,
77:13
**stipulation**
26:2
**stop**
39:20, 72:5,
82:14
**stopped**
30:20
**stoppers**
76:5, 104:23
**story**
40:10, 55:1,
65:21, 98:14,
99:7, 99:20
**street**
3:5, 4:7, 5:6,
5:16, 29:18,
69:15, 77:19,
101:21, 119:17,
119:22
**strike**
10:14, 49:18
**striupaitis**
4:4, 16:14
**subpoena**
2:10, 7:17,

14:11
**sued**
100:12
**suffered**
121:2
**suite**
3:5, 3:13
**summarize**
55:19
**summer**
60:4, 61:24,
80:1
**sunil**
4:6, 121:22
**supervision**
123:14
**support**
62:7, 62:10,
98:19, 99:10,
99:24
**supposed**
46:22
**sure**
15:8, 15:10,
15:15, 16:7,
17:24, 26:1,
47:21, 52:11,
69:6, 85:8,
108:17, 111:1
**surrounding**
79:18
**surveillance**
84:21
**suspect**
48:2
**swear**
42:18, 43:21
**sweatpants**
73:14, 73:16,
73:22
**sweatshirt**
23:13
**switzer**
4:14, 55:6,
57:17, 57:23,
58:7, 58:10
**sworn**
7:2, 123:9

**T**

**taken**
7:16, 36:1,
55:14, 92:14,
123:22
**taking**
14:5, 22:23,
23:6, 23:24,
24:2, 24:6,
24:14, 24:17,
24:19, 25:4,
25:9, 25:11,
25:14, 25:22,
27:15, 28:5,
28:9, 28:23,
29:3, 29:14,
29:23, 30:11,
30:15, 31:19,
31:23, 32:4,
32:19, 33:24,
34:4, 34:9,
43:19, 43:20,
57:5, 67:16,
110:16, 120:10
**talk**
45:15, 87:4,
106:1
**talked**
12:2, 16:24,
106:24
**talking**
55:6, 65:24,
113:11
**tan**
89:15
**taurus**
30:9, 32:15,
41:24, 49:16,
51:12, 72:3,
72:7, 83:21,
96:19
**technical**
13:19, 15:24,
94:22
**telephone**
60:6
**tell**
11:3, 11:17,

16:18, 17:22,
20:4, 20:9,
23:14, 23:18,
33:12, 34:22,
48:10
**telling**
11:16, 37:10,
48:19, 66:1,
66:8
**testified**
7:4, 54:16,
54:17, 54:18,
56:7, 58:15,
58:22, 59:6,
63:22, 111:19
**testify**
8:12, 28:2,
107:23, 123:10
**testifying**
8:13, 63:17
**testimony**
6:17, 10:5,
13:16, 13:17,
13:24, 27:3,
27:17, 28:8,
29:11, 30:12,
32:8, 32:17,
33:23, 34:2,
35:1, 54:16,
54:22, 55:7,
59:7, 101:14,
106:7, 110:10,
110:19, 111:8,
123:16
**th**
123:28
**thank**
23:3, 26:10,
55:13, 56:14,
92:13, 92:19,
108:2, 108:4,
109:3, 109:4,
109:14, 111:2,
111:4, 114:14,
114:16, 120:14,
120:16, 121:6,
121:10, 121:12
**thereafter**
85:3, 85:12,

99:19
**theresa**
77:4, 77:7,
77:8, 77:24,
80:12, 80:19
**thereupon**
123:12
**thing**
15:11, 35:20,
115:5, 122:8
**things**
27:10
**think**
8:24, 11:2,
15:14, 15:21,
21:24, 22:21,
51:5, 63:2,
63:5, 64:24,
77:21, 82:3,
86:8, 92:4,
92:6, 92:20,
93:5, 108:10,
115:10, 116:17,
119:9, 120:17,
122:14
**third**
12:22, 27:17,
69:24
**thirteenth**
4:7
**thought**
12:22, 39:11,
40:19, 41:3,
43:18
**thoughts**
92:8
**threaten**
44:20, 59:22,
104:5
**threatened**
25:19, 43:24,
49:2, 53:22,
99:4, 120:3
**threatening**
118:23
**threats**
114:9
**three**
11:22, 40:21

**threw**
50:19
**through**
27:4, 27:8,
35:19, 43:13,
51:9, 65:9,
67:1, 72:17,
91:10, 115:20,
116:10, 118:2,
122:6
**throw**
50:21
**thrown**
70:4
**time**
9:10, 9:17,
12:24, 18:17,
19:15, 22:23,
22:24, 28:19,
30:3, 44:19,
52:20, 56:14,
56:15, 60:2,
60:11, 62:4,
62:9, 77:10,
80:19, 81:8,
81:12, 89:4,
92:16, 95:9,
98:13, 99:1,
106:24, 107:6,
107:14, 107:16,
107:19, 108:11,
108:18, 108:23,
110:2, 113:1,
120:24, 121:10,
121:14
**times**
11:17, 12:6,
19:8, 51:9
**tired**
98:12
**today**
10:1, 11:14,
27:22, 39:16,
39:23, 57:1,
92:17, 106:13,
106:21, 121:11
**together**
52:11, 52:18,

112:15, 113:13,
113:22
**told**
24:4, 25:1,
31:14, 34:18,
35:5, 37:12,
38:3, 38:9,
38:11, 38:23,
39:10, 39:19,
39:21, 40:16,
41:9, 43:5,
43:20, 43:23,
44:12, 45:3,
46:17, 47:9,
47:15, 48:6,
49:9, 52:5,
53:5, 53:17,
54:3, 54:24,
55:19, 56:3,
58:10, 60:23,
63:8, 69:18,
70:7, 70:8,
70:10, 70:12,
70:18, 73:13,
117:2
**took**
8:11, 23:17,
27:24, 39:17,
40:8, 46:1,
51:6, 51:7,
52:12, 63:4,
69:12, 118:21
**top**
34:12, 47:5,
51:4, 52:16,
52:19, 65:10,
65:13, 67:3
**topic**
55:10
**towards**
39:17, 40:18,
65:13, 95:8
**towel**
51:10
**town**
37:14
**trail**
93:23

**transaction**
6:21, 6:23,
72:3
**transcribing**
8:21
**transcript**
27:2, 27:14,
28:11, 32:22,
123:15
**transcripts**
13:6, 13:12,
13:17, 13:23
**trial**
13:14, 57:18,
58:12, 58:14,
58:21, 59:5,
110:10, 110:19,
111:8, 111:9,
111:19, 112:17,
114:8, 121:1
**trigger**
69:4
**trouble**
15:19, 34:23,
48:10
**true**
24:1, 24:18,
25:13, 28:24,
29:11, 29:21,
30:12, 31:16,
34:2, 34:6,
37:16, 38:16,
40:2, 41:13,
42:2, 42:10,
44:22, 47:16,
52:23, 53:11,
58:10, 59:18,
63:21, 64:3,
68:3, 69:19,
70:19, 72:8,
72:24, 82:23,
83:3, 83:7,
83:19, 89:15,
91:14, 93:7,
97:16, 117:2,
118:7, 118:24,
119:4, 123:8,
123:15

**truth**
7:3, 123:10
**truthful**
10:4
**truthfully**
8:12
**trying**
43:23, 112:15
**turn**
15:21, 38:6,
38:9, 38:11,
39:10, 39:14,
39:21, 43:12,
43:14
**turned**
30:20, 38:12,
39:15, 43:12,
45:13, 45:17
**turning**
37:20, 51:3
**tv**
47:22
**two**
11:2, 20:14,
24:24, 31:3,
31:7, 33:13,
40:20, 40:21,
43:15, 48:23,
49:1, 50:16,
83:13, 88:6,
108:10, 109:20,
110:7, 111:10,
111:13, 112:5
**two-page**
117:22
**typed**
14:1, 97:5

**U**

**u-turn**
39:11
**ultimately**
111:19, 117:9
**uncle**
96:6
**under**
52:21, 123:13,
123:14

**understand**
8:14, 23:2,
110:16, 111:18
**understanding**
14:8, 14:10,
14:13
**understood**
8:18
**undressed**
45:18
**unfortunately**
93:12
**unit**
96:13
**united**
1:1
**unless**
9:12, 9:18,
27:5, 54:5
**unloaded**
69:5
**until**
110:19, 111:10,
111:15, 111:22,
111:23, 112:4,
113:2, 113:4,
113:5, 113:8
**untraceable**
103:1, 103:8
**untrue**
35:1, 37:5,
54:23
**upload**
122:5
**upset**
33:2
**use**
49:24, 81:16,
90:7, 104:16

**V**

**vacillated**
106:8
**van**
4:15
**various**
12:6, 18:3,
19:8

**vehicle**
61:1
**verbal**
9:6
**versions**
14:1
**via**
60:6
**victim**
65:20, 121:3
**video**
15:22
**view**
114:19
**violence**
118:8, 118:23
**virtually**
1:15, 2:2
**visit**
113:7
**voluntarily**
87:4

**W**

**wacker**
3:13
**wad**
46:6
**wait**
8:22, 9:1,
39:22, 40:17
**waiting**
40:20
**walked**
40:18
**want**
22:4, 27:11,
45:15, 69:10,
70:24, 108:17,
115:5, 116:2,
122:15
**wanted**
26:1, 37:12,
42:8, 69:10
**war**
106:1
**warrant**
83:4

**watching**
41:4, 48:5
**water**
46:3, 52:21
**way**
26:9, 51:18,
52:12, 53:16,
101:14, 104:17,
107:23, 117:4
**ways**
38:5, 38:7,
38:11, 114:4
**we'll**
26:9, 26:17,
66:19, 71:10,
71:17, 91:4,
116:2
**we're**
14:5, 64:24,
71:4, 71:9,
87:18, 115:9,
119:9
**weak**
98:13
**wear**
73:21
**wearing**
46:6, 73:14
**wednesday**
1:17
**week**
12:24, 51:5
**weekend**
24:9
**welty**
4:4, 16:15
**went**
19:8, 22:21,
23:18, 33:5,
43:13, 45:12,
45:13, 47:6,
52:20, 52:21,
61:8, 70:16,
82:23, 114:8
**weren't**
50:11
**west**
4:7, 5:6,

37:23, 77:18,
77:21
**westbound**
38:3, 38:10
**whatever**
9:20
**whatsoever**
95:21, 100:18,
111:17, 112:6
**whereabouts**
106:8, 106:14
**whereof**
123:27
**whether**
67:17, 77:6,
77:23, 79:10,
101:10, 107:20,
108:17
**white**
106:1
**whitford**
69:16
**whole**
35:20, 92:6,
95:7
**wide**
39:12
**williams**
5:4, 15:4,
16:11, 100:24
**windham**
74:19, 74:22,
75:1, 75:3,
75:8, 75:15,
75:21, 76:4,
76:11, 76:17,
104:10, 105:14,
105:20
**winding**
38:13, 39:9
**winnebago**
88:10
**wiped**
51:10
**within**
60:24
**without**
11:16

**witness**
6:3, 7:2,
15:18, 26:7,
26:11, 28:3,
92:10, 92:19,
108:4, 109:4,
114:16, 120:16,
121:6, 121:12,
123:9, 123:12,
123:16, 123:27

**woke**
46:2

**wood**
29:19, 31:21,
38:12, 39:5,
39:8, 39:18,
40:17, 47:24,
93:23

**word**
23:20, 68:24

**words**
50:11

**wore**
73:15, 96:18

**work**
20:2, 34:17,
47:21, 48:7,
58:2, 105:4

**worked**
19:20, 19:23,
20:11, 20:13,
20:16, 52:14,
102:24, 103:7

**works**
92:11, 92:12

**wouldn't**
48:24

**write**
90:23

**writing**
112:18, 123:13

**written**
58:23, 76:10,
76:18, 76:19,
79:11, 112:22

**wrong**
35:21, 52:18

---
**Y**
---

**yeah**
65:2

**year**
20:11, 20:12,
21:2, 21:3,
28:16, 49:15,
94:12, 107:1,
107:9, 109:21

**year-old**
93:17, 93:20,
94:11, 94:13

**years**
19:24, 20:18,
21:11, 112:18,
112:23, 113:1

**yesterday**
12:10

**young**
96:6

**yourself**
27:12, 33:3

---
**Z**
---

**zoom**
7:21, 11:21,
15:23, 17:6

---
**$**
---

**$100**
46:7

**$800**
69:13

**$900**
69:13

---
**.**
---

**.4900**
3:24

**.5900**
3:7

**.6122**
4:9

**.6611**
4:19

**.7855**
5:18

**.8322**
3:15

**.8900**
5:9

---
**0**
---

**00**
28:21, 29:7,
29:17, 36:24,
45:24, 47:22,
93:17

**004144**
123:36

**0219**
5:8

**084**
123:36

---
**1**
---

**1/1/1969**
67:21

**10**
1:18, 3:13,
6:19, 6:25,
29:17, 35:15,
58:23, 76:19,
82:19, 82:24,
84:4, 84:13,
84:19, 85:10,
86:22, 87:14,
87:19, 87:20,
88:6, 92:5,
93:17, 94:13,
97:15, 98:12,
116:22

**100**
3:22, 4:7, 6:9

**108**
6:7

**109**
6:8, 6:10

**11**
6:26, 34:11,
91:5, 91:6

**112**
6:9

**115**
6:6, 6:27

**116**
6:28

**1168**
123:37

**117**
6:29

**119**
6:9

**12**
6:27, 26:21,
63:5, 72:19,
73:8, 73:23,
74:8, 81:16,
102:4, 115:10,
115:13, 122:16

**120**
5:6, 6:8

**12134**
115:19

**123**
1:23

**1230**
68:10

**128**
86:12, 86:13

**129**
86:12, 86:18

**13**
6:28, 116:3,
116:5

**130**
87:24

**14**
1:18, 6:29,
117:18, 117:19,
118:12

**14106**
71:22

**14107**
71:22

**15**
12:13, 12:20,
23:10, 49:16,
50:5, 101:21

**18**
1:6

**1804**
60:12

**1987**
18:22

**1990**
57:22, 118:7

**1991**
118:5
**1993**
25:8, 27:4,
58:17, 58:23,
59:6, 62:14,
63:5, 64:1,
64:16, 66:1,
66:3, 66:10,
68:4, 68:10,
68:16, 69:6,
69:19, 70:19,
72:5, 72:8,
73:8, 73:23,
74:8, 75:9,
76:19, 79:19,
80:2, 80:7,
80:14, 81:16,
81:24, 82:15,
82:19, 82:24,
84:4, 84:13,
84:19, 85:10,
86:23, 88:7,
88:11, 89:10,
89:17, 89:21,
90:1, 90:8,
90:13, 90:17,
90:20, 91:15,
93:16, 94:10,
96:4, 96:18,
98:9, 99:2,
99:22, 101:21,
102:4, 102:10,
104:10, 106:9,
106:14, 113:4,
113:11, 114:8,
115:17, 116:22,
119:15
**1994**
13:11, 57:18,
58:12, 58:15,
58:22, 59:6,
64:2, 79:19,
110:10, 111:9,
111:18, 111:23,
121:1
**1995**
63:18, 113:5

**1997**
111:15, 111:21,
111:22, 111:23,
112:4, 113:2,
113:4

**2**
**20**
12:20, 82:14
**2019**
60:4, 61:24
**2020**
1:17, 123:28
**219**
5:7
**22**
64:15, 66:3,
66:10, 93:17,
115:17
**23**
1:17, 27:4,
59:6
**2300**
3:13
**235**
82:7
**24**
94:12
**25**
93:20
**26**
6:16, 6:17
**266**
66:24
**269**
67:1
**27**
94:11
**2709**
93:23
**28**
88:10
**29**
123:28

**3**
**30**
13:3, 23:11

**3093**
35:14, 116:4
**311**
3:5
**312.243**
3:7
**312.627**
3:15
**312.814**
4:9
**323185**
1:22
**36**
6:18
**3:-cv**
1:6

**4**
**4**
23:11
**425**
5:16
**45**
46:2
**4th**
5:6

**5**
**5**
47:22
**50040**
1:6
**5234**
26:22
**5236**
27:18
**5242**
32:22
**5244**
34:12
**5246**
91:10
**5254**
91:10, 91:19
**55**
122:16
**56**
6:7

**6**
**60601**
4:8
**60606**
3:14
**60607**
3:6
**61101**
3:23
**61104**
5:17
**61105**
5:8
**61108**
4:18
**65**
6:19
**66**
6:20
**67**
22:15
**6833**
4:17

**7**
**71**
6:21
**72**
6:22
**7563**
72:16
**7567**
72:17
**7582**
36:3, 36:8
**7632**
117:23
**7634**
65:9
**7636**
65:9

**8**
**8**
36:24, 45:24,
46:2
**8/5/93**
6:20

**815.298**
5:18
**815.490**
3:24
**815.962**
4:19
**815.987**
5:9
**82**
6:23
**86**
6:24
**87**
6:25

---
**9**
---

**9**
28:21, 29:7
**901**
36:21, 59:19,
82:24, 83:9,
83:14, 87:13,
88:5
**91**
6:26
**92**
6:8
**93**
6:19, 23:10,
35:15, 72:19,
87:14, 113:8
**95**
113:6
**97**
111:17, 113:8

---
**{**
---

**{sic}**
65:4, 66:20